_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

2014-148

_____

IN RE HTC CORPORATION AND HTC AMERICA, INC.,

*Petitioners.*

_____

On Petition for a Writ of Mandamus to the United States District Court for the
Eastern District of Texas in Case No. 2:13-cv-895, Judge Rodney Gilstrap.

_____

2014-149

_____

IN RE ASUSTEK COMPUTER, INC. and
ASUS COMPUTER INTERNATIONAL, INC.,

*Petitioners.*

_____

On Petition for a Writ of Mandamus to the United States District Court for the
Eastern District of Texas in Case No. 2:13-cv-894, Judge Rodney Gilstrap.

_____

# OPPOSITION TO
# PETITIONS FOR WRIT OF MANDAMUS

_____

Joel L. Thollander                    Theodore Stevenson, III
Joshua W. Budwin                        *Principal Attorney*
Leah Buratti                          David Sochia
MCKOOL SMITH, P.C.                     MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700         300 Crescent Court, Suite 1500
Austin, TX  78701                     Dallas, TX 75201
(512) 692-8700                        (214) 978-4000


*Attorneys for Respondents Rockstar Consortium US LP and MobileStar*
*Technologies, LLC*

Dated:  August 28, 2014

# CERTIFICATE OF INTEREST

Counsel for Respondents Rockstar Consortium US LP and MobileStar Technologies, LLC certifies the following:

1. The full name of every party represented by me is:

   Rockstar Consortium US LP and MobileStar Technologies, LLC

2. The names of the real parties in interest represented by me are:

   Rockstar Consortium US LP and MobileStar Technologies, LLC

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

   Rockstar Consortium US LP is the parent entity of MobileStar Technologies, LLC, and in turn Rockstar Consortium LLC is the general partner of Rockstar Consortium U.S. LP. The publicly-traded companies that directly or indirectly own 10% or more of Rockstar Consortium US LP are Apple Inc., BlackBerry Limited, Telefonaktiebolaget LM Ericsson (publ), and Microsoft Corporation.

4. The names of all law firms and the partners or associates that appeared for the parties represented by me in the trial court or are expected to appear in this Court are:

   Mike McKool, Jr.; Douglas A. Cawley; Theodore Stevenson, III; David Sochia; Ryan A. Hargrave; Nicholas M. Mathews
   MCKOOL SMITH, P.C., Dallas, TX

   Joel L. Thollander; Joshua W. Budwin; Leah Buratti, Kathy H. Li
   MCKOOL SMITH, P.C., Austin, TX

   Samuel F. Baxter; Jennifer Leigh Truelove
   MCKOOL SMITH, P.C., Marshall, TX

Dated:  August 28, 2014          /s/ Joel L. Thollander
                                 Joel L. Thollander

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................................... iii

TABLE OF CONTENTS........................................................................................iv

TABLE OF ABBREVIATIONS ................................................................. viii

I.    ISSUES PRESENTED ..............................................................................1

II.   INTRODUCTION ......................................................................................2

III.  STATEMENT OF FACTS .........................................................................4

    A.    Rockstar Files This Case in the EDTX. ...............................................4

    B.    The Claims of the Patents-in-Suit Recite Hardware Limitations....................................................................................................5

    C.    The Accused Devices Use a Modified Version of Android Open Source Code, for Which Google Has Not Accepted Responsibility.........................................................................6

    D.    The EDTX Is the Natural Forum For This Litigation. .........................8

    E.    Rather Than Intervening, Google Forum Shops to the NDCA.....................................................................................................11

    F.    The NDCA Court Recognizes the EDTX Court's Rulings...................................................................................................12

IV.   STANDARD OF REVIEW .....................................................................12

V.    ARGUMENT:    REASONS WHY MANDAMUS SHOULD NOT ISSUE ...............................................................................................13

    A.    Petitioners Improperly Flip the Burden of Proof. ..............................13

    B.    The District Court Committed No Error Regarding the First-to-File Rule—These Cases, Not the NDCA Case, Were First Filed.....................................................................................14

        1.    These Texas cases were first filed, making the EDTX court the proper court to decide the transfer

questions................................................................................15

    2.    Petitioners are not Google customers—they are manufacturers, not resellers, of the accused devices..............................................................................17

    3.    There is no threat to comity and judicial efficiency. ................21

C.    The District Court Did Not Err in Its § 1404 Analysis. .....................23

    1.    The NDCA court's analysis on the motion to dismiss, which considered none of Petitioners' contacts, is not relevant............................................................23

    2.    Petitioners failed to meet their § 1404 burden of proof before the district court. ...................................25

D.    The District Court Did Not Err in Its Stay Analysis. .........................30

VI.    CONCLUSION..............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) .........................................................................15

*Eolas Tech. v. Adobe Sys.*, No. 6:09-CV-446,
  2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) ..............................28

*In re Apple, Inc.*,
  743 F.3d 1377 (Fed. Cir. 2014) .........................................................................26

*In re Microsoft*,
  630 F.3d 1361 (Fed. Cir. 2011) .........................................................................28

*In re Nintendo Am.*, No. 14-132,
  2014 U.S. App. LEXIS 12707 (Fed. Cir. June 25, 2014)...................................20

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ...................................................................13, 18

*In re Vistaprint Ltd.*,
  628 F.3d 1342 (Fed. Cir. 2010) .........................................................................29

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) .......................................................................13, 24

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) .........................................................................29

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) .........................................................................19

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) .........................................................................18

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) .......................................................14, 16, 21, 30

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008) .....................................................................15, 29

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ............................................................................16

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ...................................................................17, 18

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)............................................................................................21

*Sutter Corp. v. P&P Indus., Inc.*,
    125 F.3d 914 (5th Cir. 1997) ........................................................16, 17, 22, 24

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
    482 F.3d 1330 (Fed. Cir. 2007) .......................................................................19

**OTHER AUTHORITIES**

Google-HTC MADA, *available at* http://www.benedelman.org/docs/htc-
    mada.pdf (last visited Aug. 28, 2014)..........................................................8, 19

# TABLE OF ABBREVIATIONS

Appendix to Mandamus Petition of ASUS:      AS__

Appendix to Mandamus Petition of Google:      GG__

Appendix to Mandamus Petition of HTC:      HTC__

Appendix to Mandamus Petition of LG:      LG__

Appendix to Mandamus Response of Rockstar      RA__

Appendix to Mandamus Petition of ZTE:      ZTE__


Mandamus Petition of ASUS:      AS.Pet.__

Mandamus Petition of Google:      GG.Pet.__

Mandamus Petition of HTC:      HTC.Pet.__

Mandamus Petition of LG:      LG.Pet.__

Mandamus Petition of ZTE:      ZTE.Pet.__

## I.    ISSUES PRESENTED

1. Whether the district court clearly abused its discretion and reached a patently erroneous result with respect to either the discretionary "first-filed" rule or its discretionary "customer-suit" exception when: a) these Texas cases were first filed two months *before* the California case; b) Petitioners are *manufacturers* (not *resellers*) of the accused mobile devices, they substantially modify the Android open source software before installing it on those devices, and these "specialized implementations place these suits far outside of the usual 'customer suit' exemption from the first-filed rule," HTC9; and c) the court in California recognized that it could be "particularly helpful" if these cases remained in Texas and proceeded to claim construction prior to the case in California. RA98.

2. Whether the district court clearly abused its discretion and reached a patently erroneous result with respect to transfer when: a) the court carefully considered each Petitioner's transfer motion on its own merits; and b) with respect to their own contacts, Petitioners concede that the "Texas court correctly declined to simply redistribute the inconvenience of travel or substantially increase the cost of attendance for willing witnesses." HTC.Pet.19; AS.Pet.19.

3. Whether the district court clearly abused its discretion and reached a patently erroneous result with respect to the requested stay when the Texas and California cases involve different parties, different products, and different issues.

1

## II.    INTRODUCTION

Petitioners move to transfer this case to the NDCA on the grounds that Google filed a declaratory judgment action there that will purportedly adjudicate whether the "Android platform" infringes patents asserted against Petitioners in the EDTX. But ASUS and HTC are not parties to the NDCA case, and it will not adjudicate their infringement. The asserted patents all cover hardware elements: one is solely hardware related, and the others have non-trivial elements such as touch screens for displaying data and receiving input, memory for storing/maintaining data, antennas, transmitters and receivers for sending and receiving data, as well as processors for performing functions—all of which are sourced and manufactured by ASUS and HTC. As a result, after the Google trial there would be *another* trial adjudicating whether Petitioners' devices infringe.

Neither will the Texas cases adjudicate whether "Android" infringes. This is true for two reasons: 1) Rockstar has accused ASUS and HTC *mobile devices* of infringement, not "Android" in the abstract. Google does not manufacture these accused devices, and ASUS and HTC do not buy them (or anything else) from Google. 2) The accused devices use a customized version of the Android open source software, which ASUS and HTC modify substantially before installing it on their devices. Because of these "specialized implementations," HTC9, the suit against Google cannot and will not resolve infringement by Petitioners.

2

Furthermore, neither ASUS nor HTC has agreed to be bound by the resolution of the infringement case against Google, and Google has not agreed to indemnify ASUS or HTC. Nor has Google stated that it is jointly and severally liable for infringement by Petitioners. Google thus lacks any justiciable interest or standing to argue that Petitioners' devices do not infringe the patents-in-suit.

While these Texas actions are not "customer" suits, they were the first ones filed—in October 2013. They placed at issue not only many of Petitioners' mobile devices, but also the Nexus 7 devices that ASUS manufactures *for* Google. AS15. Two months after these suits were filed, Google filed suit against Rockstar in the NDCA seeking a declaration that Google's Nexus devices (including those already at issue in Texas) and the so-called "Android platform" do not infringe.[1] This second-filed suit was expressly responsive to the first-filed Texas actions.

There is no call for the extreme remedy of mandamus in these cases. Petitioners suggest that the district court clearly erred in not deferring to the NDCA court's decision, on a motion to dismiss, to keep Google's responsive action in the NDCA. But the California court properly left the decision as to what to do with these first-filed cases up to the first-filed Texas court. And the Texas court, after

---

[1] ASUS asserts that it "should not be forced to litigate in two different forums," AS.Pet.1, but of course ASUS is litigating in only one forum—the EDTX. It is not a party to the NDCA case, and no ASUS-branded products are at issue there. To the extent that the NDCA case raises issues regarding the Nexus 7 that were first raised in the EDTX, the solution is obvious: consolidate in the EDTX. RA128.

rightly finding that the NDCA action will not resolve the major issues regarding the mobile devices manufactured by Petitioners and accused in these cases, determined that it was appropriate for these cases to proceed in Texas. In light of this decision, the California court has indicated that it believes considerations of judicial economy counsel proceeding with all of these cases in the EDTX. RA127-28. And barring an unnecessary intervention by this Court, the NDCA court will likely transfer Google's NDCA action to the EDTX. RA127-28.

Petitioners' principal argument for mandamus is thus entirely unsupported: both district courts currently agree that judicial efficiency counsels proceeding with these related cases in the EDTX. And neither ASUS nor HTC make any substantial argument for transfer based on their own, individualized contacts. AS.Pet.15-17; HTC.Pet.15-17. There is nothing patently erroneous about the results in these cases, and mandamus is entirely inappropriate.

## III.   STATEMENT OF FACTS

### A.    Rockstar Files This Case in the EDTX.

In October 2013, Rockstar and MobileStar (collectively, "Rockstar") filed suit against six defendants—all mobile device manufacturers—in Rockstar's home district, the EDTX. AS11-48; HTC11-56. Rockstar alleged infringement of seven patents by mobile devices manufactured and sold by LG, HTC, Samsung, ZTE, and Pantech. RA110-126. Rockstar alleged infringement of just six of the seven

4

patents by mobile devices manufactured and sold by ASUS. AS14. Rockstar later

added claims of infringement against Google to the suit against Samsung. RA109.

### B. The Claims of the Patents-in-Suit Recite Hardware Limitations.

The claims of the patents-in-suit cover various aspects of a mobile device.

That means that neither this case, nor any other, will adjudicate whether the

"Android platform" infringes. Indeed, the Android platform has not been accused

of infringing any patent. Of the patents-in-suit, none read solely on functions or

features found in Android software. AS1588-1604; HTC718-36. All require either

hardware alone or a mix of hardware and software. And critically, Petitioners (like

all of the mobile device manufacturers in these related cases) *modify the Android*

*open source software.* AS1588-1604; HTC718-36. As a result, none of the cases

filed by Rockstar and MobileStar will adjudicate infringement by all the various

accused devices because, at the very least, they are different implementations of

Android with different combinations of hardware.

The '551 patent, for example, covers *only* hardware (an electronically

shielded package), which has nothing to do with Android. HTC718-36. Each of the

other six patents covers a specific combination of hardware (designed by

Petitioners and the other original equipment manufacturers) with software. The

hardware limitations are non-trivial, requiring hardware such as antennas,

transmitters and receivers for "sending," "receiving," touch screens for

"displaying" data, and "receiving" user input, as well as memory for "storing" and maintaining data—functionality that occurs solely within hardware. HTC689. Certain claim elements may be met by the custom Android operating systems that have been modified and provided by Petitioners, but these software elements are combined with the claimed hardware elements or functionality provided by such hardware elements that are specified and sold by the Petitioners, not by Google.

### C. The Accused Devices Use a Modified Version of Android Open Source Code, for Which Google Has Not Accepted Responsibility.

Android is an open-source software project managed by Google, but contributed to by many other entities and individuals, including Petitioners, other device manufacturers, and even members of the public. GG673-76, 987-91; AS9, 1614; HTC9, 815. Mobile device manufacturers modify the Android open source, which Google refers to as the "Android platform," to suit their needs and to include features and functions not found in the open source code. GG971-76, 987-91; AS9, 1614, 1622-26, 1630-34; HTC9, 808-819, 874-81. Like the manufacturers in the related cases, Petitioners do not use Android open source in unmodified form. GG673-76, 971-76, 987-91; AS9, 1614, 1622-26, 1630-34; HTC808-819, 874-81.

Rockstar's infringement contentions reveal considerable differences in the various custom implementations of the "Android platform." GG977-83; AS1588-1604; HTC822-28. For example, Samsung's modifications are so extensive that it employs a team of Android engineers to customize the open source code. GG984-

6

86. LG has asserted that Rockstar's claim charts are deficient because they fail to reflect LG's specialized implementations of the Android software.[2] LG1592-98. HTC has written code to create its own "flavor of Android" for its phones that it claims "offer the easiest, simplest solution for the customer." HTC879-80. And ASUS likewise modifies Android to distinguish its products from competitors; the ASUS accused products come with "a heavily modified version of Android" and feature modifications designed to improve the look and function of navigation buttons, the keyboard, and the notifications. AS1621-36.

Moreover, Google does not charge companies to implement the Android operating system on their devices. Anyone may download the software for free, modify it extensively, and use it as deemed appropriate. Companies that download and use Android are not Google customers—they do not pay Google anything and they may modify and use the software as they deem fit. Certainly none of the accused devices run solely on the platform provided by Google. Given the wide-open nature of the Android source code, it is not surprising that Google does not accept legal responsibility for patent infringement by Petitioners' devices, or by the

---

[2] Google suggests that Rockstar's complaints and infringement contentions do not sufficiently reveal the extent and significance of Petitioners' Android-software modifications. G.Reply.2-6. But Rockstar has not yet had access to Petitioners' source code, and protestations from Petitioners regarding the alleged insufficiency of Rockstar's infringement contentions (such as this one from LG) confirm that the source-code modifications are indeed material and substantial.

7

other devices accused in the related cases. Indeed, given repeated opportunities to indemnify Petitioners, Google has steadfastly refused to do so. Thus, Google will not be indemnifying Petitioners for sales of the accused mobile devices incorporating the Android operating system. RA75; RA85.[3]

This case will not adjudicate the hypothetical question of whether Android open source infringes. Petitioners use a modified version of Android, and none of the manufacturers have agreed to be bound by any infringement findings against Google.[4] And the Android software, standing alone, is not a product accused of infringement. The accused mobile devices have numerous hardware elements combined with software; the focus is not on the "Android platform."

### D.    The EDTX Is the Natural Forum For This Litigation.

The EDTX was the logical forum for Rockstar to file suit because Rockstar, MobileStar, and Samsung are each headquartered there, and ZTE is headquartered just a few miles from the EDTX border. GG693-96. The other defendants are scattered around the country: California, Washington, New Jersey, and Georgia. But given that the EDTX had the strongest ties to Rockstar, as well as to the defendants as a whole, the EDTX was a logical central venue for all the suits.

---

[3] *See* Google-HTC MADA ¶ 11.1, *available at* http://www.benedelman.org/docs /htc-mada.pdf (last visited Aug. 28, 2014).

[4] At a hearing in the NDCA case, the court asked Google whether the accused manufacturers would agree to be bound by the outcome of the NDCA suit. RA85-86. Not a single mobile device defendant has agreed to be so bound.

*The EDTX Is Rockstar's Home Forum.* Rockstar and MobileStar are the assignees of patents developed by Nortel Networks. AS1458. Although its worldwide headquarters was in Canada, for twenty years the headquarters for Nortel's U.S. entity and its largest U.S. facility (with approximately 10,000 employees) was in Richardson, Texas. AS2040; HTC901. After facing bankruptcy in 2009, in 2011 Nortel held an auction for its patents. AS2031. Google bid for the Nortel portfolio, but lost the auction to Rockstar Bidco LP. AS2031; HTC892. Rockstar Bidco LP—an entity distinct from Rockstar—subsequently assigned a minority of the Nortel patents directly to some of its limited partners, and assigned the remaining Nortel patents (including the patents-in-suit) to Rockstar. RA41.

Rockstar is a Delaware limited partnership. Its limited partners are: Apple, BlackBerry, Ericsson, Microsoft, and Sony, each with a minority ownership percentage. AS2040. None has a majority or controlling interest in Rockstar, and there is no credible evidence in the record to the contrary. Two of the limited partners have strong Texas connections: Ericsson's U.S. headquarters is in the EDTX, and BlackBerry's headquarters is in Irving. The other limited partners are scattered, with Microsoft in Washington, Apple in California, and Sony in New Jersey. AS2041; HTC902; RA42.

After the assignments from Rockstar Bidco LP, Rockstar created subsidiary entities for the purpose of licensing its intellectual property in different markets.

9

GG1288. Rockstar then assigned certain patents corresponding to different market segments and technology areas to those newly-created subsidiaries.[5] AS2143; RA71. MobileStar owns five of the patents-in-suit and is the exclusive licensee (from Rockstar) of the other two patents, within its field of use. AS2040.

Rockstar is based in the EDTX. Rockstar initially leased Nortel's Richardson office space—where many of Nortel's patent files were located, including files relevant to the patents-in-suit. AS2042. In August 2012, after Nortel sold its Richardson campus, Rockstar was forced to move and leased its current offices in nearby Plano, within the EDTX. AS2042. Rockstar and MobileStar still maintain their principal place of business in Plano. AS2042. The Plano office is Rockstar's only office, although some employees also work out of their homes. AS2042. The office contains 8,125 square feet, with 10 assigned offices, 2 guest offices, 4 conference rooms, 7 work areas, and storage space. AS2042.

When Rockstar Bidco LP acquired the patents-in-suit from Nortel, the Rockstar entities also acquired former Nortel employees responsible for licensing and prosecuting the Nortel patents. AS2041-42. Rockstar now has 15 full-time

---

[5] For example, MobileStar focuses on licensing patents related to mobile device technology, NetStar focuses on internet search technology, Bockstar focuses on technology for network components, and Constellation focuses on network technologies for telecommunications service providers to deliver cable, telecommunications, and other multimedia services. Rockstar owns two of the patents-in-suit. AS2040; HTC901; RA42.

10

employees in the U.S., including five full-time employees in Plano and others who spend significant time there. AS2042. No Rockstar or MobileStar executive or employee lives or works in California. AS2043. Eight of the U.S.-based employees likely have relevant information; three work full-time in the Plano office, one lives in Colorado, and the rest are on the east coast. AS2043. Two Rockstar board members are also in the EDTX or nearby. AS2044.

*Other Defendants Are Based in or Near the EDTX.* Samsung has its headquarters in Richardson—in the EDTX. GG783-84. From the EDTX, Samsung "researches, develops and markets a variety of personal and business products throughout North America including handheld wireless phones, wireless communications infrastructure systems and enterprise communications systems." GG785-86. The products developed in the EDTX by Samsung include their accused devices. ZTE is located just a few miles from the EDTX border. From its Texas location, ZTE researches and designs their accused devices. RA129-133. ZTE's Richardson office is heavily involved in developing the Android source code: job postings for ZTE's Richardson location seek employees to work with Android software that will "[w]ork closely with the R&D team." RA134-35.

### E.    Rather Than Intervening, Google Forum Shops to the NDCA.

On December 23, rather than intervene in the EDTX cases, Google filed its action for declaratory judgment in the NDCA. AS1771-84. While there are many

11

dozens of Petitioners' mobile devices at issue in the EDTX cases, RA108-26, there are only three Google branded devices at issue in the NDCA, AS56. On December 31, Rockstar and MobileStar added Google as a defendant to the Samsung case in the EDTX. GG69-135. Google and each of the defendants in the EDTX then filed motions to transfer their cases to the NDCA. AS1758-70.

### F.    The NDCA Court Recognizes the EDTX Court's Rulings.

On January 23, 2014, Rockstar and MobileStar filed a motion to dismiss the NDCA action, maintaining that the NDCA lacked jurisdiction over MobileStar and arguing for dismissal under the first-to-file rule. AS2059; RA2-4. The NDCA court denied the motion to dismiss on April 17. AS2059-86. Rockstar then filed a motion to transfer the NDCA action to the EDTX. RA29-63. There was a hearing on June 26, during which the NDCA court expressed the view that these suits should precede the NDCA case so the court "would have the benefit of looking at what the Texas judge had done with claim construction." RA93. But in an order issued on August 20, the NDCA court reserved ruling on the motion to transfer pending the outcome of this mandamus proceeding, noting that if the EDTX court's discretionary rulings stand, the better course would be to send the NDCA case to Texas for consolidation and a single trial. RA127-28.

## IV.   STANDARD OF REVIEW

Three requirements must be met before a writ of mandamus may issue:

12

> (1) the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires …; (2) the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable; and (3) even if the first two prerequisites have been met, the issuing court … must be satisfied that the writ is appropriate under the circumstances.

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (internal quotes omitted). To show a "clear and indisputable" right to the writ, Petitioners must prove the existence of "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Id.* at 309. Here, Petitioners must prove "that the [transfer] denial was a 'clear' abuse of discretion such that refusing transfer produced a 'patently erroneous result.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *see Volkswagen*, 545 F.3d at 312 ("[I]n no case will we replace a district court's exercise of discretion with our own.").

## V.    ARGUMENT:  REASONS WHY MANDAMUS SHOULD NOT ISSUE

### A.    Petitioners Improperly Flip the Burden of Proof.

The law is clear that a motion to transfer venue should be granted only when "*the movant* demonstrates that the transferee venue is clearly more convenient." *Volkswagen*, 545 F.3d at 315 (emphasis added). Petitioners turn the axiomatic burden of proof for transfer under § 1404 on its head. They go so far as to explicitly argue—with no supporting legal analysis—that the district court clearly erred merely by requiring that HTC and ASUS "show that it would be 'clearly more convenient' to transfer the Texas action" to the NDCA. HTC.Pet.16;

13

AS.Pet.17. Petitioners repeatedly argue or suggest that *Rockstar* bore the burden to prove, *e.g.*, that Petitioners are not Google customers, or that Petitioners substantially modify the Android code, or that the major issues in these cases will not be resolved by Google's NDCA action. HTC.Pet.13. Petitioners similarly ignore their own burden to specifically identify evidence and witnesses relevant to the § 1404 analysis. AS.Pet.18. Instead they argue that *Rockstar* had to show that "Texas is a *more* convenient forum." HTC.Pet.21. This misapplication of the burden of proof infects the entirety of Petitioners' arguments, from the applicability of the customer-suit doctrine to the weighing of the § 1404 factors. The district court rightly found that Petitioners failed to meet their burden of proof; Petitioners cannot secure mandamus by flipping that burden on its head. AS5-6.

### B. The District Court Committed No Error Regarding the First-to-File Rule—These Cases, Not the NDCA Case, Were First Filed.

Petitioners suggest that Google's California action was first filed, but that is demonstrably wrong: these Texas cases were filed two months *before* Google filed its responsive declaratory judgment in California.

The first-to-file rule is a "doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). The date by which the first-filed action is determined

14

"derives from the filing of the complaint." *Id.* This general rule is "not rigidly or mechanically applied"—district courts are provided with "an ample degree of discretion" to determine that considerations of litigant convenience or judicial economy override the rule in a given circumstance. *Id.*; *see also Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005). Factors that justifiably override the rule include "the convenience and availability of witnesses" or "the possibility of consolidation with related litigation." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904-05 (Fed. Cir. 2008).

### 1. These Texas cases were first filed, making the EDTX court the proper court to decide the transfer questions.

Rockstar filed this suit against Petitioners in the EDTX in October 2013. AS11; HTC11. Rockstar alleged that mobile devices manufactured and sold by HTC infringe seven of Rockstar's patents, HTC11-56, and that mobile devices manufactured and sold by ASUS (including the Nexus 7) infringe six of Rockstar's patents, AS14-15.[6] Of these patents, one covers only hardware, and the others cover some combination of hardware and software functionality. GG942-63; GG696. Notwithstanding the allegations directed to devices manufactured by Petitioners, Google took note that the accused devices each run a modified and

---

[6] This fact alone disproves Petitioners' assertion that "this case is about the Android platform," AS.Pet.12—if that were true, Rockstar would have asserted all seven patents against both ASUS and HTC.

15

customized version of the Android operating system—and decided to respond.

But rather than simply intervening in this EDTX action, *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014), Google shopped for its own forum and filed suit against Rockstar in the NDCA, AS49. Google's California suit sought a declaratory judgment that its "Nexus 5, Nexus 7, and Nexus 10" devices, as well as its "Android platform," do not infringe the same patents at issue in the Texas suits. AS54-61. That responsive action—Google "request[ed] relief because" of the Texas suits, AS50, and raised issues regarding the Nexus 7 already raised in the ASUS case, AS15, 56—was filed in December 2013, AS49, two months after these suits were filed in Texas, AS11.

*Merial* holds that the relevant dates for these purposes are "derive[d] from the filing of the complaint." 681 F.3d at 1299.[7] Review of those dates conclusively establishes these Texas cases were the first to be filed. AS11, 49; HTC11.

In addition, the "court of the actual first-filed case should rule on motions to … transfer." AS2081; *see also Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). There should thus be no serious dispute that the questions

---

[7] Google suggests that *Merial* "has no bearing here, where Google's complaint in California predated Rockstar's complaint in Texas." G.Reply.7n.4. But of course Google's December-filed California complaint does not predate Rockstar's October-filed complaints in these Texas cases. And because an October-filed complaint is at issue in every one of these petitions, the first-filed analysis points to the EDTX as the first-filed venue in every case.

16

regarding whether to stay, transfer, or consolidate these first-filed cases *belonged to the first-filed court in the EDTX. Id.* Indeed, that likely explains why the NDCA court always assumed that the EDTX court would be making its own decisions in these cases. RA93, 98. And the Texas court reasonably exercised its discretion in making those decisions: after carefully weighing the individualized contacts, considering the similarities and differences in parties, product, and issues, and accounting for the "specialized implementations [that] place these suits far outside of the usual 'customer suit' exemption from the first-filed rule," the district court determined that Petitioners' motions to transfer or stay should be denied. HTC9, 1-10; AS1-10; GG1538-78. Significantly, in light of that decision from the first-filed court, the NDCA court has now indicated that (absent an unnecessary intervention from this Court), it will likely transfer the California case to Texas. RA127-28.

### 2.    Petitioners are not Google customers—they are manufacturers, not resellers, of the accused devices.

Petitioners also suggest that these actions are subject to the customer-suit doctrine. AS.Pet.10-14; HTC.Pet.10-14. Again, that is wrong.

The customer-suit doctrine constitutes an additional exception to the first-to-file rule, and provides that a second-filed action may take precedence "where the first suit is filed against a customer who is *simply a reseller* of the accused goods, while the second suit is a declaratory judgment action brought by the manufacturer of the accused goods." *Spread Spectrum Screening LLC v. Eastman Kodak Co.,*

17

657 F.3d 1349, 1357 (Fed. Cir. 2011) (citation omitted and emphasis added). The doctrine is triggered when "the manufacturer is the true defendant in the customer suit," *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990), and "the second action would resolve all charges against the customer[]," *Spread Spectrum*, 657 F.3d at 1358. The doctrine is not triggered when it is unlikely to "resolve the 'major issues' concerning the claims against the customer." *Id.*[8]

Whether or not this discretionary exception to a discretionary rule could ever be an appropriate subject for mandamus, *see id.* at 1359, it certainly provides no basis for mandamus in this case, as none of the doctrine's requirements are met.

First, Petitioners are not "simply … reseller[s]" of the accused devices: they manufacture those devices. AS14, HTC14-15. Google manufactures none of the accused hardware, which is an element of the patents-in-suit. *Supra* Part III.B. With respect to the software, Petitioners have each created their own, unique version of the Android operating system, making substantial modifications to the

---

[8] Google suggests that this paragraph "misstates the legal standard" because the "simply a reseller" rule was "rejected" by *Katz*. G.Reply.6. Not true. One panel cannot reject the holding of another; what *Katz* held (expressly noted above) was that a suit against a manufacturer must potentially resolve the "major issues" in the suit against a customer "in order to justify a stay of the customer suits." 909 F.2d at 1464. Of course, showing a "patently erroneous" decision *not to stay* necessarily requires a higher standard than simply showing that granting a stay would be otherwise justified. *TS Tech*, 551 F.3d at 1319. In any event, the district court properly found that the suit against Google was unlikely to resolve the major issues in the suits against Petitioners. AS9; HTC9; GG10, 1546, 1551, 1563, 1572.

code before installing it on its mobile devices. AS9, 1614, 1622-26, 1630-34; HTC808-819, 874-81; LG341, 343-44, 475-484. These modifications to the Android code are material to the claims of infringement in this case. AS9, 1746-52.[9] And even the modified code, standing alone, is not accused of infringement—it meets certain elements, but only in combination with hardware.

Second, Google is not the "true defendant" with respect to the claims against Petitioners. AS.Pet.11. Google has never accepted legal responsibility for infringement by their mobile devices.[10] Indeed, Google lacks any justiciable interest or standing to argue that Petitioners' devices do not infringe the patents-in-suit. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007). And Petitioners have never agreed to be bound by an infringement judgment that might be rendered against Google in the NDCA case. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989).

Third, the second-filed action in California will not "resolve all charges" nor

---

[9] As noted, Google suggests that Rockstar's complaints and infringement contentions do not sufficiently reveal the extent and significance of Petitioners' Android-software modifications. G.Reply.2-6. But of course Rockstar has not yet had access to Petitioners' source code. In any event, there is no serious dispute that Petitioners modify and customize the code, and the district court determined that these "specialized implementations" were relevant to the analysis. HTC9. Indeed, if it were otherwise, Google would agree to indemnify Petitioners—but Google has steadfastly refused to do so. Google's actions speak far louder than its pedantic parsing of the still-developing contentions in this case. G.Reply.2-6.

[10] *See* Google-HTC MADA ¶ 11.1, *available at* http://www.benedelman.org/docs/htc-mada.pdf (last visited Aug. 28, 2014).

even the "major issues" concerning Rockstar's infringement claims against Petitioners. The "Android platform" is not accused of infringement and will not be adjudicated in the abstract by these cases because the patents all cover hardware, not just software, and because there is no evidence that any company uses the Android open source without modification. The district court considered this carefully and found that, while "each of the accused products uses some version of Android, … each [Petitioner] modifies and customizes the Android system to its own particular purposes." AS9. The court thus reasonably concluded that it was unlikely that "resolving infringement issues as to Android *proper* will resolve issues relating to [Petitioners'] various *implementations* of the Android system." AS9. The court further noted that the Texas action presents "issues relating to [Petitioners'] devices and hardware, which the California litigation does not." AS9. This conclusion should not be controversial: Google has officially taken the position that whether or not the results in the California action will bind Petitioners is *not* an issue before the NDCA. AS2168-83.

These facts are nothing like those in *In re Nintendo Am.*, No. 14-132, 2014 U.S. App. LEXIS 12707 (Fed. Cir. June 25, 2014), where "Nintendo [was] the true defendant," *id.* at *5, and its "liability [was] predicate to recovery from any of the defendants," *id.* at *7. This is not a customer suit, and the district court was quite right: "a stay of proceedings would not serve the interests of justice, because major

20

issues in this case and other pending cases will likely remain even after the California litigation is resolved." GG10; AS9; HTC9.

### 3.    There is no threat to comity and judicial efficiency.

Petitioners make much of purported conflicts between the decisions of the district courts in California and Texas, but in fact there is no threat to the principles of comity and judicial efficiency that undergird the first-to-file rule and its numerous exceptions. *Merial*, 681 F.3d at 1299.

As an initial matter, the NDCA court never held that Google's responsive action was first-filed with respect to these cases. Instead, it reasoned that, even if these Texas actions were first-filed, it could apply the customer-suit exception to keep the second-filed action in California. GG324. But the NDCA court's analysis arose in a procedural context different from this case, and was subject to the standards applicable for a motion to dismiss—that is, based on the allegations pled in Google's complaint and resolving any "conflicts in the allegations and evidence … in [Google's] favor." GG305. The Texas district court, in contrast, had the benefit of proceeding on a more robust record and of weighing the evidence before it. AS2-4; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).[11]

---

[11]  Furthermore, under Petitioners' own case law and logic, the decision as to whether to "transfer based on exceptions to the first-to-file rule" belonged to the "court of the actual first-filed case," LG.Pet.6—that is, the decision as to whether the customer-suit doctrine applies properly belonged the first-filed court in the EDTX, not to the second-filed court in the NDCA. Petitioners' repeated insistence

More importantly, the NDCA court never suggested that its initial decision to keep Google's California suit should control the EDTX court's decision to keep or transfer this case. To the contrary, the NDCA court noted that the Texas actions "might not and need not be transferred here." AS2084. The court went further at a subsequent case management conference and hearing on Rockstar's motion to transfer under § 1404, noting that it could be "particularly helpful" to push back the dates for claim construction because "that might mean that if the other cases stay in Texas, that the claim construction there would be done before we get to it here, and then I would have the benefit of looking at what the Texas judge had done with claim construction." RA93; RA98. And in an order filed last week, the NDCA court indicated that it is now disposed, if this action proceeds in the EDTX, to transfer Google's declaratory judgment action there. RA127-28.

The NDCA court thus fully expected not only that the EDTX court would make its own informed decision regarding stay and transfer, but that the EDTX court might reasonably decide to proceed with this action. As noted, that was entirely appropriate in light of the EDTX court's status as the first-filed court in these actions. *Sutter*, 125 F.3d at 920. In light of those expectations, the NDCA court structured the California suit so as to take advantage of the work done in the

---

that the EDTX court erred in not deferring to the NDCA court's initial determination regarding the customer-suit doctrine flips this law on its head.

EDTX. RA93; RA98. And upon hearing that the Texas court had decided that the related cases should proceed in the EDTX, the NDCA court noted that it will likely transfer the NDCA case to that forum. RA128. This is federal comity and judicial efficiency in action, and provides no grounds for mandamus.

## C.    The District Court Did Not Err in Its § 1404 Analysis.

Petitioners argue that the district court also "clearly abused its discretion by not analyzing convenience factors in view of the precedence to be given Google's California Action." AS.Pet.15. Petitioners' arguments fail for at least two reasons. First, their reliance on the NDCA court's conclusion (under a motion-to-dismiss standard) that the EDTX was not a clearly more convenient forum *for the Google case*, AS.Pet.15, is fundamentally misplaced. That analysis considered none of *Petitioners*' contacts, and in any event, the NDCA court has since indicated that it will likely send Google's California case to Texas for reasons of judicial efficiency. RA127-28. Second, Petitioners repeatedly ignore that, as the district court found, they principally supported their motion to transfer with vague generalizations, rather than with specific evidence. AS4-8; HTC4-8. It could never be a clear abuse of discretion to find that a party offering vague generalizations has failed to carry its burden to make a "clearly more convenient" showing.

### 1.    The NDCA court's analysis on the motion to dismiss, which considered none of Petitioners' contacts, is not relevant.

Rather than focusing on the reasonable and supported transfer analyses of

the district court in these Texas cases, Petitioners focus on the NDCA court's initial conclusion, on a motion to dismiss *Google's* suit, that "the relevant factors do not favor [transfer to] Texas." HTC.Pet.15; HTC944. Petitioners' reliance on that conclusion is fundamentally misplaced for at least four reasons.

First, as noted, that conclusion came in the context of a motion to dismiss, and was thus reached under an entirely different standard—one based on the allegations pled in *Google's* complaint and in which the court resolved "any conflicts in the allegations and evidence … in [*Google's*] favor." HTC921. Petitioners face an entirely different burden here, and the district court would clearly err by *assuming* transfer was appropriate and resolving any conflicts in *the movants'* favor. *Volkswagen*, 545 F.3d at 315. Second, also as noted, the decision whether to transfer these first-filed cases properly belonged to Texas court where these first-filed cases are pending, not to the California court where Google responded with its second-filed action. *Sutter*, 125 F.3d at 920. Third, the NDCA court's analysis did not take into account any of *Petitioners'* contacts, nor the contacts of any of the other mobile device manufacturers. HTC940-44. That analysis is thus completely irrelevant to the question at issue: whether Petitioners plainly proved that the NDCA is clearly more convenient than the EDTX *for the suits against Petitioners*. Fourth, in an order on the actual § 1404 transfer motion that was filed after the motion to dismiss was denied, RA39, the NDCA court has

24

now indicated that—given the EDTX court's findings—it believes judicial efficiency counsels consolidating these all of these actions in Texas, RA127-28.

Petitioners thus have it exactly backward: even considering the NDCA court's orders, the EDTX remains the presumptive forum, and no "direct conflict" is raised by proceeding with these Texas actions. HTC.Pet.21.

It should further be noted that, while Petitioners make much of the NDCA court's so-called "sham" finding, HTC.Pet.20, the California court did not find that *Rockstar's office and presence in Texas* is a sham. Instead it assumed, again under the motion-to-dismiss standard, that Rockstar "formed MobileStar" simply for the purpose of "avoiding jurisdiction" in fora other than Delaware and Texas. HTC925. That assumption was incorrect—as noted, Rockstar regularly creates subsidiaries to license its intellectual property in different markets, HTC901—but even so, it has nothing to do with Petitioners' *transfer* arguments.

### 2.    Petitioners failed to meet their § 1404 burden of proof before the district court.

Critically, Petitioners offer no substantial argument that the district court clearly erred in assessing their individualized contacts under § 1404. In fact, they acknowledge that the district court "correctly declined to simply redistribute the inconvenience of travel or substantially increase the cost of attendance for willing witnesses." HTC.Pet.19; AS.Pet.19. Their petitions for mandamus, like their motions to transfer in the district court, primarily rely on the NDCA court's initial

25

opinion denying Rockstar's motion to dismiss. Nevertheless, Petitioners offer a scattershot of arguments regarding the district court's treatment of the § 1404 convenience factors, HTC.Pet.17-21; AS.Pet.17-21, none of which has merit.

*Apple and Google Contacts Do Not Change the Analysis.* The district court reasonably concluded that Petitioners failed to meet their burden of proof regarding alleged witnesses and evidence from Google and Apple. AS6; HTC6. With respect to party witnesses, Petitioners complain that the court "noted" Rockstar's specific identification of "several potential witnesses who work at its Plano office," but did not "note" Google's reference to "*several hundred* Android engineers who work in the San Francisco Bay Area." LG.Pet.24-25. The vague reference to hundreds of engineers, however, did not identify *any* potential witnesses, and thus did little to advance their position. *In re Apple, Inc.*, 743 F.3d 1377, 1378-79 (Fed. Cir. 2014). Similarly, the district court pointed out that while Petitioners failed to "identify any particular nonparty witnesses who are expected to testify at trial," Rockstar "specifically identifie[d]" non-party witnesses in or near the Eastern District of Texas that it contended might be called to testify." AS6; HTC6.

Petitioners argue that the court should have given weight to the possibility that some unidentified employee of Apple (as a minority equity owner of Rockstar) and Apple's outside legal counsel (Kyle Krpata of Weil Gotshal) might be called to testify as a non-party witness. AS.Pet.18. It is true that the California district court,

operating under the markedly different standards governing motions to dismiss, credited Google's Apple-related hypothesizing. AS2076. But having reviewed the evidence (which demonstrated that Rockstar's equity owners do not direct or control Rockstar's licensing efforts, AS2038-45), the district court "view[ed] Google's asserted interest in Apple's testimony with some skepticism," and further noted "that other Rockstar parents—notably Ericsson and BlackBerry—maintain U.S. headquarters in Texas." HTC6. Even if Petitioners' conspiracy theory had merit, that would not impact the neutrality of this factor.

The district court also noted that, while Petitioners (and Google) averred that Google's documents were "accessible from Google's headquarters in the Northern District," Google was "pointedly silent on the physical location where said documents are stored." AS5; GG5. The court thus reasonably concluded that Petitioners (and Google) had failed to meet their burden of proof to establish the location of Google's documents. AS5; HTC5; AS2038-45, 2029-31.

*Rockstar Has Firm Roots in the EDTX.* Petitioners suggest that Rockstar's Plano office is a "[t]hinly veiled" "sham" "made in anticipation of litigation" to make the EDTX "appear convenient." HTC.Pet.20-21; AS.Pet.20-21. That is not true, and the NDCA court never suggested it was. HTC925. The Plano office is Rockstar's fully operational (and only) office with full-time employees doing patent prosecution, licensing, and litigation support. AS2038-45. For over a

decade, Nortel prosecuted patents and ran programs to monetize patents (including the patents-in-suit) less than a mile from the EDTX border. AS2038-45. Today, Rockstar employs five full-time employees in the Plano office, including three patent attorneys and an office administrator. AS2038-45. The patent-related activities conducted there are within Rockstar's normal course of business, and Rockstar holds its board meetings and annual strategy sessions at the Plano office. AS2038-45. Contrary to Petitioners' misleading suggestion, no party to these suits is Canadian. Rockstar is a U.S. entity, and its only office is in Plano.

In short, the Plano office is a real office, and nothing like the one at issue in *In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011). The district court reasonably concluded that Petitioners had failed to prove the longstanding connection between Nortel, Rockstar, and the EDTX was nothing but an artifact designed "to game the Court's transfer analysis." AS5; *Eolas Tech. v. Adobe Sys.*, No. 6:09-CV-446, 2010 U.S. Dist. LEXIS 104125, at *20-22 (E.D. Tex. Sept. 28, 2010), *aff'd sub nom. In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011).

*Considerations of Judicial Efficiency Favor the EDTX.* In addition to its careful analyses of the relevant private and public interest factors, the district court also considered the impact of transfer on judicial economy: "there are six Rockstar litigations currently pending in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for

28

all pre-trial purposes save venue." AS8. Because these cases will present "common issues of claim construction and damages, and (most likely) validity," the court concluded that judicial efficiency also counseled against transfer. AS8. Such a conclusion is fully supported by the case law. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010); *see also Micron*, 518 F.3d at 904-05 (approving consideration of "the possibility of consolidation with related litigation"). It is also fully consistent with the NDCA court's recent acknowledgement that judicial efficiency counsels transferring Google's California suit to the EDTX forum where these six related first-filed suits are consolidated for pre-trial purposes. RA128.

*The Public Interest Factor Is Neutral*. The district court concluded that the public interest factor was neutral. AS8; HTC8. Although Petitioners argued that this factor should weigh in favor of transfer, they again failed to satisfy their burden of proof to show any basis for a local interest in the NDCA. Instead, they merely argued that the NDCA would seek to "protect" products and intellectual property developed by Google. HTC82; AS76-77. But (unlike in *Hoffmann-LaRoche*) Petitioners made no showing that the accused products or accused functionality are developed in the NDCA. *Supra* Part V.B.2. At bottom, Petitioners' argument—properly rejected by the court—was nothing more than that the NDCA would be favorably biased towards them. HTC82; AS76-77.

29

### D.     The District Court Did Not Err in Its Stay Analysis.

Petitioners close by arguing that the district court erred in rejecting their motions to stay because—they baldly assert—the "California case filed by Android manufacturer Google will dispose of most, if not all, of the key issues in this case." HTC.Pet.23; AS.Pet.24. But the district court considered this assertion and rejected it: "a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved." GG10; AS9; HTC9. Petitioners have not shown that this conclusion was "patently erroneous," and the undisputed facts support it: Google refuses to indemnify Petitioners, and Petitioners refuse to be bound by the results in the California litigation. The Court's analysis in *Merial* holds here: "even if the [NDCA] action could be considered the first suit filed, the district court was well within its considerable discretion in concluding that principles of comity would not support a stay because the precise issues at stake differed between the proceedings, and a key party [any and all of: ASUS, HTC, and the other Petitioners] was absent from the [NDCA] action." 681 F.3d at 1299.

## VI.    CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny the petitions for mandamus.

Dated:  August 28, 2014         Respectfully submitted,


/s/ Theodore Stevenson, III
Theodore Stevenson, III
  *Principal Attorney*
David Sochia
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000

Joel L. Thollander
Joshua W. Budwin
Leah Buratti
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX  78701
(512) 692-8700

*Attorneys for Respondents Rockstar*
*Consortium US LP and MobileStar*
*Technologies, LLC*

31

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing OPPOSITION TO PETITIONS FOR WRIT OF MANDAMUS was served on August 28, 2014, by operation of the Court's CM/ECF system per FED. R. APP. P. 25.

Date: August 28, 2014

/s/ Joel L. Thollander
Joel L. Thollander