2014-1724

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

INTELLECTUAL VENTURES II LLC,

Plaintiff-Appellee,

v

JPMORGAN CHASE & CO., et al.,

Defendants-Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
IN CIVIL ACTION NO. 13-CV-03777,
JUDGE ALVIN K. HELLERSTEIN, PRESIDING

## PLAINTIFF-APPELLEE'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS DEFENDANTS-APPELLANTS' APPEAL

Elizabeth Day
Ian Feinberg
Marc Belloli
Nickolas Bohl
FEINBERG DAY ALBERTI &
    THOMPSON, LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
650.618.4360

Thomas  R. Burns, Jr.
ADDUCI, MASTRIANI, &
    SCHAUMBERG, LLP
1133 Connecticut Ave., NW, 12th Flr.
Washington, DC 20036
202.467.6300

*Attorneys for Intellectual Ventures II LLC*

Date:  September 22, 2014

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Intellectual Ventures II LLC           v. JPMorgan Chase & Co., et al.

No. 14-1724

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellee Intellectual Ventures certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Intellectual Ventures II LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Ian Feinberg, Marc Belloli, Elizabeth Day, Nickolas Bohl - Feinberg Day Alberti & Thompson LLP;
Thomas R. Burns Jr. - Adduci, Mastriani & Schaumberg, LLP

| 09/02/2014 | /s/ Thomas R. Burns, Jr. |
| Date | Signature of counsel |
| | Thomas R. Burns, Jr. |
| | Printed name of counsel |

Please Note: All questions must be answered

cc: Counsel of Record

# **TABLE OF CONTENTS**

I.    **ARGUMENT**................................................................................1

    A.    A CBMR "Proceeding" Begins Only If the PTO Grants a
          CBMR Petition...................................................................................1

    B.    There Is No Statutory or Other Support for JPMC's
          Misreading of "Transitional Proceeding"..............................................4

    C.    The AIA Provides No Support for JPMC's Appeal as to
          the IPR-Related Patents.......................................................................7

II.    **CONCLUSION** ...........................................................................8

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  No. 2014-1232, 2014 WL 3360806 (Fed. Cir. July 10, 2014) ...............................7

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................................8

28 U.S.C. § 1292(c) ...................................................................................................8

AIA § 18 ......................................................................................................................7

AIA § 18(a)(1)(B) ......................................................................................................1

AIA § 18(a)(1)(E) ......................................................................................................2

Plaintiff-Appellee Intellectual Ventures II, LLC ("IV) submits this Reply in support of IV's Motion to Dismiss for lack of jurisdiction.[1]

## I.     ARGUMENT

### A.     A CBMR "Proceeding" Begins Only If the PTO Grants a CBMR Petition

The controlling question is when does a "transitional proceeding" begin under Section 18 of the AIA.  Defendants-Appellants JPMorgan Chase & Co. ("JPMC") asks this Court to read Section 18 in a particularly broad way and find that a "transitional proceeding" begins anytime anyone files a CBMR petition.  IV submits that a "transitional proceeding" does not begin unless and until the PTO grants the CBMR petition, or in the words of the statute, when the Director institutes the proceeding.

JPMC reads "petition" synonymously with "proceeding," but the AIA distinguishes between those terms throughout its text, including in Section 18. Section 18(a)(1)(B) describes a person filing *"a petition for* a transitional proceeding with respect to a covered business method patent."  AIA § 18(a)(1)(B) (emphasis added).  But JPMC's proposed interpretation reads "petition for" out of Section 18(a)(1)(B) and ignores that a petition requests the PTO to institute a

---

[1] Non-party Askeladden, LLC has sought leave to file an *amicus* brief supporting JPMC's Opposition. Dkt. Nos. 30-31.  IV opposes Askeladden's motion for leave and will respond to Askeladden's brief should the Court grant Askeladden leave to file.

transitional proceeding. This is confirmed by Section 18(a)(1)(E), which says that "[t]he Director may institute a transitional proceeding only for a patent that is a covered business method patent." AIA § 18(a)(1)(E). It is the Director that decides to institute a transitional proceeding; in other words, the PTO has control over when (and if) a proceeding begins. The mere filing of the petition does not and cannot institute a proceeding, or else baseless and frivolous petitions could obtain stays before they receive any consideration on the merits by the PTO. And because Section 18(b) is "relating to a transitional proceeding" it only applies after a CBMR proceeding exists, and only after the PTO has instituted the proceeding and granted the petition. Because the PTO has not granted any CBMR petitions here, there is no transitional proceeding and this Court lacks jurisdiction to hear JPMC's appeal.

JPMC would have the Court overlook this plain meaning and allow a district court to create appellate jurisdiction outside the bounds of the statute by applying factors similar to those recited in Section 18(b)(1). Opp. at 2-3. In denying JPMC's motion to stay, Judge Hellerstein emphasized that the CBMR petitions had only been filed and not granted. Ex. 8 to Mot. (Order Denying First Motion to Stay). He found that "the criteria for a stay generally and § 18(b)(1) suggest the same result" and said in a footnote: "I assume, without deciding, that § 18(b)(1) applies, even though at this time no CBMR has been instituted." *Id.* at 4 n.3. He

2

made no explicit finding that Section 18(b)(1) applied here and did not exclusively rely on Section 18(b)(1) in denying JPMC's motion to stay. Rather, he found that the result was the same under either test—indeed, the factors are substantially the same—without deciding if Section 18(b)(1) applied. *Id.* at 3-4. There is no basis for this Court to find that the District Court's Order constituted a "decision under paragraph (1)." Opp. at 2-3 (citing AIA § 18(b)(2)).

And, even if Judge Hellerstein had explicitly relied on Section 18(b)(1) or found that it applied, he cannot create appellate jurisdiction where none otherwise exists. Section 18(b) only applies for motions to stay due to transitional proceedings, and only authorizes interlocutory appeals where there is a transitional proceeding. If a district court applied Section 18(b) to a motion to stay pending an IPR petition or proceeding, for example, this Court would not have appellate jurisdiction based on a district court's interpretation of the AIA. Nor can this Court create jurisdiction for itself—as JPMC invites—based on a strained reading of the district court's order.

District courts are of course free to apply the factors of Section 18(b)(1) even when a proceeding has not been instituted.[2] Doing so largely mirrors the

---

[2] Whether other courts may or may not have applied Section 18(b) correctly is not at issue here. Rather, Judge Hellerstein was clear to say he was not holding that Section 18(b) applied.

analysis a district court would undertake if the PTO did institute a petition, and the factors are substantively the same as those a district court uses for any other stay. A party may file for a stay at any point in any litigation—nothing in Section 18(b) prevents that or limits that. Generally, such orders granting or denying a stay are not ripe for appellate review unless the district court states that they are interlocutory orders or there is some other statutory basis. Here there is no interlocutory order and no statutory basis for appeal. Section 18(b) is directed to stays relating to an instituted proceeding and appellate review is limited only to orders regarding motions to stay in light of an instituted proceeding. Without such a proceeding here, the Court has no jurisdiction to hear JPMC's interlocutory appeal.

### B.    There is No Statutory or Other Support for JPMC's Misreading of "Transitional Proceeding"

JPMC tries to distract from the plain meaning of Section 18(b) by quoting other parts of the section that are not only inapplicable, but do not support JPMC's strained reading of Section 18. These sections require the Director to establish regulations for CBMR proceedings. But they do not tie a "transitional proceeding" to the filing of a petition. Instead, Section 18(a)(1) requires that the Director establish the regulations for implementing a "review proceeding." *See* Opp. at 4 (quoting AIA § 18(a)(1)). This does not refer to nor involve a CBMR petition, and it certainly does not say that a proceeding begins when a petition is filed. And

Section 18(d)(2) requires the Director to establish regulations for deciding whether a patent is a technological invention. *See id.* (quoting AIA § 18(d)(2)). Again, this says nothing about a proceeding beginning when a petition is filed. These sections are relevant to the proceeding itself—the trial that is instituted by the Director per Section 18(a)(1)(E)—and are commensurate with the plain meaning of the statute. The Director is charged with deciding when to institute a proceeding and is likewise charged with establishing the regulations to determine how to do that and how to conduct the proceeding, should the PTO institute it.

JPMC also cites to the Code of Federal Regulations, arguing that certain definitions trump the statute's plain meaning. *See id.* (quoting 37 CFR § 42.2). But nothing in 37 CFR § 42.2 suggests that a "transitional proceeding" begins when a petition is filed. Tellingly, the CFR section uses different terms than the AIA. The CFR defines a "preliminary proceeding" as starting with a petition being filed, but the AIA does not use that term. Nor does the CFR define or use "transitional proceeding." The AIA differentiates between petitions and proceedings, whereas the CFR differentiates between petitions and trials. Even if 37 CFR § 42.2 did define a "transitional proceeding" as beginning with a petition, it cannot overrule the statute that explicitly says a proceeding is instituted by the Director.

JPMC argues that if a proceeding begins when the Director institutes it, as the statute says, then this Court's jurisdiction is "subject to the scheduling whims and caseload of the PTO." Opp. at 5. Not so. This argument incorrectly assumes all CBMR petitions will be granted, the only barrier being the PTO's schedule. This fallacy underlies JPMC's entire opposition. A petition does not guarantee a transitional proceeding. There are statutory restrictions; not every patent petitioned is a covered business method. Indeed, the two patents for which JPMC has filed CBMR petitions claim technological inventions and are thus outside the scope of Section 18. Similarly, two IPR petitions filed against the '409 patent, for which JPMC has also filed a CBMR petition, were recently denied. *See* Exs. 1, 2 (September 22, 2014 PTAB Decisions Denying Institution of *Inter Partes* Review). Thus, any speculative concerns of dual *fora* and duplicative efforts would have been ill founded as the PTO did not ultimately institute a proceeding based on these petitions.

Nor does a plain reading of the statute run afoul of Section 18(b)(2)'s instruction that this Court "shall review the district court's decision to ensure consistent application of established precedent." Opp. at 5 (quoting AIA § 18(b)(2)). The Court already explained in *VirtualAgility* that the district court has discretion to grant, delay, or deny a motion to stay before a CBMR petition is granted. *VirtualAgility Inc. v. Salesforce.com, Inc.*, No. 2014-1232, 2014 WL

3360806 at *7 (Fed. Cir. July 10, 2014). It is only after the petition is granted—and the proceeding has been instituted—that the concerns of duplicative matters, wasted resources, or conflicting decisions become possibilities. Until the proceeding is instituted, these concerns are conjecture. JPMC repeatedly quotes from Senator Schumer's comments concerning Section 18, but those comments address only when a CBMR petition has been granted. *See* Opp. at 6-7. This is why the AIA differentiates between filing a petition and instituting a proceeding: the former does not guarantee the latter, as JPMC would presume.

### C.     The AIA Provides No Support for JPMC's Appeal as to the IPR-Related Patents

Finally, JPMC urges the Court to find jurisdiction to stay all five patents in this case, even though CBMR petitions have only been filed for two of them. While the parties dispute whether Section 18(b)(2) allows interlocutory review of stay pending a CBMR proceeding or a CBMR petition, there is no dispute that Section 18 applies only to the "[t]ransitional program for covered business method patents." Title of AIA, § 18. The AIA provides absolutely no authority for an interlocutory appeal of the remaining three patents because no CBMR petitions have been filed for those patents (and none instituted). JPMC does not cite to any on-point case law that this Court can (or should) grant itself such broad authority. JPMC cites a number of unrelated cases that this Court "may" address other issues besides what is properly before it. These cases discuss interlocutory review in the

context of an interlocutory order. *See* Opp. at 7-8. There is clear statutory authority for review of the entirety of an order when it is an interlocutory order. *See* 28 U.S.C. § 1292(b) (stating that a district court may state in writing whether an order is interlocutory), § 1292(c) (stating that the Court of Appeals for the Federal Circuit shall have exclusive jurisdiction "of an appeal from an interlocutory order described in subsection (a) or (b) of this section"). Judge Hellerstein did not state his order denying JPMC's motion to stay was an interlocutory order. Moreover, Judge Hellerstein was careful to decide the issues of the IPR petitions separately from the CBMR petitions. Ex. 8 to Mot. (Order Denying First Motion to Stay) at 2-3. Thus, the scope of JPMC's appeal should at most only extend to the '409 and '574 patents, for which CBMR petitions have been filed.

## II.    **CONCLUSION**

Section 18 of the AIA is clear: a petition requests that a "transitional proceeding" be instituted and the Director institutes it by granting the petition. Since no petitions have been granted, JPMC cannot seek an interlocutory appeal. Thus, IV respectfully requests that the Court dismiss JPMC's appeal for lack of jurisdiction.

Dated:  September 22, 2014          Respectfully submitted,

/s/ Thomas R. Burns, Jr.
Thomas R. Burns, Jr., 70857
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1133 Connecticut Ave., NW, 12th Floor
Washington, DC 20036
burns@adduci.com
Telephone:  202.467.6300
Facsimile:   202.466.2006

Elizabeth Day
Ian Feinberg
Marc Belloli
FEINBERG DAY ALBERTI &
      THOMPSON, LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Telephone:  650.618.4360

FEIN700214-4

# EXHIBIT 1

Trials@uspto.gov                                                Paper 16
571-272-7822                                      Entered: September 22, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Petitioner,

v.

INTELLECTUAL VENTURES II LLC,
Patent Owner.

_____

Case IPR2014-00673
Patent 6,314,409 B2

Before KRISTEN L. DROESCH, JENNIFER S. BISK, and
JUSTIN BUSCH, *Administrative Patent Judges.*

DROESCH, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-00673
Patent 6,314,409

## I.  INTRODUCTION

### A.  Background

International Business Machines Corporation ("Petitioner") filed a Petition[1] (Paper 12, "Petition" or "Pet.") to institute an *inter partes* review of claims 23–27, 29, 30, 32, 33, and 36–40 ("the challenged claims") of U.S. Patent No. 6,314,409 B2 (Ex. 1006, "the '409 Patent").  35 U.S.C. §§ 311–319.  Intellectual Ventures II LLC ("Patent Owner") timely filed a Preliminary Response to the Petition.  Paper 13 ("Prelim. Resp.").  We determine on this record that, under 35 U.S.C. § 314(a), the Petition does not demonstrate a reasonable likelihood that Petitioner would prevail in showing that claims 23–27, 29, 30, 32, 33, and 36–40 are unpatentable.

### B.  Related Proceedings

Petitioner indicates the '409 Patent is at issue in several district court proceedings involving numerous parties.  Pet. 2, Paper 15 ("Second Amended Mandatory Notice") 2–3.  Petitioner further indicates that none of the district court proceedings name Petitioner as a defendant.  Pet. 2; Second Amended Mandatory Notice 2.

Petitioner concurrently filed a petition for *inter partes* review of claims 1–11 and 13–21 of the '409 Patent (IPR2014-00672).  Second Amended Mandatory Notice 3.  Compass Bank, Commerce Bancshares, Inc., and First National Bank of Omaha collectively filed two petitions for *inter partes* review of the '409 Patent (IPR2014-00719, IPR2014-00722).  *Id.*  J.P. Morgan Chase & Co., JPMorgan Chase Bank, Nat'l Ass'n, Chase

---

[1] "Petition" and "Pet." refer to the Second Corrected Petition filed May 29, 2014.

IPR2014-00673
Patent 6,314,409

Bank USA, Nat'l Ass'n, Chase Paymentech Solutions LLC, and Paymentech
LLC collectively filed a petition for covered business method review of the
'409 Patent (CBM2014-00157). *Id.* at 4.

### C. The '409 Patent (Ex. 1006)

The '409 Patent relates to methods, devices, and systems for
controlling access to, and use, distribution, and secondary distribution of
data. Ex. 1006, Abs.; col. 6, l. 63–col. 7, l. 9.

Figure 1 of the '409 Patent is reproduced below:



Figure 1 depicts digital data access and distribution system 100, including
distributor 102 and user 104. Ex. 1006, col. 9, ll. 11–13, 51–55. Distributor
102 provides packaged data 108 over communication channel 105 to user
104 in return for payment 110. *Id.* at col. 9, ll. 55–58. Specifically,
authoring mechanism 112 of distributor 102 produces packaged data 108
from data 106, and distribution mechanism 118 of distributor 102 provides
packaged data 108 to user 104. *Id.* at col. 9, ll. 61–64. Packaged data 108
includes an encrypted body part, an unencrypted body part, and access rules
116 in encrypted form. *Id*. at col. 9, ll. 64–66; col. 10, ll. 47–53, 60–65; *see
id.* at Fig. 2. Packaged data 108 can be transmitted openly using
communication channel 105, which may be insecure. *Id*. at col. 15, ll. 25–

3

IPR2014-00673
Patent 6,314,409

29; col. 24, ll. 49–51.  Access mechanism 114 enables user 104 to access

packaged data 108 in controlled ways depending on access rules 116.  *Id*. at

col. 10, ll. 1–5; col. 15, ll. 31–35; col. 17, ll. 45–52.  Transmission, printing,

display, and output of an unencrypted copy of the data by user 104 also can

be prevented or restricted according to access rules.  *Id.* at col. 15, ll. 50–54;

col. 17, ll. 24–40; col. 25, ll. 15–28; col. 25, l. 59–col. 26, l. 6; col. 26, ll.

11–29; col. 27, ll. 11–24.

A user may invoke access mechanism 114 by accessing an object

(data) via an insecure operating system which invokes access mechanism

114.  Ex. 1006, col. 17, l. 65–col. 18, l. 7; col. 18, ll. 18–21.

Figure 10a of the '409 Patent is reproduced below:



Figure 10a depicts a flow chart of data access using access mechanism 114.

Ex. 1006, col. 9, ll. 30–31.  Access mechanism 114 first determines whether

the data set containing the data elements is already open (step S1000).  *Id.* at

4

IPR2014-00673
Patent 6,314,409

col. 18, ll. 22–24.  If the data set is not already open, access mechanism 114 opens the data set (step S1001).  *Id.* at col. 18, ll. 24–25.  Next, access mechanism 114 determines whether the dataset is protected (step S1002), and, if it is protected, determines whether the rules for the dataset are usable (step S1004).  *Id.* at col. 18, ll. 25–27, 33–38.  If the rules are usable (step S1004), access mechanism 114 determines whether the data element being accessed is different from the most recently accessed data element (step S1008), and opens the data element (step S1010) if it is different.  *Id.* at col. 18, ll. 39–43.  Next, access mechanism 114 determines whether the data element is protected (step S1012) and whether access is permitted according to the rules (step S1014), and makes the data element available (step S1018) if access to the data element is permitted.  *Id.* at col. 18, ll. 44–59.  Following these determinations, control returns to the invoking process (step S1006).  *Id.*

### D. Illustrative Claims

Claims 23–25, 30, 32, 33, 36, and 38 are independent claims.  Claims 26, 27, and 29 depend from claim 25, claim 37 depends from claim 36, and claims 39 and 40 depend from claim 38.  Claims 23–25 and 36 are illustrative:

> 23. A method of controlling secondary distribution of data, the method comprising:
> protecting portions of the data;
> protecting rules defining access rights to the data;
> openly providing the protected portions of the data and the protected rules to a device having an access mechanism; and
> limiting transmission of the protected portions of the data from the device (a) only as protected data or (b) in accordance with the rules as enforced by the access mechanism, so that unauthorized

access to the protected portions of the data is not to an unprotected form of the protected portions of the data.

24. A method of accessing openly distributed data, the method comprising:

obtaining openly distributed data having protected data portions and rules defining access rights to the protected data portions; and

limiting each and every access to an unprotected form of the protected data portions in accordance with the rules as enforced by an access mechanism, so that unauthorized access to the protected portions of the data is not to the unprotected form of the protected data portions.

25. A device for displaying images represented by data comprising protected data portions and rules defining access rights to the data, the device comprising:

means for storing the rules;

an access mechanism for accessing the data only in accordance with the rules, whereby user access to an unprotected form of the protected data portions is permitted by the access mechanism only if the rules indicate that the user is allowed to access the protected portions of the data, the access being enforced by the access mechanism; and means for displaying the images represented by the data.

36. A process control system comprising a device for controlling access to data, the data comprising protected data portions and rules defining access rights to the data, the device comprising:

means for storing the rules; and

an access mechanism for accessing the unprotected form of the protected data portions only in accordance with the rules, whereby output of an unprotected form of the protected data portions is permitted by the access mechanism only in such manner as is permitted by the rules.

IPR2014-00673
Patent 6,314,409

## II. ANALYSIS

### A. Claim Construction

In an *inter partes* review, claim terms are given their broadest reasonable interpretation in light of the specification in which they appear and the understanding of others skilled in the relevant art. *See* 37 C.F.R. § 42.200(b).

### 1. Proposed Constructions

Petitioner proposes constructions for the following claim terms: "openly distributed," "means for generating," "means for storing/storage means," "means for displaying," "means for outputting," "virtual machine," and "internal rule." Pet. 5–6. Patent Owner disputes Petitioner's analysis, and provides its own constructions for the same claim terms. Prelim. Resp. 12–14. We determine that for purposes of this Decision, none of the disputed claim terms requires an explicit construction.

### 2. Remaining Claim Terms or Phrases

All remaining claim terms and phrases recited in the challenged claims are given their ordinary and customary meanings, consistent with the Specification, as would be understood by one with ordinary skill in the art, and need not be construed explicitly for purposes of this Decision.

IPR2014-00673
Patent 6,314,409

### B. Asserted Grounds of Unpatentability

Petitioner contends the challenged claims are unpatentable under 35 U.S.C. §§ 102 and 103 on the following specific grounds (Pet. 4):

| Reference[s][2] | Basis | Claims |
|---|---|---|
| Digibox | § 102(b) | 24, 25, 30, 32, 33, 36, 38, and 40 |
| Digibox and Stefik | § 103(a) | 23, 26, 27, 29, 37, and 39 |
| Cooper | § 102(b) | 24, 25, 30, 32, 33, 36, 38, and 40 |
| Cooper and Stefik | § 103(a) | 23, 26, 27, 29, 37, and 39 |

### 1. Unpatentability of Claims 24, 25, 30, 32, 33, 36, 38, and 40 Under 35 U.S.C. § 102(b) as Anticipated by Cooper

Petitioner contends that claims 24, 25, 30, 32, 33, 36, 38, and 40 are unpatentable under 35 U.S.C. § 102(b) as anticipated by Cooper.  Pet. 5, 8–13, 32–35, 40–46, 48–59.

### a. Cooper (Ex.1009)

Cooper describes a method and apparatus for distributing software objects from a producer to potential users which allows the user a temporary trial period without subjecting the software product to unnecessary risks of piracy or unauthorized utilization beyond the trial period.  Ex. 1009, col. 2, ll. 28–33.  The software object is preferably provided on a computer accessible media (e.g., magnetic media diskette, CD-ROM) along with a file management program.  *Id.* at col. 2, ll. 33–38.  The file management

---

[2] The Petition relies on the following references: Olin Sibert, *et al.*, DigiBox: A Self-Protecting Container for Information Commerce, Proceedings of the First USENIX Workshop on Electronic Commerce New York, New York, July 1995 (Ex. 1008, "Digibox"); U.S. Patent No. 5,689,560 (Ex. 1009, "Cooper"); Mark Stefik, Letting Loose the Light: Igniting Commerce in Electronic Publication, March 1995 (Ex. 1015, "Stefik").  The Petition also relies on the Declaration of Mr. William R. Rosenblatt (Ex. 1001).

program is executed by a user controlled data processing system that restricts access to the software object for a predefined and temporary trial period. *Id*. at col. 2, ll. 45–48. During the temporary trial mode of operation, the software object is temporarily enabled by decryption of the encrypted software object when the software object is called by the operating system of the user-controlled data processing system. *Id.* at col. 2, ll. 48–54. The file management program preferably prevents copying operations, so the encrypted software object is temporarily decrypted when it is called by the operating system. *Id*. at col. 2, ll. 54–58.

The trial software product is encrypted utilizing a temporary access product key which is based upon one or more data processing system attributes and a derived machine identification value. Ex. 1009, col. 6, l. 65–col. 7, l. 4; col. 7, l. 51–col. 8, l. 8; col. 8, ll. 57–67; Figs. 3–4; *see id.* at col. 9, l. 1–col. 16, l. 5; Figs. 5–18. The file management program stores the temporary access product key on the user-controlled data processing system in a key file. *Id.* at col. 13, ll. 45–66. The key file includes the product key, customer key, machine identification number, and the trial interval data. *Id.* at col. 15, ll. 62–67; Fig. 18; *see id.* at col. 15, ll. 9–34; Figs. 14–15. When the encrypted software product is called for processing by the user-controlled data processing system, the encrypted file and the key file are fetched. *Id.* at col. 16, ll. 10–17; Fig. 19. The product key, customer key, and machine identification information included in the key file are applied as inputs to a decryption engine that outputs a real key. *Id*. at col. 16, ll. 20–32; Figs. 19–21. The real key and encrypted software object are input to the decryption engine which outputs the decrypted software object. *Id*. at col. 16, ll. 42–47; Fig. 23.

IPR2014-00673
Patent 6,314,409

### b. Independent Claim 24

Petitioner argues in the claim charts that Cooper discloses "rules defining access rights to the protected data portions" and "limiting each and every access to an unprotected form of the protected data portions in accordance with the rules as enforced by an access mechanism," as recited in claim 24. Pet. 40–42. Petitioner asserts the claimed "rules defining access rights to the protected data portions" corresponds to copy prevention, "user interval rules" enforced with keys, and trial interval data encrypted to the product key. *Id.* Petitioner further asserts the claimed "access mechanism" corresponds to Cooper's file management program. *Id.* Petitioner appears to equate the claimed "unprotected form of the protected data portions" to Cooper's disclosure of "decryption of the encrypted software object." *Id.* at 42 (quoting Ex. 1009, col. 2, ll. 45–57).

The Petition does not explain how Cooper discloses rules defining access rights to the protected data portions, and how Cooper discloses limiting each and every access to the decrypted software object (i.e., the unprotected form of the protected data portions) in accordance with the rules as enforced by the file management program (i.e., access mechanism). The quotations from Cooper provided in the claim chart disclose the "file management system preferably prevents copying operations." Pet. 42 (quoting Ex. 1009, col. 2, ll. 45–57). However, the Petition does not explain sufficiently how Cooper's preferable prevention of copying operations discloses rules defining access rights to the protected data portions, and how Cooper discloses limiting each and every access to the decrypted software object (i.e., unprotected form of the protected data portions) in accordance with Cooper's preferable prevention of copying operations. The Petition

10

also does not provide evidence sufficient to demonstrate that Cooper discloses "user interval rules," as asserted by Petitioner. *See id.* The quotations from Cooper provided in the claim chart disclose trial interval data 374 input to a product key encryption engine 375. *Id.* at 42 (quoting Ex. 1009, col. 15, ll. 4–20). However, the Petition does not explain sufficiently how Cooper's trial interval data 374 encrypted to the key discloses rules defining access rights to the protected data, and how Cooper discloses limiting each and every access to the decrypted software object (i.e., the unprotected form of the protected data portions) in accordance with the trial interval data encrypted to the key as enforced by the file management program (i.e., access mechanism).

Therefore, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that Cooper anticipates claim 24.

### *c. Independent Claims 25, 30, 32, 33, and 38*

Petitioner argues in the claim charts that Cooper discloses "rules defining access rights to the data" and "an access mechanism for accessing the data only in accordance with the rules, whereby user access to an unprotected form of the protected data portions is permitted by the access mechanism only if the rules indicate that the user is allowed to access the protected portions of the data," as recited in independent claim 25, and similarly recited in independent claims 30, 32, 33, and 38. Pet. 42–45, 48–52, 56–57. Petitioner asserts the claimed "rules defining access rights to the data" corresponds to Cooper's trial interval data encrypted to the product key (*id.* at 42–43, 48–49, 56; *see id.* at 51), and the claimed "access mechanism" corresponds to Cooper's file management program (*id.* at 45;

11

*see id*. at 49–52, 57). Petitioner further asserts the claimed "unprotected form of the protected data portions" corresponds to Cooper's disclosure of "decryption of the encrypted software object." *Id.* at 45 (quoting Ex. 1009, col. 2, ll. 45–57); *see id*. at 49–52, 57.

For similar reasons as those explained above addressing independent claim 24, the Petition does not explain sufficiently how Cooper's trial interval data encrypted to a product key discloses rules defining access rights to the data. The Petition also does not explain sufficiently how Cooper discloses user access to the decrypted software object (i.e., an unprotected form of the protected data) is permitted by the file management program (i.e., access mechanism) only if the trial interval data encrypted to the key indicates that the user is allowed to access the encrypted software object (i.e., protected portions of the data).

Accordingly, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that Cooper anticipates claims 25, 30, 32, 33, and 38.

### d. *Independent Claim 36*

Petitioner contends in the claim charts that Cooper discloses "rules defining access rights to the data" and "an access mechanism for accessing the unprotected form of the protected data portions only in accordance with the rules, whereby output of an unprotected form of the protected data portions is permitted by the access mechanism only in such manner as is permitted by the rules," as recited in independent claim 36. Pet. 52–55. Petitioner asserts the claimed "rules defining access rights to the data" corresponds to copy prevention, "user interval rules" enforced with keys, and trial interval data encrypted to the product key. *Id*. at 52, 54. Petitioner

12

IPR2014-00673
Patent 6,314,409

further asserts the claimed access mechanism corresponds to Cooper's file management program. *Id.* at 54. Petitioner appears to equate the claimed "unprotected form of the protected data portions" to Cooper's disclosure of "decryption of the encrypted software object." *Id.* at 54–55 (quoting Ex. 1009, col. 2, ll. 45–57).

For similar reasons as those explained above addressing independent claim 24, the Petition does not explain sufficiently how Cooper's preferable copy prevention, or trial interval data encrypted to the product key discloses rules defining access rights to the data. Also, for similar reasons as those explained above addressing independent claim 24, the Petition does not provide evidence sufficient to demonstrate that Cooper discloses "user interval rules," as asserted by Petitioner. *See* Pet. 54. The Petition also does not explain sufficiently how Cooper discloses output of the decrypted software object (i.e., an unprotected form of the protected data) is permitted by the file management system (i.e., access mechanism) only in such a manner as permitted by Cooper's preferable prevention of copying, or the trial interval data encrypted to the key. At best, the quotations from Cooper provided in the claim chart disclose that a decryption driver does not allow the *encrypted* product to be copied. Pet. 55 (quoting Ex. 1009, col. 12, ll. 13–25) (emphasis added).

Therefore, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that Cooper anticipates claim 36.

IPR2014-00673
Patent 6,314,409

### 2. *Unpatentability of Claims 24, 25, 30, 32, 33, 36, 38, and 40 Under 35 U.S.C. § 102(b) as Anticipated by Digibox*

Petitioner contends that claims 24, 25, 30, 32, 33, 36, 38, and 40 are unpatentable under 35 U.S.C. § 102(b) as anticipated by Digibox. Pet. 5, 8–8–32.

#### a. *Digibox (Ex. 1008)*

Digibox describes that DigiBox is a foundation technology within InterTrust Virtual Distribution Architecture. Ex. 1008, 7. DigiBox provides a secure container to package information so that the information cannot be used except as provided by the rules and controls associated with the content. *Id.* InterTrust rules and controls specify what types of content usage are permitted. *Id.* DigiBox is a container for both digital property (content) and controls. *Id.*

#### b. *Claims 24, 25, 30, 32, 33, 36, 38, and 40*

Petitioner asserts in the claim charts that Digibox discloses "limiting each and every access to an unprotected form of the protected data portions in accordance with the rules as enforced by an access mechanism," as recited in claim 24, "user access to an unprotected form of the protected data portions is permitted by the access mechanism only if the rules indicate that the user is allowed to access the protected portions of the data," as recited in independent claim 25, and similarly recited in independent claims 30, 32, 33, and 38, and "output of an unprotected form of the protected data portions is permitted by the access mechanism only in such manner as is permitted by the rules," as recited in independent claim 36. Pet. 18–19; 20–21, 25, 27–28, 29–31. In support of these assertions, Petitioner provides, in the claim charts, quotations from Digibox, and citations to certain paragraphs of Mr.

14

Rosenblatt's Declaration. *Id.* at 18–19 (quoting Ex. 1008, 7–8; citing Ex. 1001 ¶¶ 105–107); 20–21 (quoting Ex. 1008, 8; reproducing Ex. 1008, Fig. 3 (with emphasis); citing Ex. 1001 ¶¶ 114–117); 25 (citing Ex. 1001 ¶¶ 143–146); 27 (citing Ex. 1001 ¶¶ 154–157); 28 (citing Ex. 1001 ¶¶ 165–169); 29–30 (quoting Ex. 1008, 7–8; citing Ex. 1001 ¶¶ 178–180); 30–31(citing Ex. 1001 ¶¶ 196–199).

We agree with Patent Owner that the Petition only addresses limiting access to protected (i.e., encrypted) forms of the data, and does not explain how Digibox discloses limiting access to an unprotected form of the protected data as enforced by an access mechanism, as required by claims 24, 25, 30, 32, 33, 36 and 38.  Prelim. Resp. 15, 17–22; *see* Pet. 17–22, 24–31.  For example, the quotations provided in the claim chart provide the following disclosures from Digibox:  (1) DigiBox provides a secure container to package information so that the information cannot be used except as provided by the rules and controls, (2) almost all information in a DigiBox is encrypted, and (3) access to the *encrypted* form is provided through a storage manager.  Pet. at 18–19 (quoting Ex. 1008, 8) (emphasis added); *see id.* at 20–21, 25, 27, 29–31.

Accordingly, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that Digibox anticipates claims 24, 25, 30, 32, 33, 36, 38, and 40.

IPR2014-00673
Patent 6,314,409

### 3.  Unpatentability of Claims 23, 26, 27, 29, 37, and 39 Under 35 U.S.C. § 103(a) as Obvious Over Digibox and Stefik, and Over Cooper and Stefik

Petitioner contends that claims 23, 26, 27, 29, 37, and 39 are unpatentable under 35 U.S.C. § 103(a) as obvious over Digibox and Stefik, and over Copper and Stefik.  Pet. 5, 8–15, 22–24, 30–40, 46–48, 56–57.

#### a.  Stefik (Ex. 1015)

Stefik describes the technological innovations that enable and support commerce in digital publishing, and the institutional and business challenges.  Ex. 1014, 5.  Stefik describes the concepts of trusted systems (*id*. at 9–11), usage rights tagged to the digital work (*id*. at 11–13, 17, 26, 34–35), copying and transferring digital works (*id*. at 13–14), rendering digital books (*id*. at 14–16), making derivative works (*id*. at 16–18), distribution to consumers (*id.* at 18), licensing and digital certificates (*id*. at 18–20, 26, 31, 33), repository trust and security (*id*. at 11, 20–22, 27–28), and compensation transactions (*id*. at 23).

#### b.  Independent Claim 23

Petitioner contends that because both Digibox and Stefik, and both Cooper and Stefik address the digital piracy problems of the mid-1990s, one having ordinary skill in the art would have been motivated to combine the teachings of Digibox and Stefik, and the teachings of Cooper and Stefik. Pet. 12–13 (citing Ex. 1001 ¶¶ 67–73), 35 (citing Ex. 1001 ¶¶ 215–222). Petitioner asserts that Digibox and Stefik describe similar ways to control access to digital content by encrypting digital content, applying rules that specify usage rights, and using an access mechanism to ensure that access to content is only available in accordance with the rules.  *Id*. at 13.  Similarly,

16

IPR2014-00673
Patent 6,314,409

Petitioner contends that both Cooper and Stefik teach protecting digital content by means of encryption, applying rules that specify usage rights, and means for regulating access to content in accordance with rules. *Id*. at 35.

To support its contentions, Petitioner provides brief summaries of the general teachings of Digibox and Stefik, brief summaries of the general teachings of Cooper and Stefik, and claim charts allegedly explaining how the prior art references teach the subject matter recited in claim 23. Pet. 8–15, 32–40. In the claim charts, Petitioner relies on quotations from both Digibox and Stefik, and quotations from both Cooper and Stefik. *Id.* at 13–17, 36–40. Petitioner's summaries of Digibox and Stefik (*id.* at 8–13), summaries of Cooper and Stefik (*id.* at 32–35), quotations from both Digibox and Stefik (*id*. at 13–16), and quotations from both Cooper and Stefik (*id*. at 36–40) do not address meaningfully the scope and content of the prior art, and any differences between the claimed subject matter and the prior art. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). Petitioner's arguments that one with ordinary skill in the art would have been motivated to combine the teachings of the references to arrive at the claimed subject matter does not constitute a sufficient articulated reasoning with rational underpinning sufficient to support the conclusion that the claimed invention would have been obvious. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Petitioner's arguments do not address the elements of Digibox's method that are to be combined with the elements of Stefik's method, and do not address the elements of Cooper's method that are to be combined with the elements of Stefik's method. Absent a meaningful explanation of the elements of Digibox that are to be combined with Stefik, and the elements of Cooper that are to be combined with Stefik,

17

IPR2014-00673
Patent 6,314,409

Petitioner's assertions that one with ordinary skill in the art would have been motivated to modify the teachings of Digibox in view of Stefik, and the teachings of Cooper in view of Stefik based on the similarities of each of the disclosures and the problems addressed, does not provide a sufficient articulated reasoning with rational underpinning to support Petitioner's conclusions of obviousness.

Therefore, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that claim 23 would have been obvious over Digibox and Stefik, and over Cooper and Stefik.

### c.  Dependent Claims 26, 27, 29, 37, and 39

Claims 26, 27, and 29 depend from independent claim 25, claim 37 depends from independent claim 36, and claim 39 depends from independent claim 38.  As applied by Petitioner, the teachings of Stefik do not remedy the deficiencies of Digibox and Cooper in disclosing all of the limitations of independent claims 25, 36, and 38.  *See* Pet. 10–13, 19–24, 28–35, 42–48, 52–57.  Accordingly, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that claims 26, 27, 29, 37, and 39 would have been obvious over Digibox and Stefik, and over Cooper and Stefik.

### III.  CONCLUSION

Based on the record before us, the information presented in the Petition does not demonstrate that there is a reasonable likelihood that Petitioner would prevail in showing that claims 23–27, 29, 30, 32, 33, and 36–40 are unpatentable.

IPR2014-00673
Patent 6,314,409

## IV.  ORDER

Accordingly, it is ORDERED that the Petition for *inter partes* review is DENIED.

IPR2014-00673
Patent 6,314,409

PETITIONER:

Kenneth R. Adamo
Brent Ray
Joel Merkin
Eugene Goryunov
KIRKLAND & ELLIS LLP
kenneth.adamo@kirkland.com
brent.ray@kirkland.com
jmerkin@kirkland.com
eugene.goryunov@kirkland.com

PATENT OWNER:

Lori Gordon
Omar Amin
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
lgordon-PTAB@skgf.com
oamin-PTAB@skgf.com

# EXHIBIT 2

Trials@uspto.gov                                    Paper 12
571-272-7822                              Entered: September 22, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Petitioner,

v.

INTELLECTUAL VENTURES II LLC,
Patent Owner.
_____

Case IPR2014-00672
Patent 6,314,409 B2

Before KRISTEN L. DROESCH, JENNIFER S. BISK, and
JUSTIN BUSCH, *Administrative Patent Judges.*

DROESCH, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-00672
Patent 6,314,409

# I. INTRODUCTION

## A. Background

International Business Machines Corporation ("Petitioner") filed a Petition[1] (Paper 4, "Petition" or "Pet.") to institute an *inter partes* review of claims 1–11 and 13–21 ("the challenged claims") of U.S. Patent No. 6,314,409 B2 (Ex. 1006, "the '409 Patent"). 35 U.S.C. §§ 311–319. Intellectual Ventures II LLC ("Patent Owner") timely filed a Preliminary Response to the Petition. Paper 9 ("Prelim. Resp."). We determine on this record that, under 35 U.S.C. § 314(a), the Petition does not demonstrate a reasonable likelihood that Petitioner would prevail in showing that claims 1–11 and 13–21 are unpatentable.

## B. Related Proceedings

Petitioner indicates the '409 Patent is at issue in several district court proceedings involving numerous parties. Pet. 2, Paper 11 ("Second Amended Mandatory Notice") 2–3. Petitioner further indicates that none of the district court proceedings name Petitioner as a defendant. Pet. 2; Second Amended Mandatory Notice 2.

Petitioner concurrently filed a petition for *inter partes* review of claims 23–27, 29–30, 32–33, and 36–40 of the '409 Patent (IPR2014-00673). Second Amended Mandatory Notice 3. Compass Bank, Commerce Bancshares, Inc., and First National Bank of Omaha collectively filed two petitions for *inter partes* review of the '409 Patent (IPR2014-00719, IPR2014-00722). *Id.* J.P. Morgan Chase & Co., JPMorgan Chase Bank, Nat'l Ass'n, Chase Bank USA, Nat'l Ass'n, Chase Paymentech Solutions

---

[1] "Petition" and "Pet." refer to the Corrected Petition filed April 28, 2014.

LLC, and Paymentech LLC collectively filed a petition for covered business method review of the '409 Patent (CBM2014-00157). *Id.* at 4.

### C. The '409 Patent (Ex. 1006)

The '409 Patent relates to methods, devices, and systems for controlling access to, and use, distribution, and secondary distribution of data. Ex. 1006, Abs.; col. 6, l. 63–col. 7, l. 9.

Figure 1 of the '409 Patent is reproduced below:



Figure 1 depicts digital data access and distribution system 100, including distributor 102 and user 104. Ex. 1006, col. 9, ll. 11–13, 51–55. Distributor 102 provides packaged data 108 over communication channel 105 to user 104 in return for payment 110. *Id.* at col. 9, ll. 55–58. Specifically, authoring mechanism 112 of distributor 102 produces packaged data 108 from data 106, and distribution mechanism 118 of distributor 102 provides packaged data 108 to user 104. *Id.* at col. 9, ll. 61–64. Packaged data 108 includes an encrypted body part, an unencrypted body part, and access rules 116 in encrypted form. *Id.* at col. 9, ll. 64–66; col. 10, ll. 47–53, 60–65; *see id.* at Fig. 2. Packaged data 108 can be transmitted openly using communication channel 105, which may be insecure. *Id.* at col. 15, ll. 25–29; col. 24, ll. 49–51. Access mechanism 114 enables user 104 to access

IPR2014-00672
Patent 6,314,409

packaged data 108 in controlled ways depending on access rules 116. *Id*. at col. 10, ll. 1–5; col. 15, ll. 31–35; col. 17, ll. 45–52. Transmission, printing, display, and output of an unencrypted copy of the data by user 104 also can be prevented or restricted according to access rules. *Id.* at col. 15, ll. 50–54; col. 17, ll. 24–40; col. 25, ll. 15–28; col. 25, l. 59–col. 26, l. 6; col. 26, ll. 11–29; col. 27, ll. 11–24.

A user may invoke access mechanism 114 by accessing an object (data) via an insecure operating system which invokes access mechanism 114. Ex. 1006, col. 17, l. 67–col. 18, l. 7; col. 18, ll. 18–21.

Figure 10a of the '409 Patent is reproduced below:



Figure 10a depicts a flow chart of data access using access mechanism 114. Ex. 1006, col. 9, ll. 30–31. Access mechanism 114 first determines whether the data set containing the data elements is already open (step S1000). *Id.* at col. 18, ll. 22–24. If the data set is not already open, access mechanism 114

4

IPR2014-00672
Patent 6,314,409

opens the data set (step S1001). *Id.* at col. 18, ll. 24–25. Next, access

mechanism 114 determines whether the dataset is protected (step S1002),

and, if it is protected, determines whether the rules for the dataset are usable

(step S1004). *Id.* at col. 18, ll. 25–27, 33–38. If the rules are usable (step

S1004), access mechanism 114 determines whether the data element being

accessed is different from the most recently accessed data element (step

S1008), and opens the data element (step S1010) if it is different. *Id.* at col.

18, ll. 39–43. Next, access mechanism 114 determines whether the data

element is protected (step S1012) and whether access is permitted according

to the rules (step S1014), and makes the data element available (step S1018)

if access to the data element is permitted. *Id.* at col. 18, ll. 44–59.

Following these determinations, control returns to the invoking process (step

S1006). *Id.*

### D. Illustrative Claims

Claims 1 and 21 are independent claims. Claims 2–11 and 13–20

depend from claim 1. Claims 1 and 21 are illustrative:

> 1. A method of distributing data, the method comprising:
> protecting portions of the data; and
> openly distributing the protected portions of the data,
>     whereby
> each and every access to an unprotected form of the
>     protected portions of the data is limited in accordance
>     with rules defining access rights to the data as enforced
>     by an access mechanism, so that unauthorized access to
>     the protected portions of the data is not to the unprotected
>     form of the protected portions of the data.

> 21. A method of distributing data for subsequent controlled
> use of the data by a user, the method comprising:
>     protecting portions of the data;

5

IPR2014-00672
Patent 6,314,409

> protecting rules defining access rights to the data; and
> openly distributing the protected portions of the data and the
>     protected rules, whereby
> controlled access to an unprotected form of the protected
>     portions of the data is provided only in accordance with
>     the rules as enforced by an access mechanism, so that
>     unauthorized access to the protected portions of the data
>     is not to the unprotected form of the protected portions of
>     the data.

## II. ANALYSIS

### A. Claim Construction

In an *inter partes* review, claim terms are given their broadest
reasonable interpretation in light of the specification in which they appear
and the understanding of others skilled in the relevant art. *See* 37 C.F.R.
§ 42.200(b).

### 1. Proposed Constructions

Petitioner proposes constructions for "openly distributing,"
"environmental characteristics," and "internal rule." Pet. 5. Patent Owner
disputes Petitioner's analysis, and provides its own constructions for the
same claim terms. Prelim. Resp. 12–14. We determine that for purposes of
this Decision, none of the disputed claim terms requires an explicit
construction.

### 2. Remaining Claim Terms or Phrases

All remaining claim terms and phrases recited in the challenged
claims are given their ordinary and customary meanings, consistent with the
Specification, as would be understood by one with ordinary skill in the art,
and need not be construed explicitly for purposes of this Decision.

IPR2014-00672
Patent 6,314,409

### B. Asserted Grounds of Unpatentability

Petitioner contends the challenged claims are unpatentable under 35

U.S.C. §§ 102 and 103 on the following specific grounds (Pet. 4):

| Reference[s][2] | Basis | Claims Challenged |
|---|---|---|
| Digibox | § 102(b) | 1–6, 8–11, 13, and 21 |
| Digibox and Stefik | § 103(a) | 7 and 14–20 |
| Cooper | § 102(b) | 1–6, 8–11, 13, and 21 |
| Cooper and Stefik | § 103(a) | 7 and 14–20 |

### 1. Unpatentability of Claims 1–6, 8–11, 13, and 21 Under
### 35 U.S.C. § 102(b) as Anticipated by Cooper

Petitioner contends that claims 1–6, 8–11, 13, and 21 are unpatentable

under 35 U.S.C. § 102(b) as anticipated by Cooper.  Pet. 4, 7–8, 30–60.

### a. Cooper (Ex.1009)

Cooper describes a method and apparatus for distributing software

objects from a producer to potential users which allows the user a temporary

trial period without subjecting the software product to unnecessary risks of

piracy or unauthorized utilization beyond the trial period.  Ex. 1009, col. 2,

ll. 28–33.  The software object is preferably provided on a computer

accessible media (e.g., magnetic media diskette, CD-ROM) along with a file

management program.  *Id.* at col. 2, ll. 33–38.  The file management

program is executed by a user controlled data processing system that

---

[2] The Petition relies on the following references: Olin Sibert, *et al.*, DigiBox: A Self-Protecting Container for Information Commerce, Proceedings of the First USENIX Workshop on Electronic Commerce New York, New York, July 1995 (Ex. 1008, "Digibox"); U.S. Patent No. 5,689,560 (Ex. 1009, "Cooper"); Mark Stefik, Letting Loose the Light: Igniting Commerce in Electronic Publication, March 1995 (Ex. 1015, "Stefik").  The Petition also relies on the Declaration of Mr. William R. Rosenblatt (Ex. 1001).

7

restricts access to the software object for a predefined and temporary trial period. *Id*. at col. 2, ll. 45–48. During the temporary trial mode of operation, the software object is temporarily enabled by decryption of the encrypted software object when the software object is called by the operating system of the user-controlled data processing system. *Id.* at col. 2, ll. 48–54. The file management program preferably prevents copying operations, so the encrypted software object is temporarily decrypted when it is called by the operating system. *Id*. at col. 2, ll. 54–58.

The trial software product is encrypted utilizing a temporary access product key, which is based upon one or more data processing system attributes and a derived machine identification value. Ex. 1009, col. 6, l. 65–col. 7, l. 4; col. 7, l. 51–col. 8, l. 8; col. 8, ll. 57–67; Figs. 3–4; *see id*. at col. 9, l. 1–col. 16, l. 5; Figs. 5–18. The file management program stores the temporary access product key on the user-controlled data processing system in a key file. *Id.* at col. 13, ll. 45–66. The key file includes the product key, customer key, machine identification number, and the trial interval data. *Id.* at col. 15, ll. 62–67; Fig. 18; *see id.* at col. 15, ll. 9–34; Figs. 14–15. When the encrypted software product is called for processing by the user-controlled data processing system, the encrypted file and the key file are fetched. *Id.* at col. 16, ll. 10–17; Fig. 19. The product key, customer key, and machine identification information included in the key file are applied as inputs to a decryption engine that outputs a real key. *Id*. at col. 16, ll. 20–32; Figs. 19–21. The real key and encrypted software object are input to the decryption engine which outputs the decrypted software object. *Id*. at col. 16, ll. 42–47; Fig. 23.

IPR2014-00672
Patent 6,314,409

### b. Claims 1–6, 8–11, and 13

Petitioner argues in the claim charts that Cooper discloses "each and every access to an unprotected form of the protected portions of the data is limited in accordance with rules defining access rights to the data as enforced by an access mechanism," as recited in claim 1.  Pet. 34.  Petitioner asserts the claimed "rules defining access rights to the data" corresponds to copy prevention and user interval rules enforced with keys, and the claimed "access mechanism" corresponds to Cooper's file management program. *Id.; see id.* at 30.  Petitioner appears to equate the claimed "unprotected form of the protected data portions" to Cooper's disclosure of "decryption of the encrypted software object." *Id.* at 34 (quoting Ex. 1009, col. 2, ll. 45–57).

The Petition does not explain sufficiently how Cooper discloses rules defining access rights to the data, and how Cooper discloses each and every access to the decrypted software object (i.e., an unprotected form of the protected data portions) is limited in accordance with the rules as enforced by the file management program (i.e., access mechanism).  The quotations from Cooper provided in the claim chart disclose the "file management system preferably prevents copying operations." *Id*. at 34 (quoting Ex. 1009, col. 2, ll. 45–57).  However, the Petition does not explain sufficiently how Cooper's preferable prevention of copying operations discloses rules defining access rights to the data, and how Cooper discloses each and every access to the decrypted software object (i.e., unprotected form of the protected data portions) is limited in accordance with Cooper's preferable prevention of copying operations.  The Petition also does not provide evidence sufficient to demonstrate that Cooper discloses "user interval rules," as asserted by Petitioner. *See id*.  Instead, Cooper discloses trial

9

interval data encrypted to a key. *See* Ex. 1009, col. 15, ll. 4–20. The Petition does not explain sufficiently how Cooper's trial interval data encrypted to a key discloses rules defining access rights to the data, and how Cooper discloses each and every access to the decrypted software object (i.e., unprotected form of the protected data portions) is limited in accordance with trial interval data encrypted to a key as enforced by the file management program (i.e., access mechanism).

Accordingly, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that Cooper anticipates claim 1, and claims 2–6, 8–11, and 13, dependent therefrom.

### c. *Independent Claim 21*

Petitioner argues in the claim charts that Cooper discloses "rules defining access rights to the data," and "controlled access to an unprotected form of the protected portions of the data is provided only in accordance with the rules as enforced by an access mechanism," as recited in claim 21. Pet. 57–60. Petitioner asserts the claimed "rules defining access rights to the data" corresponds to Cooper's disclosure of trial interval data encrypted to the product key (*id.* at 57–59), and Cooper's disclosure of preferable prevention of copying operations (*id.* at 60 (quoting Ex. 1009, col. 2, ll. 45–57); *see id.* at 30). Petitioner further asserts the claimed "access mechanism" corresponds to Cooper's file management program (*id.* at 57–59), and the claimed "unprotected form of the protected data portions" corresponds to Cooper's disclosure of "decryption of the encrypted software object" (*id.* at 60 (quoting Ex. 1009, col. 2, ll. 45–57)).

10

IPR2014-00672
Patent 6,314,409

For similar reasons as those explained above addressing claim 1, the Petition does not explain sufficiently how Cooper discloses rules defining access rights to the data, and how Cooper discloses controlled access to the decrypted software object (i.e., an unprotected form of the protected data portions) is provided only in accordance with the rules as enforced by the file management program (i.e., access mechanism). The quotations from Cooper provided in the claim chart disclose the "file management system preferably prevents copying operations." Pet. 60 (quoting Ex. 1009 col. 2, ll. 45–57). However, the Petition does not explain sufficiently how Cooper's preferable prevention of copying operations discloses rules, and how Cooper discloses controlled access to the decrypted software object (i.e., unprotected form of the protected data portions) is provided only in accordance with Cooper's preferable prevention of copying operations. The quotations from Cooper provided in the claim chart also disclose trial interval data 374 input to a product key encryption engine 375. Pet. 59 (quoting Ex. 1009, col. 15, ll. 4–20). However, the Petition does not explain sufficiently how Cooper's trial interval data 374 encrypted to the key discloses rules defining access rights to the data, and how Cooper discloses controlled access to the decrypted software object (i.e., unprotected form of the protected data portions) is provided only in accordance with the trial interval data encrypted to the key as enforced by the file management program (i.e., access mechanism).

Accordingly, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that Cooper anticipates claim 21.

11

## 2. *Unpatentability of Claims 1–6, 8–11, 13, and 21 Under 35 U.S.C. § 102(b) as Anticipated by Digibox*

Petitioner contends that claims 1–6, 8–11, 13, and 21 are unpatentable under 35 U.S.C. § 102(b) as anticipated by Digibox.  Pet. 4, 7–30.

### a. *Digibox (Ex. 1008)*

Digibox describes that DigiBox is a foundation technology within InterTrust Virtual Distribution Architecture. Ex. 1008, 7.  DigiBox provides a secure container to package information so that the information cannot be used except as provided by the rules and controls associated with the content.  *Id.*  InterTrust rules and controls specify what types of content usage are permitted.  *Id.*  DigiBox is a container for both digital property (content) and controls.  *Id.*

### b. *Claims 1–6, 8–11, 13 and 21*

Petitioner asserts in the claim charts that Digibox teaches "each and every access to an unprotected form of the protected portions of the data is limited in accordance with rules defining access rights to the data as enforced by an access mechanism," as recited in claim 1, and "controlled access to an unprotected form of the protected portions of the data is provided only in accordance with the rules as enforced by an access mechanism," as recited in claim 21.  Pet. 12, 29–30.  In support of these assertions, Petitioner provides, in the claim charts, quotations from Digibox, and citations to certain paragraphs of Mr. Rosenblatt's Declaration.  *Id.* at 12, 29–30 (quoting Ex. 1008, 7–8; citing Ex. 1001 ¶¶ 74–77, 200–203).

We agree with Patent Owner that the Petition only addresses limited or controlled access to protected (i.e., encrypted) forms of the data, and does not explain how Digibox discloses limited or controlled access to

unprotected forms of the protected data as enforced by an access mechanism, as required by claims 1 and 21.  Prelim. Resp. 15, 17, 19–21; *see* Pet. 9, 12, 29–30.  For example, Petitioner asserts that Digibox provides the following teachings:  (1) portions of the sent data may be encrypted or protected; (2) the encrypted (i.e., protected) portions of data are sent in a secure container (i.e., a "DigiBox"), so that the information cannot be used except as provided by the rules and controls associated with the content, and (3) when a recipient attempts to access the data, access is through the user's computer's storage manager, which will access the *encrypted* (i.e., protected) data on the DigiBox in accordance with the rules and controls.  *Id.* at 9 (quoting Ex. 1008, 8–9) (emphasis added); *see id.* at 12 (quoting Ex. 1008, 7–8), 29–30 (quoting Ex. 1008, 8).

Accordingly, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that Digibox anticipates claims 1–6, 8–11, 13, and 21.

### 3. *Unpatentability of Claims 7 and 14–20 Under 35 U.S.C. § 103(a) as Obvious Over Digibox and Stefik, and Over Cooper and Stefik*

Claims 7 and 14–20 ultimately depend from claim 1.  As applied by Petitioner, the teachings of Stefik do not remedy the deficiencies of Digibox and Cooper in disclosing all of the limitations of claim 1.  *See* Pet.  7–8, 10, 16–17, 22–28, 31–32, 40–43, 49–57.  Therefore, on the record before us, we determine the Petition does not establish a reasonable likelihood that Petitioner would prevail in showing that claims 7 and 14–20 would have been obvious over Digibox and Stefik, and over Cooper and Stefik.

IPR2014-00672
Patent 6,314,409

## III.  CONCLUSION

Based on the record before us, the information presented in the Petition does not demonstrate that there is a reasonable likelihood that Petitioner would prevail in showing that claims 1–11 and 13–21 are unpatentable.

## IV.  ORDER

Accordingly, it is ORDERED that the Petition for *inter partes* review is DENIED.

IPR2014-00672
Patent 6,314,409

PETITIONER:

Kenneth R. Adamo
Brent Ray
Joel Merkin
Eugene Goryunov
KIRKLAND & ELLIS LLP
kenneth.adamo@kirkland.com
brent.ray@kirkland.com
jmerkin@kirkland.com
eugene.goryunov@kirkland.com

PATENT OWNER:

Lori Gordon
Omar Amin
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
lgordon-PTAB@skgf.com
oamin-PTAB@skgf.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing **PLAINTIFF-APPELLEE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS-APPELLANTS' APPEAL** was served to the parties, in the manner indicated below, this 22nd day of September 2014**:**

<u>COUNSEL FOR DEFENDANT JP MORGAN CHASE & CO., ET AL.</u>

Kenneth R. Adamo       ☒ **CM/ECF DELIVERY**
KIRKLAND & ELLIS LLP
601 Lexington Avenue     ☐ **VIA FIRST CLASS MAIL**
Citigroup Center
New York, NY 10022

Mark A. Lemley         ☒ **CM/ECF DELIVERY**
Clement Roberts
Durie Tangri LLP        ☐ **VIA FIRST CLASS MAIL**
217 Leidesdorff Street
San Francisco, CA 94111

*/s/ Thomas R. Burns, Jr.*
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

FEIN100014-4