**2014-1145**

IN THE
# UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

VERSATA DEVELOPMENT GROUP, INC.,

*Plaintiff-Appellant,*

v.

MICHELLE K. LEE, DEPUTY DIRECTOR,
U.S. PATENT AND TRADEMARK OFFICE,

*Defendant-Appellee,*

and

SAP AMERICA, INC. and SAP AG,

*Defendants-Appellees.*

**Appeal from the United States District Court for the Eastern District of Virginia
in Case No. 1:13-cv-00328-GBL-IDD, Judge Gerald Bruce Lee.**

**BRIEF OF DEFENDANTS-APPELLEES
SAP AMERICA, INC. AND SAP AG**

J. MICHAEL JAKES
MICHAEL A. MORIN
JOHN M. WILLIAMSON
JENNIFER K. ROBINSON
FINNEGAN, HENDERSON, FARABOW
   GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

*Attorneys for Defendants-Appellees
SAP America, Inc. and SAP AG*

March 20, 2014

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendants-Appellees SAP America, Inc. and SAP AG certify the following:

1.     The full name of every party or amicus represented by me is:

SAP America, Inc. and SAP AG

2.     The names of the real parties in interest represented by me are:

SAP America, Inc. and SAP AG

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

SAP AG owns 10% or more of the stock of SAP America, Inc.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**Finnegan, Henderson, Farabow, Garrett & Dunner, LLP**: J. Michael Jakes, Michael A. Morin, John M. Williamson, Jennifer K. Robinson, Elizabeth D. Ferrill.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ........................................................................i

TABLE OF AUTHORITIES .........................................................................iv

STATEMENT OF RELATED CASES .......................................................... vii

STATEMENT OF JURISDICTION............................................................1

I.    COUNTERSTATEMENT OF THE ISSUES .................................2

II.   PRELIMINARY STATEMENT .................................................2

III.  STATEMENT OF FACTS ..........................................................4

     A.    Covered Business Method Post-Grant Review .....................4

     B.    SAP's Covered Business Method Review of Versata's
         '350 Patent.............................................................................6

     C.    Versata's Parallel Federal Court Action ..............................8

IV.  SUMMARY OF ARGUMENT ....................................................9

V.   ARGUMENT...............................................................................9

     A.    Standard of Review ..............................................................9

     B.    The District Court Correctly Dismissed Versata's Claims for
         Lack of Subject-Matter Jurisdiction Because the AIA
         Precludes Judicial Review...................................................11

         1.    The AIA Expressly Precludes Judicial Review of the
             PTO's Decision to Institute a Post-Grant Review ...................11

         2.    The AIA's Statutory Structure Precludes APA
             Judicial Review of the PTO's Decision to Institute a
             Post-Grant Review ..................................................17

     C.    The District Court Correctly Dismissed Versata's Claims for
         Failure to State a Claim Because the PTO's Decision to
         Institute a Post-Grant Review Is Not a "Final Agency Action
         for Which There Is No Other Adequate Remedy"..............21

1. The PTO's Decision to Institute a Post-Grant Review
   Is Not a "Final Agency Action".................................................22

   a. The *Initial* Decision to Institute Is the Opposite
      of the "Consummation of the Agency's
      Decisionmaking Process".........................................22

   b. The *Initial* Decision to Institute Does Not
      Determine Any Rights or Obligations............................25

2. Versata Has Another Adequate Remedy in a Court .................25

VI. CONCLUSION.............................................................................26

iii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aluminum Co. of America v. United States*,
  790 F.2d 938 (D.C. Cir. 1986)............................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................10

*Bennett v. Spear*,
  520 U.S. 154 (1997)..................................................................... 22, 25

*Block v. Community Nutrition Institute*,
  467 U.S. 340 (1984)..................................................................... 11, 17

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)............................................................................26

*Burlington Northern Railroad Co. v. Surface Transportation Board*,
  75 F.3d 685 (D.C. Cir. 1996)..............................................................25

*Callaway Golf Co. v. Kappos*,
  802 F. Supp. 2d 678 (E.D. Va. 2011) ........................................ 12, 15

*Cooper Technologies Co. v. Dudas*,
  No. 1:07-cv-853, 2007 WL 4233467 (E.D. Va. Nov. 30, 2007)........15

*Evans v. B.F. Perkins Co.*,
  166 F.3d 642 (4th Cir. 1999) ..............................................................10

*Federal Trade Commission v. Standard Oil Co. of California*,
  449 U.S. 232 (1980)................................................... 18, 22, 23, 25

*Heinl v. Godici*,
  143 F. Supp. 2d 593 (E.D. Va. 2001) ........................................ 12, 23

*Immigration & Naturalization Service v. Cardoza-Fonseca*,
  480 U.S. 421 (1987)............................................................................16

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ..........................................................10

iv

*Marshall County Health Care Authority v. Shalala*,
988 F.2d 1221 (D.C. Cir. 1993) ........................................................14

*Mentor Graphics Corp. v. Rea*,
No. 1:13-cv-518, 2013 WL 3874522 (E.D. Va. July 25, 2013) ........................24

*Patlex Corp. v. Quigg*,
680 F. Supp. 33 (D.D.C. 1988) .......................................................12

*Pitt County v. Hotels.com, L.P.*,
553 F.3d 308 (4th Cir. 2009) .........................................................10

*Pregis Corp. v. Kappos*,
700 F.3d 1348 (Fed. Cir. 2012) ............................................. 11, 17, 20

*U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*,
707 F.3d 451 (4th Cir. 2013) ............................................... 10, 11

*University of Utah v. Max-Planck-Gesellschaft zur Forderung der
Wissenschaften e.V.*,
734 F.3d 1315 (Fed. Cir. 2013) ........................................................9

*Veldhoen v. United States Coast Guard*,
35 F.3d 222 (5th Cir. 1994) ...........................................................24

## FEDERAL STATUTES

5 U.S.C. § 701 ................................................................. 3, 11

5 U.S.C. § 702 ....................................................................11

5 U.S.C. § 704 ........................................................... 3, 9, 21, 25

20 U.S.C. § 107d-2 ................................................................14

25 U.S.C. § 2713 ..................................................................14

35 U.S.C. § 6 ................................................................... 5, 18

35 U.S.C. § 141 ....................................................................6

35 U.S.C. § 154 ...................................................................14

35 U.S.C. § 303 ...................................................................15

35 U.S.C. § 312 (2010) ................................................................15

35 U.S.C. §§ 321-29 ........................................................ 4, 17, 22

35 U.S.C. § 324 ............................................................... passim

35 U.S.C. § 326 ................................................................ 5, 18

35 U.S.C. § 328 ................................................................25

35 U.S.C. § 329 ......................................................... 6, 20, 25

Leahy-Smith America Invents Act ("AIA"),
  Pub. L. No. 112-29, § 18, 125 Stat. 284 (2011) ...................................4

## FEDERAL REGULATIONS

37 C.F.R. §§ 42.1-.80 ................................................................17

37 C.F.R. § 42.203 .................................................................4

37 C.F.R. §§ 42.205-.224 ..............................................................4

37 C.F.R. §§ 42.300-.304 ..............................................................4

37 C.F.R. § 42.301 .................................................................4

## OTHER AUTHORITIES

157 Cong. Rec. E1183 (daily ed. June 23, 2011) (statement of Rep. Smith)............5

157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl)..... 5, 17, 18

## <u>STATEMENT OF RELATED CASES</u>

There have been no other appeals in or from the same proceedings at the district court.

This appeal relates to an appeal before this Court from the U.S. Patent and Trademark Office, *Versata Development Group, Inc. v. SAP America, Inc.*, No. 2014-1194.

A case involving the patent-at-issue in this appeal, U.S. Patent No. 6,553,350 ("the '350 patent"), is pending in the U.S. District Court for the Eastern District of Texas, *Versata Software, Inc. v. SAP America, Inc.*, No. 2:07-cv-153-RSP (E.D. Tex.) (Payne, J.), and was previously before this Court in *Versata Software, Inc. v. SAP America, Inc.*, Nos. 2012-1029, -1049.

## STATEMENT OF JURISDICTION

The U.S. District Court for the Eastern District of Virginia lacked

jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 1361, 2201, and 2202, and 5 U.S.C.

§§ 701-06.  The district court correctly dismissed the case for lack of jurisdiction.

JA00009-16.  This Court has jurisdiction to review the dismissal under 28 U.S.C.

§ 1295, but lacks jurisdiction over the merits for the same reasons the district court

lacked jurisdiction.

## I. COUNTERSTATEMENT OF THE ISSUES

1.  Whether the district court correctly dismissed Versata's Complaint for lack of subject-matter jurisdiction because the America Invents Act ("AIA") precludes a patent owner from using the Administrative Procedure Act ("APA") to collaterally attack the U.S. Patent and Trademark Office's ("PTO") decision to institute a covered business method ("CBM") post-grant review.

2.  In the alternative, whether the district court correctly dismissed Versata's Complaint for failure to state a claim under the APA on the basis that the PTO's decision to institute a CBM post-grant review is not a final agency action for which there is no other adequate remedy in a court.

## II. PRELIMINARY STATEMENT

When Congress passed the AIA in 2011, it specifically provided that "[t]he determination by the Director whether to institute a post-grant review under this section shall be final and *nonappealable*." 35 U.S.C. § 324(e) (emphasis added). Congress did not provide, as it had previously done for reexaminations, that only certain aspects of the PTO's decision would be nonappealable. Nor did it provide any exceptions to this bright-line rule. Rather, consistent with its stated intention to provide a streamlined *alternative* to litigation, Congress provided that the decision to initiate a CBM proceeding is "nonappealable," full stop.

Yet that is *exactly* what Versata has done here by initiating a lawsuit challenging the PTO's decision to initiate a CBM proceeding.  Therefore, Versata's action violated both 35 U.S.C. § 324(e) and the APA, which provides that challenges may not be brought against agency actions for which "statutes preclude judicial review."  5 U.S.C. § 701.  For this reason alone, the district court's decision should be affirmed.

The district court's decision should also be affirmed for a second, and independent, reason: even if the AIA did not expressly bar collateral APA challenges—which it does—Versata's Complaint here would still fail because APA challenges can only be raised against a "final agency action."  5 U.S.C. § 704.  As its name would suggest, the PTO's decision to "*institute*" a post-grant review is the antithesis of a "final agency action."  It marks the *beginning* of the proceeding, not the end.  Rather, it is the PTO's statutorily mandated "final written decision" that represents the "final agency action" in a post-grant review.  *That* is the decision that is subject to review under the statute, and *that* is the decision that is currently being reviewed by this Court in the parallel appeal, *Versata Development Group, Inc. v. SAP America, Inc.*, No. 2014-1194.  To the extent that issues were properly preserved, Versata can raise them in that direct appeal, rather than in a collateral APA proceeding, or worse yet, in both proceedings simultaneously, which would be the epitome of judicial inefficiency.

As such, the district court correctly dismissed Versata's collateral attack for lack of jurisdiction and failure to state a claim. JA00001-02. Any decision otherwise—inviting patent owners to raise APA challenges to interlocutory PTO decisions in federal court while the underlying post-grant reviews go forward in parallel before the PTO—would not only conflict with both the AIA and the APA, but would also inspire the type of needless duplicity and expense that the AIA was designed to avoid.

## III.   STATEMENT OF FACTS

### A.   Covered Business Method Post-Grant Review

In this case, Versata invokes the APA to challenge the PTO's initial decision to institute a transitional post-grant review of Versata's U.S. Patent No. 6,553,350 ("the '350 patent"). Congress created the transitional post-grant review proceeding as a way to challenge the validity of "covered business method" patents before the PTO. Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 18, 125 Stat. 284, 329-31 (2011); *see also* 35 U.S.C. §§ 321-29; 37 C.F.R. §§ 42.203, 42.205-.224, 42.300-.304.[1] Recognizing that the Supreme Court's *Bilski* decision narrowed patentability such that "many or possibly all" of the business method

---

[1] "Covered business method" patents are those claiming "a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service" and are not "patents for technological inventions." AIA § 18; 37 C.F.R. § 42.301.

patents that issued in the early 2000s may be "too abstract to be patentable,"

Congress sought to empower the PTO to "deal[] with the backwash of invalid

business-method patents." 157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011)

(statement of Sen. Kyl). In particular, Congress targeted patents from class 705 for

CBM post-grant reviews. *See id.* And Congress expressly intended the CBM post-

grant proceeding to be "a cheap and speedy alternative to litigation." 157 Cong.

Rec. E1183 (daily ed. June 23, 2011) (statement of Rep. Smith).

Congress's desire for speed and efficiency is apparent in the statutory

mandates imposed on the PTO through the AIA. For instance, the PTO must

decide whether to institute a post-grant review by no later than three months after a

patent owner files its preliminary response to a petition to institute review. 35

U.S.C. § 324(c). Once instituted, the PTO must conduct the post-grant review and

issue its "final written decision" on patentability within one year of the institution.[2]

35 U.S.C. § 326(a)(11). To conduct post-grant reviews in accordance with these

statutory mandates, Congress empowered the PTO to create the Patent Trial and

Appeal Board ("PTAB"). *See* 35 U.S.C. § 6.

While the AIA imposes heavy statutory mandates on the PTO, it also

protects the PTO from the burdens and distractions of collateral attacks during the

---

[2] The PTO may extend the one-year period by not more than six months for good cause. 35 U.S.C. § 326(a)(11).

pendency of a post-grant review. Specifically, as discussed above, the AIA expressly precludes judicial review of the PTO's decision to institute a post-grant review by mandating that the decision is "final and nonappealable." 35 U.S.C. § 324(e). Instead, the AIA provides for a direct appeal to this Court for any party dissatisfied with the PTO's *final* written decision. 35 U.S.C. §§ 141(c), 329. So while the parties to a post-grant review must wait until the PTO issues its final decision before seeking judicial review, they are guaranteed judicial review.

### B. SAP's Covered Business Method Review of Versata's '350 Patent

On the first day that Congress made this new procedure available, SAP filed a petition to institute a CBM review—the first to be filed—for claims 17 and 26-29 of Versata's '350 patent. JA02057-134. Versata's '350 patent is the exact type of patent that inspired CBM post-grant review—a patent from class 705 that issued in the early 2000's. In its Preliminary Response to SAP's petition, Versata raised, *inter alia*, both of the arguments that it seeks to raise in this case—that the '350 patent is not a "covered business method patent" under AIA § 18 and that the PTO lacks authority to consider post-grant review challenges under 35 U.S.C. § 101. JA02155; JA02213.

In its initial decision to institute a CBM review, the PTAB rejected Versata's arguments. On the issue of whether Versata's '350 patent is a "covered business method patent," the PTAB held "that Versata's '350 patent claims methods and

products for determining a price and that these claims, which are complementary to a financial activity and related to monetary matters, are considered financial products and services under § 18(d)(1)." JA02558.

Likewise, the PTAB rejected Versata's argument that § 101 challenges may not be raised in a post-grant review. In addition to Supreme Court and Federal Circuit precedent, the PTAB relied on the fact that "[t]he legislative history of the AIA . . . makes it clear that Congress intended the Office to consider challenges brought under § 101 for post-grant reviews." JA02568. Indeed, the PTAB acknowledged that "[t]he specified purpose of the covered business method review program was to allow the Office to revisit business method patents post-*Bilski* and evaluate whether the patents were too abstract to be patentable under § 101," and that "[b]oth houses of Congress and the executive branch of government all agree - § 101 can be raised in post grant reviews and by consequence, in covered business method reviews." JA02569-70.

The PTAB's decision on these issues—its initial decision to institute—was merely the start of the proceeding. The CBM post-grant review would ultimately wind its way through multiple hearings, written discovery, depositions, and trial, culminating in a "final written decision" under 35 U.S.C. § 328.

On June 11, 2013, the PTAB issued its final written decision under 35 U.S.C. § 328. JA02932-69. There the PTAB ordered that all of the challenged

7

'350 patent claims "are CANCELLED as unpatentable" under 35 U.S.C. § 101, finding that "the claims recite unpatentable abstract ideas and the claims do not provide enough significant meaningful limitations to transform these abstract ideas into patent-eligible applications of these abstractions." JA02965. Versata's direct appeal from the PTAB decision is pending as *Versata Development Group, Inc. v. SAP America, Inc.*, No. 2014-1194 (Fed. Cir.).

## C. Versata's Parallel Federal Court Action

Well before the PTAB issued its final written decision, Versata filed this parallel APA action against the PTO, asking the district court to "set aside" the then-pending CBM post-grant review. JA02000. Although the AIA makes the PTO's decision to institute "final and nonappealable," Versata nevertheless sought interlocutory review of the PTO's decision to institute. JA02000, JA02010. The PTO filed a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim. JA02326. SAP intervened and filed its own motion to dismiss. JA02275; JA02279.

The district court dismissed Versata's claims, holding that it lacked jurisdiction because the AIA's express language, structure, and purpose evince Congress's clear intent to preclude jurisdiction. JA00001-02. The court further held that Versata failed to state a claim because the decision to institute a review is merely an initial step in the process, not a "final agency action" as required by the

APA, and because Versata retains an alternative adequate remedy through a direct
appeal to this Court once there is a "final agency action." JA00002; JA00026.

## IV.  SUMMARY OF ARGUMENT

The district court correctly dismissed Versata's APA challenge to the PTO's
decision to institute a post-grant review for lack of subject-matter jurisdiction and
for failure to state a claim, for two reasons. *First*, the AIA *expressly precludes*
judicial review of the PTO's decision to institute a post-grant review. *See* 35
U.S.C. § 324(e). *Second*, only a "final agency action" can be challenged under the
APA. *See* 5 U.S.C. § 704. Yet, the PTO's decision to institute a post-grant review
is the opposite of a "final agency action." Rather, the "*final* agency action" in a
post-grant review is the statutorily mandated "*final* written decision." It is that
decision—and that decision alone—that is subject to judicial review.

Versata will get its day in this Court, but it should be in the direct appeal that
is permitted by statute rather than in a collateral lawsuit that is precluded by
statute.

## V.  ARGUMENT

### A.  Standard of Review

This Court reviews a dismissal for lack of subject-matter jurisdiction
according to the law of the regional circuit. *Univ. of Utah v. Max-Planck-
Gesellschaft zur Forderung der Wissenschaften e.V.*, 734 F.3d 1315, 1319 (Fed.
Cir. 2013). The Fourth Circuit reviews motions to dismiss *de novo*. *Evans v. B.F.*

*Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When faced with a Rule 12(b)(1)

motion, the plaintiff (here Versata) bears the burden of establishing that the court

has subject-matter jurisdiction. *Id.*

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) should be granted where

the jurisdictional facts are undisputed and the movant is entitled to prevail as a

matter of law. *Id.* In reviewing dismissal, this Court is "not limited to evaluation

of the grounds offered by the district court to support its decision, but [it] may

affirm on any grounds apparent from the record." *Pitt Cnty. v. Hotels.com, L.P.*,

553 F.3d 308, 311 (4th Cir. 2009) (internal quotation marks omitted).

This Court also reviews a dismissal for failure to state a claim upon which

relief can be granted according to the law of the regional circuit. *K-Tech

Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir.

2013). The Fourth Circuit reviews dismissal for failure to state a claim *de novo*.

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir.

2013). To survive a Rule 12(b)(6) motion, "a complaint must 'state a claim to

relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)). "Facts that are merely consistent with liability do not establish a

plausible claim to relief," and although the Fourth Circuit views the facts alleged in

the light most favorable to the plaintiff, the court does not accept "legal

conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (internal quotation marks omitted).

### B. The District Court Correctly Dismissed Versata's Claims for Lack of Subject-Matter Jurisdiction Because the AIA Precludes Judicial Review

Versata's Complaint raises counts under the APA seeking judicial review of the PTO's decision to institute a CBM post-grant review of its '350 patent. JA02007-10. The APA, however, affords only a limited waiver of sovereign immunity, providing that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. It is well-established that this limited waiver of sovereign immunity does not apply when the relevant statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1); *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1356 (Fed. Cir. 2012). "To determine whether a particular statute precludes judicial review, we look to its express language, the structure of the statutory scheme, its legislative history and purpose, and the nature of the administrative action involved." *Pregis*, 700 F.3d at 1357-58 (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)).

### 1. The AIA Expressly Precludes Judicial Review of the PTO's Decision to Institute a Post-Grant Review

Versata's Complaint asks the district court to "set aside" the pending post-grant review because the PTO wrongly decided that (1) Versata's '350 patent was

a "covered business method" patent and (2) challenges under 35 U.S.C. § 101 are

appropriate during a post-grant review. JA02000; JA02010. Those decisions were

made as part of the PTO's *initial* decision whether to institute a post-grant review.

JA02248-56; JA02260-64. Yet, the AIA expressly precludes judicial review of the

PTO's initial decision to institute a post-grant review:

> The determination by the Director whether to institute a
> post-grant review under this section shall be final and
> *nonappealable*.

35 U.S.C. § 324(e) (emphasis added).[3]

While Versata concedes that the "nonappealable" language of § 324(e)

stands as an express statutory preclusion of APA challenges, Versata argues that it

should nevertheless be permitted to maintain its APA challenge. In doing so,

Versata effectively asks this Court to rewrite the statute. Rather than interpret

§ 324(e) as actually written, i.e., to preclude appeals of the decision "to institute a

post-grant review," Versata asks this Court to limit the preclusion to the

"determination" of whether "'the information presented in the petition . . . would

demonstrate that it is more likely than not that at least 1 of the claims challenged in

the petition is unpatentable.'" Blue Br. 13 (quoting 35 U.S.C. § 324(a)). Versata

---

[3] Although undisputed here, SAP notes that courts have consistently interpreted
"final and nonappealable" in the Patent Act as precluding judicial review. *See,
e.g., Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678, 685 (E.D. Va. 2011);
*Heinl v. Godici*, 143 F. Supp. 2d 593, 597 (E.D. Va. 2001); *Patlex Corp. v. Quigg*,
680 F. Supp. 33, 35-36 (D.D.C. 1988).

contends that anything else addressed in the PTO's decision to institute—including the challenged determinations here—is not within the scope of § 324(e) and, therefore, is fair game for collateral lawsuits under the APA. *Id.* Versata's reasoning fails for at least three reasons.

*First*, Versata's position on appeal is directly at odds with its claim to jurisdiction below. Specifically, Versata relied on § 324(e) as its basis for pleading jurisdiction over its APA claims, contending that the "finality" addressed by § 324(e) supplies the decisional "finality" required for Versata's claims under § 704 of the APA. JA02001. But § 324(e) renders decisions "final *and nonappealable*." Versata's argument that § 324(e) can be selectively parsed to render the challenged PTO decisions "final," but not "nonappealable," is untenable. Versata cannot have it both ways.

Moreover, Versata also pleaded that "[t]he PTAB's decision to initiate the review of the '350 patent is final and nonappealable," citing 35 U.S.C. § 324(e). JA02006. But Versata now argues—directly contrary to its Complaint—that the PTAB's decision to initiate review of the '350 patent is appealable (at least the parts of the decision for which Versata wants immediate judicial review under the APA). Blue Br. 12-13. Simply put, Versata's own Complaint necessarily implicates the "nonappealability" of the PTO decisions challenged in Versata's

APA claims.[4]  Given that Versata expressly pleaded that § 324(e) applies to the

PTO decisions challenged in its APA claims, Versata's argument on appeal that

§ 324(e) does not apply the challenged PTO decisions should be rejected outright.

*Second*, Versata's position is also inconsistent with its position before the

PTO.  In opposing SAP's petition to institute post-grant review, Versata offered

the same arguments at issue here—that (1) the '350 patent is not a covered

business method patent and (2) the PTO cannot consider § 101—as "REASONS

WHY NO POST-GRANT REVIEW SHOULD BE INSTITUTED *UNDER 35*

*U.S.C. § 324*." JA02137-38 (emphasis added).  Yet here Versata argues the exact

opposite—that these issues are *not* determinations under 35 U.S.C. § 324.

Accordingly, Versata's positions are inconsistent with its positions before both the

district court and the PTO.

*Finally*, the opinions Versata relies on for its argument to limit the scope of

statutory preclusion under § 324(e) are inapposite because they address

---

[4] In the district court, Versata attempted to address this tension by contending that "nonappealable" does not mean "non-reviewable" under the APA.  JA02681-82. But Versata abandoned this argument in its blue brief, for good reason: as the district court found, both statutes and courts consistently define APA actions as "appeals" of agency actions. *See, e.g.*, 20 U.S.C. § 107d-2(a) ("subject to appeal and review as a final agency action"); 25 U.S.C. § 2713(c) ("appealable to the appropriate Federal district court"); 35 U.S.C. § 154(b)(4) ("[a]ppeal of patent term adjustment determination" to district court); *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993) (recognizing that the "district court sits as an appellate tribunal" when it reviews agency action).

*reexamination* statutes, not § 324(e).  Namely, Versata relies on cases holding that pre-AIA reexamination statutes exempt only the "substantial new question" determination from judicial review to argue that the AIA should similarly exempt only the "more likely than not" determination from judicial review.  Blue Br. 15-16 (citing "old 35 U.S.C. § 312(c)"; *Callaway Golf*, 802 F. Supp. 2d at 685; *Cooper Techs. Co. v. Dudas*, No. 1:07-cv-853, 2007 WL 4233467, at *3 (E.D. Va. Nov. 30, 2007)).  But facial differences between pre-AIA reexamination statutes and § 324(e) foreclose this argument.

While both statutes use the same statutory preclusion language ("final and nonappealable"), the pre-AIA reexamination statutes expressly limit the statutory preclusion to the "determination . . . under subsection (a)":

> "A determination by the Director pursuant to subsection (a) of this section that no substantial new question of patentability has been raised will be final and nonappealable." 35 U.S.C. § 303(c) (*ex parte* reexamination).

> "A determination by the Director under subsection (a) shall be final and non-appealable." 35 U.S.C. § 312(c) (2010) (*inter partes* reexamination).

Because the "determination . . . under subsection (a)" is the "substantial new question" determination, the preclusion in the reexamination statutes is limited to the "substantial new question" determination.

The AIA, however, is different. In § 324(e), Congress replaced the reference to "subsection (a)" with the much broader "whether to institute a post-grant review under this section." 35 U.S.C. § 324(e). This represents a conscious and deliberate decision by Congress: unlike for reexamination proceedings, the statutory prohibition against judicial review of the initiation of CBM proceedings is *not* limited to specific arguments or reasons, but is absolute—parties have a right to appeal, but *only* of a final written decision, as provided for in the statute.

That Congress chose to expand the PTO's immunity from premature collateral attacks is unsurprising given that post-grant proceedings, unlike reexaminations, must be completed so quickly. Despite Versata's argument to the contrary, the facial distinctions between these two statutes cannot be ignored. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987).

Accordingly, the district court correctly decided that the "nonappealable" determination under § 324(e) is "[t]he determination . . . whether to institute a post-grant review under this section," not merely the "more likely than not" determination in § 324(a). JA00013-14. By statute, Versata is precluded from raising a collateral attack in federal court to challenge the PTO's decision to institute a CBM review.

### 2. The AIA's Statutory Structure Precludes APA Judicial Review of the PTO's Decision to Institute a Post-Grant Review

In addition to the express language of § 324(e), Congress's intent to preclude judicial review of the PTO's decision to institute a post-grant review is evident from the structure, objectives, and legislative history, as well as from the nature of a decision to institute. *See Block*, 467 U.S. at 345; *Pregis*, 700 F.3d at 1357-58.

The AIA created an expedited one-year proceeding between the *initial* decision to institute and the *final* written decision, which a party may directly appeal to this Court. *See* 35 U.S.C. §§ 321-29; 37 C.F.R. §§ 42.1-.80. The proceeding resembles a hybrid between district court litigation and *inter partes* reexamination, including discovery, motions practice, potential claim amendments, and oral argument.

Congress praised these procedural reforms—the compressed one-year timeline and direct appeal of the final written decision to this Court—as a vast improvement over post-grant review's slow-moving predecessor, *inter partes* reexamination. *See* 157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). But the structure and objectives of the AIA would be threatened if parties were able to launch parallel district court litigation to second guess the PTO's *initial* decision to institute a review.

Moreover, the legislative history directly addresses the improved efficiencies garnered by carefully managing and consolidating judicial review. Under the AIA, a single entity at the PTO, the PTAB, conducts all administrative review. 35 U.S.C. §§ 6, 326(c). This is a departure from the prior *inter partes* reexamination structure, which involved three levels of review—an initial review by a PTO patent examiner, followed by an administrative appeal to the Board of Patent Appeals and Interferences, and only then Article III appellate review before this Court. Congress recognized that, "[b]y reducing two levels of appeal to just one, this change will substantially accelerate the resolution of inter partes cases." 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). Versata's collateral district court challenge to the PTO's *initial* decision to institute undermines these stated goals, reinstituting the multiple levels of review that Congress sought to repeal.[5]

In addition, if Versata were correct, a dissatisfied party could seek immediate district court review for *any* challenge that falls outside of the "more

---

[5] In an analogous situation involving the Federal Trade Commission ("FTC") filing a complaint to initiate proceedings under the FTC Act, the Supreme Court found that a parallel APA action in district court to review the issuance of the complaint is "likely to be interference with the proper functioning of the agency and a burden for the courts" and "leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980).

likely than not" determination. This may include, for example, challenges regarding claim construction (e.g., CBM2012-0002), whether a petition should be denied under § 325(d) for citing art that is the same or substantially the same as prior art previously considered by the PTO (e.g., CBM2012-0002), whether the challenged claims are directed to a "technological invention" (e.g., CBM2012-0003), whether res judicata and collateral estoppel bar a post-grant review challenge (e.g., CBM2012-0007), and the PTO's determination of the privity status of a petitioner under § 315(b) in *inter partes* review (e.g., IPR2012-00042), among many other possible grounds. Allowing a dissatisfied party to run to district court with any collateral challenge it can conjure up that falls outside of the "more likely than not" determination—or even worse *requiring* a dissatisfied party to do so in order to preserve its position for judicial review—would eviscerate Congress's goal to reach a final written decision within a year through a streamlined proceeding. Nearly every post-grant review would end up in parallel district court proceedings—to be fought out simultaneously in two different fora—as a matter of course.

As the district court found (JA00009-11), *Pregis* demonstrates that Versata's view fails in light of the statutory scheme and objectives imparted by the AIA. In *Pregis*, this Court held that patentability determinations by the PTO were precluded from APA review because the "Patent Act expressly provides an

intricate scheme for administrative and judicial review of PTO patentability determinations." 700 F.3d at 1358. In particular, this Court found that "[t]he carefully balanced framework of the Patent Act specifies a well-defined process for how, when, where, and by whom PTO patentability determinations may be challenged," and that "suits under the APA would destroy the Patent Act's careful framework for judicial review." *Id.* at 1359. The AIA similarly "specifies a well-defined process" for challenging post-grant review decisions: any party may appeal the final written decision directly to this Court, but may not appeal the initial decision to institute. 35 U.S.C. §§ 324(e), 329. Thus here, as in *Pregis*, "the fact that Congress has prescribed detailed new procedures for administrative and judicial review of issued patents reinforces the conclusion that Congress intended to preclude other avenues of judicial review." *Pregis*, 700 F.3d at 1358 n.1.

Versata concedes, as it must, that *Pregis* is dispositive if this Court hears the jurisdictional challenges in its direct appeal. Blue Br. 18. The parties all agree that this Court can hear any properly preserved challenges—jurisdictional or otherwise—on direct appeal of a final written decision under 35 U.S.C. § 329.[6] An

_____

[6] Of course, even in the direct appeal, Versata cannot raise issues it did not properly preserve below. JA03189-90. Thus, to the extent that Versata is found to have *waived* either of the substantive challenges at issue in this appeal, it should not be permitted to raise them there, either. SAP will address any waiver issues, as necessary, in the direct appeal.

issue is not immunized from judicial review merely because the PTAB addressed the issue in its initial decision to institute. Thus, no "important jurisdictional issues based on statutory-construction questions will remain immune from challenge in any court," as Versata contends. Blue Br. 19.

In sum, the express language of the statute, the legislative history, this Court's precedent, and the relevant policy considerations all support the district court's decision that judicial review of decisions to institute CBM proceedings are not subject to judicial review.

### C. The District Court Correctly Dismissed Versata's Claims for Failure to State a Claim Because the PTO's Decision to Institute a Post-Grant Review Is Not a "Final Agency Action for Which There Is No Other Adequate Remedy"

The APA only allows review of an agency action "made reviewable by statute" or a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Versata concedes the AIA does not make a decision to institute a post-grant review reviewable, which must be the case since the AIA does the opposite by expressly making the decision "final and nonappealable." 35 U.S.C. § 324(e). Instead, Versata argues that a decision to institute is a "final agency action for which there is no other adequate remedy in a court." Blue Br. 20. The PTO's decision to institute, however, is not a "final agency action" and, even if it was, the AIA provides another adequate remedy.

### 1. The PTO's Decision to Institute a Post-Grant Review Is Not a "Final Agency Action"

To be "final," an agency action must (1) "mark the 'consummation' of the agency's decisionmaking process," and (2) "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Neither requirement is met here.

### a. The *Initial* Decision to Institute Is the Opposite of the "Consummation of the Agency's Decisionmaking Process"

The PTO's *initial* decision to institute post-grant review is not the "consummation of the agency's decisionmaking process." Under the statutory framework of the AIA, it is the first decision in the post-grant review proceeding, followed by a string of additional decisions and culminating in the "final written decision." 35 U.S.C. §§ 321-29. The "final written decision" marks the "consummation of the agency's decisionmaking process."

The Supreme Court's *Standard Oil* case is dispositive on this point. There, plaintiff Standard Oil Company of California ("Socal") filed an APA challenge against the FTC while the FTC was in the midst of an administrative action against Socal under the FTC Act. *Standard Oil*, 449 U.S. at 234-35. Socal contended that, when the FTC filed its administrative complaint, the FTC did not have a reason to believe that Socal violated the Act. *Id.* at 235. The Court held, however, that the

FTC's complaint—"[s]erving only to initiate the proceedings"—was not a "final agency action" and could not be challenged under the APA.  *Id.* at 242, 246-47.

The Court recognized that the FTC's complaint "is a determination only that adjudicatory proceedings will commence" and "a threshold determination that further inquiry is warranted," and that there will be a subsequent hearing with "evidence and testimony before an administrative law judge," as well as a right to appeal an adverse decision.  *Id.* at 241.  These considerations in *Standard Oil* apply here.  Just as with the FTC's institution of its proceeding, the PTO's *initial* decision to "*institute*" a post-grant review proceeding is a threshold determination that proceedings will commence, followed by discovery, an evidentiary hearing, a final written decision, and then appeal.

When evaluating PTO decisions under the APA, district courts have correctly and consistently applied *Standard Oil* in finding that PTO decisions to initiate proceedings are not "final agency actions."  For instance, in *Heinl*, the court held that the PTO's decision to initiate an *ex parte* reexamination was not "final" because it was "an intermediate, indeed initial, step in the agency process to resolve the question of the validity of a patent."  143 F. Supp. 2d at 597-98.  Likewise, in *Mentor Graphics Corp. v. Rea*, the court held that the PTO's decision to institute *inter partes* review under the AIA was not "final" because it was "only the 'initial' step in the agency process of reexamining the patent."  No. 1:13-cv-

518, 2013 WL 3874522, at *2 (E.D. Va. July 25, 2013) ("Courts have repeatedly held that similar decisions to initiate agency proceedings do not constitute final agency action, but rather are only tentative or interlocutory."). Like the courts in *Heinl* and *Mentor Graphics*, the district court here correctly applied *Standard Oil* in determining that the PTO's decision to institute a post-grant review is not a "final agency action." JA00018-20.

Versata attempts to circumvent the finality requirement by suggesting that APA review is appropriate for "pure questions of law" or "the PTO's *ultra vires* actions based on its faulty constructions of the relevant statutes" despite lack of finality. Blue Br. 24-25. But Versata's position is contrary to precedent. *See, e.g.*, *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("An attack on the authority of an agency to conduct an investigation does not obviate the final agency action requirement . . . . [A]n agency's decision to initiate proceedings does not become final merely because the challenger attacks the agency's jurisdiction, even where the attack[] raises a pure question of law." (citations omitted) (internal quotation marks omitted)). Versata's view would also result in piecemeal litigation that the finality requirement seeks to avoid, and "[t]hat policy is no less applicable to piecemeal appeals on issues of statutory authority than to piecemeal appeals on other points." *See Aluminum Co. of Am. v. United States*, 790 F.2d 938, 942 (D.C. Cir. 1986).

### b.    The *Initial* Decision to Institute Does Not Determine Any Rights or Obligations

The PTO's decision to institute a post-grant review is also not a "final agency action" because no legal consequences flow from the decision. *Bennett*, 520 U.S. at 177-78.  The only legal right at issue in the post-grant review is the patentability of Versata's challenged patent claims.  Under the AIA statutory framework, however, the PTO's initial decision to institute a post-grant review does not affect the patentability of the challenged claims.  Rather, only the "final written decision" of the PTO can affect patentability.  *See* 35 U.S.C. § 328.

Versata faces no legal or practical effect from the PTO's decision to institute, except the burden of participating in the post-grant review proceeding.  But "the rights and obligations flowing from an order to participate in a proceeding are not the sorts of rights and obligations that make an order final." *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996) (internal quotation marks omitted); *see also Standard Oil*, 449 U.S. at 242 (holding that the burden to participate in a proceeding "is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action").

### 2.    Versata Has Another Adequate Remedy in a Court

Versata also fails to state a claim because it has another "adequate remedy in a court" (5 U.S.C. § 704), namely, a direct appeal of the PTO's final written decision to this Court (35 U.S.C. § 329).  The APA "does not provide additional

judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (internal quotation marks omitted). The parties agree that this Court can consider on direct appeal of the PTO's final written decision any properly preserved legal issues that are the premise of that decision, and Versata concedes that such review would be adequate. Blue Br. 26.

## VI.  CONCLUSION

For the reasons above, the Court should affirm the district court's dismissal of Versata's Complaint.

March 20, 2014                              Respectfully submitted,

                                           /s/ J. Michael Jakes
                                           J. Michael Jakes
                                           Michael A. Morin
                                           John M. Williamson
                                           Jennifer K. Robinson
                                           FINNEGAN, HENDERSON, FARABOW,
                                              GARRETT & DUNNER, LLP
                                           901 New York Avenue, NW
                                           Washington, DC 20001
                                           Tel: (202) 408-4000
                                           Facsimile: (202) 408-4400
                                           Email: mike.jakes@finnegan.com

                                           *Attorneys for Defendants-Appellees*
                                           *SAP America, Inc. and SAP AG*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on March 20, 2014, the foregoing **Brief of Defendants-Appellees SAP America, Inc. and SAP AG** was filed electronically using the CM/ECF system and served on registered counsel by operation of the Court's CM/ECF system as follows:

Scott L. Cole
Pierre Hubert
Joel L. Thollander
Gretchen Curran
McKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
(512) 692-8700

Mike McKool, Jr.
Daniel L. Geyser
McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000

R. Danny Huntington
Nancy J. Linck
Martin M. Zoltick
ROTHWELL FIGG ERNST & MANBECK PC
607 14th Street, NW, Suite 800
Washington, DC 20005
(202) 783-6040

*Attorneys for Plaintiff-Appellant*
*Versata Development Group, Inc.*

Dennis C. Barghaan, Jr.
Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
2100 Jamieson Avenue
Alexandria, VA 22314

*Attorney for Defendant-Appellee*
*Michelle K. Lee, Deputy Director,*
*U.S. Patent and Trademark Office*


/s/ Zachary Schanz
Zachary Schanz
Litigation Legal Assistant

2

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing **Brief of Defendants-Appellees SAP America, Inc. and SAP AG** contains 6,000 words as measured by the word-processing software used to prepare this brief.

March 20, 2014                    Respectfully submitted,


                                        /s/ J. Michael Jakes
                                        J. Michael Jakes
                                        Michael A. Morin
                                        John M. Williamson
                                        Jennifer K. Robinson
                                        FINNEGAN, HENDERSON, FARABOW,
                                           GARRETT & DUNNER, LLP
                                         901 New York Avenue, NW
                                         Washington, DC 20001
                                         Tel: (202) 408-4000
                                         Facsimile: (202) 408-4400
                                         Email: mike.jakes@finnegan.com

                                         *Attorneys for Defendants-Appellees*
                                         *SAP America, Inc. and SAP AG*