No. 14-1631

# United States Court of Appeals
# For the Federal Circuit

————————————

DietGoal Innovations LLC,

*Plaintiff-Appellant,*

v.

Bravo Media, LLC (Division of NBC Universal Media, LLC),

*Defendant-Appellee.*

**Appeal From The United States District Court For The
Southern District of New York
In Case No. 1:13-cv-08391-PAE, Judge Paul A. Engelmayer**

**REPLY BRIEF OF APPELLANT**

Eric W. Buether
Buether Joe & Carpenter, LLC
1700 Pacific Avenue, Suite 4750
Dallas, Texas  75201
(214) 466-1271

*Attorney for Plaintiff-Appellant
DietGoal Innovations LLC*

## CERTIFICATE OF INTEREST

Counsel for the Appellant, DietGoal Innovations LLC, certifies the following:

1.     The full name of every party or amicus represented by me is:

DietGoal Innovations LLC

2.     The name of the real party in interest represented by me is:

DietGoal Innovations LLC

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Eric W. Buether
Christopher M. Joe
Brian A. Carpenter
Mark D. Perantie
Niky Bukovcan
Michael D. Ricketts
BUETHER JOE & CARPENTER, LLC

Steven War
MCNEELY, HARE & WAR LLP

Damon M. Young
THE LAW OFFICES OF DAMON YOUNG

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF CONTENTS.................................................................... ii

TABLE OF AUTHORITIES ............................................................ iii

TABLE OF ABBREVIATIONS .......................................................... iv

STATEMENT OF RELATED CASES .................................................v

ARGUMENT ....................................................................................1

    A.    Because the District Court's Analysis of the Second "Inventive Concept" Step of the *Mayo* Test is Erroneous, it is Unnecessary to Review the District Court's Analysis of the First Step of that Test ..........................................................................................1

    B.    The Claims of the `516 Patent Do Not Preempt the Abstract Idea of Meal Planning to Meet Dietary Goals as a Matter of Law ..........................................................................................4

CONCLUSION ................................................................................11

CERTIFICATE OF SERVICE ............................................................12

CERTIFICATE OF COMPLIANCE....................................................13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ........................................................5

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)...............................................................1, 2, 3, 7, 9

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) ........................................................5

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ........................................................5

*DDR Holdings v. Hotels*,
   ___ F. 3d ___, 2014 U.S. App. LEXIS 22902 (Fed. Cir. 2014)......... 2- 5, 8, 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)...........................................................1, 2, 3

*O'Reilly v. Morse*,
   56 U.S. (15 How.) 62 (1854) ........................................................7

*Parker v. Flook*,
   437 U.S. 584 (1978)...............................................................6

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
   627 F.3d 859 (Fed. Cir. 2010) ........................................................6

*Ultramercial, Inc. v. Hulu, LLC*,
   ___ F.3d ___, 2014 WL 5904902 (Fed. Cir. Nov. 14, 2014).........................4

### STATUTES

35 U.S.C. § 101 .................................................................1, 3, 4, 10, 11

## TABLE OF ABBREVIATIONS

*Parties*

DietGoal                    DietGoal Innovations LLC, Plaintiff-Appellant

Bravo                       Bravo Media, LLC, Defendant-Appellee

the District Court          The presiding judge in the Southern District of New York

*Patents-in-Suit*

the `516 Patent            U.S. Patent No. 6,585,516

*Defined Terms*

A___                        Joint Appendix page(s)

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant provides as follows:

(a)     There have been no previous appeals in this case.

(b)     The following appeal currently pending in this Court will be directly affected by the Court's decision in this case:  *DietGoal Innovations LLC v. Time, Inc.*, Case No. 14-1770 (Fed. Cir.).

# ARGUMENT

Bravo's response reflects a fundamental flaw in the District Court's Section 101 analysis it attempts to defend. Bravo over-generalizes the scope of the claims of the `516 Patent and misstates the actual limitations of the independent claims individually and as an ordered combination by failing to acknowledge the specific requirements such as the Picture Menus and Meal Builder limitations and additional material limitations contained in several dependent claims. Both Bravo and the District Court offer nothing beyond *ipse dixit* assertions that the `516 Patent claims do not more than recite an abstract idea of meal planning to meet eating goals implemented on a conventional computer.[1]

## A. Because the District Court's Analysis of the Second "Inventive Concept" Step of the *Mayo* Test is Erroneous, it is Unnecessary to Review the District Court's Analysis of the First Step of that Test

Bravo asserts that "DietGoal does not dispute the district court's decision on this first step that the claims are directed to the abstract concept of meal planning

---

[1] Bravo does not make any meaningful effort to defend the District Court's erroneous conclusion that "the `516 Patent does not claim a the statutory subject matter of a "machine" under § 101 because "the independent claims of the `516 Patent recite a 'system' and a 'method' of computerized meal planning, which is to be implemented on an *existing* general purpose computer." *See* DietGoal Opening Brief at 31-32. As DietGoal explained in its opening brief, the Supreme Court in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) held that "computer-implemented claims are formally addressed to patent-eligible subject matter." 134 S. Ct. at 2359. Thus, the system claims of the `516 Patent claim a computer system, which meets the definition of a "machine" under § 101. Thus, the District Court clearly erred in making this ruling.

1

to meet individual eating goals, instead choosing to address only the second step of the *Mayo/Alice* analysis." Bravo Response at 13. This is incorrect. DietGoal in its opening brief simply pointed out that the first part of the two-part test for identifying an abstract idea often appears to be of limited utility and, therefore, DietGoal believed that "it would be more efficient and practical to move directly to the second step of the two-part test to assess whether any of the claims of the `516 Patent claim ineligible subject matter." DietGoal Opening Brief at 33. Thus, contrary to Bravo's argument, DietGoal did not agree with the District Court's decision regarding the first step that the claims are directed to the abstract concept of meal planning to meet individual eating goals, or thereby "waive" any issue regarding its challenge of the District Court's decision.

Indeed, this Court recently in *DDR Holdings v. Hotels*, ___ F. 3d ___, 2014 U.S. App. LEXIS 22902 (Fed. Cir. 2014), employed the same approach as DietGoal in performing the two-step *Mayo* analysis. In *DDR*, this Court initially observed that "[d]istinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear." *Id*. at *21. The *DDR Holdings* court further pointed out that "identifying the precise nature of the abstract idea is not as straightforward as in *Alice* or some of our other recent

abstract idea cases." *Id*. at *25.  The Court stated that the accused infringer's "own varying formulations of the underlying abstract idea illustrate this difficulty." *Id*.

Similarly, in this case, Bravo asserts that the claims of the `516 Patent are invalid under Section 101 "because they claim the abstract concept and mental process of meal planning to meet eating goals implemented on a conventional computer."  Bravo Response at 1.  The District Court, however, concluded that "the claims of the `516 Patent recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences."  (A18).  Thus, Bravo and the District Court cannot even agree on what "abstract concept" to which the claims of the `516 Patent are supposedly directed.[2]

In *DDR Holdings*, this Court, when confronted with the less-than-clear descriptions of the nature of the abstract idea implicated in that case, bypassed step one of the *Mayo* test and proceeded directly to the second step.  The Court did so because "under any of these characterizations of the abstract idea, the `399 patent's claims satisfy *Mayo/Alice* step two."  *Id*. at *26.  The same is true regarding the claims of the `516 Patent.

---

[2]  The *DDR Holdings* court observed that "[w]e know that mathematical algorithms, including those executed on a generic computer, are abstract ideas," and "that some fundamental economic and conventional business practices are also abstract ideas."  2014 U.S. App. LEXIS 22902 at *23.  The claims of the `516 Patent are not addressed to any of these abstract ideas.

**B.    The Claims of the `516 Patent Do Not Preempt the Abstract Idea of Meal Planning to Meet Dietary Goals as a Matter of Law**

As with the claims at issue in the *DDR Holdings* case, and unlike the claims at issue in the line of other recent Federal Circuit decisions invalidating claims under Section 101, the claims of the `516 Patent do not recite a mathematical algorithm or a fundamental economic or longstanding commercial practice. Although the claims address a human behavior challenge (employing computerized visual techniques for training individuals to modify dietary behavior), it is a challenge particular to the computerized meal planning.

Bravo asserts that "[t]he district court granted summary judgment that the claimed systems and methods were directed to an abstract concept and mental process practiced by people every day and that the computer elements of the claims were nothing but routine and conventional steps that did not save the claims from ineligibility," Bravo Response at 1, but does not cite to any evidence in the record that the specific functions or steps required by the claims of the `516 Patent were, in fact, "practiced by people every day" or that "the computer elements of the claims were nothing but routine and conventional steps."

As in *DDR Holdings*, the claims of the `516 Patent "stand apart" from the claims of the patents invalidated by the Court in its recent decisions such as *Ultramercial, Inc. v. Hulu, LLC*, ___ F.3d ___, 2014 WL 5904902 (Fed. Cir.

4

Nov. 14, 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013); and *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). *See DDR Holdings*, ___ F. 3d ___, 2014 U.S. App. LEXIS 22902 at *23-24 (distinguishing these cases). The `516 Patent claims do not merely recite the performance of some business or dietary practice known before the widespread introduction of computers and the Internet along with the requirement simply to perform it on a computer system. Certainly there is no evidence in the record to support such a conclusion.

As explained in detail in DietGoal's opening brief, the `516 Patent "relates to the field of computerized based methods of employing visual techniques for training individuals to modify [dietary] behavior," and is directed towards "[a] system and method for computerized visual behavior analysis, training, and planning." (A43, Abstract and A54, Col. 1:8-10). The `516 Patent, is directed to a computerized method and system employing such visual techniques that is used as a specific tool in dietary training and planning, which cannot be performed or implemented without the use of a computer. The system implements these visual techniques through specific computer-related structure such as "Picture Menus" and a "Meal Builder" with specific functions described in detail in DietGoal's opening brief.

There is no evidence in the record that the visualization techniques implemented using the specific computer-related structure of the Picture Menus and Meal Builder were previously performed by individuals using a pen and paper or through any purely mental process. There is no evidence in the record indicating that the specific computer-related structure and functions of the claimed "Picture Menus" and "Meal Builder" involved the application of merely routine or conventional computer technology. The claims of the `516 Patent provide for a particular and improved way to use a computer system to train people to understand and recognize the significance of the impact of customized meals on dietary goals. Thus, the claims of the `516 Patent do not broadly claim the use of a computer to perform an abstract practice of meal planning to meet the dietary goals of an individual.

Bravo's response is conspicuously silent regarding the District Court's concession that the `516 Patent "'provides a new and presumably better method' for calculating and visualizing the dietary impact of certain food choices." (A19, quoting *Parker v. Flook*, 437 U.S. 584, 594 (1978)). This concession is important in view of this Court's decision in *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010), that "[i]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act."

Furthermore, as DietGoal pointed out in its opening brief, the Supreme Court has emphasized that "the concern that drives" the implicit exception that abstract ideas are not patentable is "one of pre-emption." *Alice*, 134 S. Ct. at 2354. If there are useful ways to use the abstract idea in the same field other than the patented way, then the abstract idea has not been preempted. *Mayo*, 132 S. Ct. at 1294 (citing *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 113 (1854)).

DietGoal has shown that the specific requirements of the Picture Menus and Meal Builder limitations of the `516 Patent, when combined with the other limitations of the claims of the patent, are sufficient to ensure that those claims require significantly more than the abstract idea of meal planning to meet a person's nutritional goals. Bravo has not shown that there are no useful ways to use the abstract idea of meal planning to meet a person's nutritional goals other than the systems and methods claimed in the `516 Patent. Indeed, Bravo's response studiously avoids addressing this key flaw in the District Court's analysis – how the claims of the `516 Patent supposedly preempt the entire abstract idea of meal planning to meet individual eating goals, notwithstanding the meaningful limitations in all of those claims requiring, among other things, Picture Menus and a Meal Builder with specific structure and functions. These limitations restrict the scope of these claims to covering only a non-routine and specific application of

meal planning that prevents them from preempting the abstract idea of meal planning to meet nutritional goals.

The Court in *DDR Holdings* reached a similar conclusion for similar reasons. In that case, the claims of the patent in suit addressed the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after "clicking" on an advertisement and activating a hyperlink. *DDR Holdings*, 2014 U.S. App. LEXIS 22902 at 26-28. Pursuant to the patented invention, upon the click of an advertisement for a third-party product displayed on a host's website, the visitor is no longer transported to the third party's website. Instead, the patent claims call for an "outsource provider" having a web server which directs the visitor to an automatically-generated hybrid web page that combines visual "look and feel" elements from the host website and product information from the third-party merchant's website related to the clicked advertisement. *Id*. at *27. This Court found that "[t]he `399 patent's claims . . . do not broadly and generically claim 'use of the Internet' to perform an abstract business practice (with insignificant added activity)." *Id*. at *30. The Court further held that:

> It is also clear that the claims at issue do not attempt to preempt every application of the idea of increasing sales by making two web pages look the same, or of any other variant suggested by NLG. Rather, they recite a specific way to automate the creation of a composite web

page by an "outsource provider" that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet. As a result, the `399 patent's claims include "additional features" that ensure the claims are "more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 134 S. Ct. at 2357. In short, the claimed solution amounts to an inventive concept for resolving this particular Internet-centric problem, rendering the claims patent-eligible.

*Id.* at *31-32.

Similarly, in this case, the claims of the `516 Patent do not attempt to preempt every application of the idea of meal planning to meet a person's nutritional goals. *See* DietGoal Opening Brief at 15-16.

Significantly, Bravo does not have any response to DietGoal's argument that the `516 Patent expressly relies on the non-routine and specific functionality of the Picture Menus and Meal Builder limitations to distinguish prior art. In its opening brief, DietGoal pointed to the Kuch patent (U.S. Pat. No. 5,454,721), which is described as "a system intended to teach individuals the relationship between the visual size and a few nutritional characteristics of portions of food by using either a life size image of, or the corporeal finger of the individual, as a scale against images of different sized portions of different kinds of food, while showing a few nutritional characteristics of such portions." (A54). DietGoal emphasized that the very existence of this material prior art and the fact that the `516 Patent distinguished this art on the specific basis of the Picture Menus and Menu Builder limitations demonstrates that the claims of the `516 Patent containing these

limitations do not preempt all methods of meal planning, even computer-implemented meal planning.  The fact that the `516 Patent does not read on the methods of meal planning disclosed in the Kuch patent  underscores the fact that the `516 Patent claims do not preempt the abstract concept of even computerized meal planning.  Bravo's silence regarding this point is deafening with respect to the validity of the `516 Patent under Section 101.

There is no merit to Bravo's argument that the District Court correctly found that the claims of the `516 Patent were directed "to an impermissible mental process."  Bravo Response Brief at 5.  In its opening brief, DietGoal identified the numerous limitations of the claims requiring computer implementation.  *See* DietGoal Opening Brief at 48-50.  The computer implementation of a person's customized eating goals cannot be performed in the human mind.  The display of Picture Menus on a computer cannot be performed in the human mind.  The ability to change a meal and view on a computer the impact of the change on a person's customized eating goals cannot be performed in the human mind.   These limitations requiring computer implementation are not merely "conventional and quotidian tasks" that were previously performed by persons in their mind and simply converted to computer implementation.  Bravo fails to address the fact that the `516 Patent distinguished prior art on the ground that "no graphic visual displays are provided, which further detracts from ease of use, comprehension and

10

effectiveness." (A54, at Col. 2:11-13). Bravo's examples of how a person can perform the computer-related requirements of the claims of the `516 Patent, such as the "visualization" of meals in one's mind, are fanciful at best.

Bravo's argument that DietGoal waived any argument about the invalidity under Section 101 regarding certain dependent claims is without merit. DietGoal's opening brief points out meaningful limitations found in all of the claims of the `516 Patent that restrict the scope of the claims of the patent avoiding the preemption of any abstract idea relating to meal planning. DietGoal Opening Brief at 6-8, 15-16, 35-39, 41, 48-50. Even Bravo acknowledges the "slight narrowing" of the scope of the dependent claims as a result of the additional limitations in those claims. Bravo Response at 27.

## CONCLUSION

The District Court's judgment should be reversed.

Respectfully submitted,

/s/ Eric W. Buether
Eric W. Buether
BUETHER JOE & CARPENTER, LLC
1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone: (214) 466-1272
Facsimile: (214) 635-1828
Eric.Buether@BJCIPLaw.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on December 18, 2014, by electronic means using the CM/ECF System, which will serve via email notice of such filing to any of the following counsel registered as CM/ECF users:

J. Christopher Carraway
Norman Andrew Sfeir
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 SW Salmon Street
Portland, OR  97204

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six (6) paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

December 18, 2014


*/s/ Eric W. Buether*                
Eric W. Buether

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) in that it contains no more than 2,736 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type.

*/s/ Eric W. Buether*
Eric W. Buether