Nos. 2013-1472, -1656

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

HALO ELECTRONICS, INC.,

*Plaintiff-Appellant*,

v.

PULSE ELECTRONICS, INC.,

*Defendant-Cross Appellant*,

and

PULSE ELECTRONICS CORPORATION,

*Defendant-Cross Appellant*.

Appeals from the United States District Court for the District of Nevada in Case No. 07-CV-0331, Judge Philip M. Pro.

**BRIEF OF LOUIS J. FOREMAN AS *AMICUS CURIAE* IN SUPPORT OF HALO ELECTRONICS, INC.'S PETITION FOR REHEARING EN BANC**

Andrew S. Baluch
*Principal Counsel*
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007

Brendyn M. Reinecke
*Of Counsel*
FOLEY & LARDNER LLP
150 East Gilman St., Suite 5000
Madison, WI 53703

December 31, 2014

# CERTIFICATE OF INTEREST

Counsel for *Amicus Curiae* Louis J. Foreman certifies the following:

1.      The full name of every party or amicus represented by me is:

Louis J. Foreman

2.      The name of the real party in interest represented by me is:

Same as above.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

FOLEY & LARDNER LLP: Andrew S. Baluch, Brendyn M. Reinecke.

December 31, 2014

/s/ Andrew S. Baluch
Andrew S. Baluch
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
Telephone: 202-672-5300
Facsimile: 202-672-5399
Email: abaluch@foley.com

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF *AMICUS CURIAE* ...............................................1

ARGUMENT .......................................................................................................2

I.  THE PETITION INVOLVES A QUESTION OF EXCEPTIONAL
    IMPORTANCE TO INVENTORS AND THE U.S. ECONOMY ..................2

II.  *OCTANE FITNESS* CASTS DOUBT ON *SEAGATE*'s TWO-PART,
     OBJECTIVE/SUBJECTIVE TEST ................................................................4

III.  *OCTANE FITNESS* CASTS DOUBT ON *SEAGATE*'s "CLEAR AND
      CONVINCING EVIDENCE" BURDEN OF PROOF ...................................9

IV.  *HIGHMARK* CASTS DOUBT ON *BARD*'s "DE NOVO"
     STANDARD OF REVIEW ..........................................................................10

CONCLUSION ..................................................................................................10

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964) ..................................................................7

*Birdsall v. Coolidge*,
  93 U.S. 64 (1876) ....................................................................5

*Clark v. Wooster*,
  119 U.S. 322 (1886) .................................................................5

*Day v. Woodworth*,
  54 U.S. 363 (1851) ..................................................................6

*Dean v. Mason*,
  61 U.S. 198 (1858) ..................................................................5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  769 F.3d 1371 (Fed. Cir. 2014) ............................................ 6, 9, 10

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
  134 S. Ct. 1744 (2014) ...........................................................10

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) (en banc) ............................. 6, 7, 8, 9

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (2011) .............................................................9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ..........................................................7, 9

*Seymour v. McCormick*,
  57 U.S. 480 (1853) ..................................................................5

*Stryker Corp. v. Zimmer, Inc.*,
  No. 2013-1668, slip op. (Fed. Cir. Dec. 19, 2014)............................7

*Teese v. Huntingdon*,
  64 U.S. 2 (1860) .....................................................................5

*Tilghman v. Proctor*,
   125 U.S. 136 (1888) ...........................................................................5

*Topliff v. Topliff*,
   145 U.S. 156 (1892) ...........................................................................5


## Statutes

35 U.S.C. § 282(a) ..................................................................................8

35 U.S.C. § 284 ...................................................................................4, 10

Leahy-Smith America Invents Act, Pub. L. 112-29, 125 Stat. 284 (2011) ...............2

Patent Act of 1836, ch. 357, § 14, 5 Stat. 117 (1836)................................4


## Other Authorities

ANTHONY BREITZMAN & DIANA HICKS, AN ANALYSIS OF SMALL BUSINESS
   PATENTS BY INDUSTRY AND FIRM SIZE (Nov. 2008), *available at*
   http://archive.sba.gov/advo/research/rs335tot.pdf .................................3

Dennis Crouch, *No Willful Infringement Since Infringer's Litigation Arguments
   Were "Not Without Reason"*, PATENTLY-O (Dec. 19, 2014), http://
   patentlyo.com/patent/2014/12/infringement-infringers-litigation.html ................8

FED. CIR. IOP #13(2)(b) ...........................................................................2

*Restatement (Third) of Torts: Phys. & Emot. Harm*, § 2 (2010)..............................8

S. REP. NO. 79-1503 (1946). ....................................................................4, 10

U.S. DEP'T OF COMMERCE, INTELLECTUAL PROPERTY AND THE U.S. ECONOMY:
   INDUSTRIES IN FOCUS (Mar. 2012).......................................................3

## <u>IDENTITY AND INTEREST OF *AMICUS CURIAE*</u>

Louis J. Foreman is founder and Chief Executive of Enventys, the CEO of

Edison Nation and Edison Nation Medical, the Executive Producer of the award-

winning PBS show *Everyday Edisons*, author of *The Independent Inventor's*

*Handbook*, and publisher of *Inventor's Digest*.  Himself an inventor on twelve U.S.

patents, Mr. Foreman has created nine successful start-ups and has been directly

responsible for the creation of over twenty others.

During 2013 and 2014, Mr. Foreman served as Chairman of the Patent

Public Advisory Committee (PPAC) of the United States Patent and Trademark

Office, a committee to which he was appointed in 2008 by Secretary of Commerce

Carlos M. Gutierrez and reappointed in 2011 by Secretary of Commerce Gary

Locke.  Since 2013, Mr. Foreman has served on the National Small Business

Development Center (SBDC) Advisory Board, by appointment of Small Business

Administration (SBA) Administrator Karen Mills.  In 2013, Mr. Foreman was

elected President of the Intellectual Property Owners Association (IPO) Education

Foundation, and is a member of the IPO Board of Directors.  In addition, Mr.

Foreman serves on the Boards of Directors of the James Dyson Foundation,

Ventureprise, and New Dominion Bank.

In 2011, Mr. Foreman was called upon, multiple times, to brief the House

and Senate Judiciary Committees on legislation related to the U.S. patent system

and its impact on independent inventors.  On September 16, 2011, Mr. Foreman

joined President Obama on-stage for the signing of the Leahy-Smith America

Invents Act into law.

Mr. Foreman submits this brief in his individual capacity to underscore the

importance of patents to independent inventors and entrepreneurs who rely on

licensing—and on manufacturers' willingness to take a license—to commercialize

their inventions.  Without the economic returns of a license—taken by a willing

licensee—*inventors* have less incentive to engage in costly R&D, and *investors*

have less incentive to fund innovative start-ups.[1]

## **ARGUMENT**

## I.    THE PETITION INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE TO INVENTORS AND THE U.S. ECONOMY

Aside from the tensions with Supreme Court precedent identified by two

concurring judges in this case (discussed below), the willfulness question should

be reconsidered *en banc* due to its "exceptional importance."  FED. CIR.

IOP #13(2)(b).  The U.S. Department of Commerce has calculated that intellectual

property intensive industries support at least 40 million American jobs and

contribute more than $5.06 trillion dollars to, or nearly 34.8 percent of, U.S. gross

---

[1] Pursuant to FED. R. APP. PRO. 29(c)(5), no counsel for a party authored this brief in whole or in part, and no such counsel or party contributed money that was intended to fund preparing or submitting this brief.  No person, other than the *amicus curiae* or its counsel, contributed money that was intended to fund preparing or submitting this brief.

domestic product. U.S. DEP'T OF COMMERCE, INTELLECTUAL PROPERTY AND THE U.S. ECONOMY: INDUSTRIES IN FOCUS vi-vii (Mar. 2012). In 2009, Americans received $89.8 billion in intellectual property royalties and license fees, while paying foreigners only $25.2 billion—giving the United States a $64.6 billion trade surplus in IP licensing. *Id.* at 54.

Licensing is critical to independent inventors and entrepreneurs who do not have the means to commercialize their inventions themselves. What they have is their patents. Indeed, a study commissioned by the SBA found that: (1) "Small businesses develop more patents per employee than larger businesses, with the smallest firms, those with fewer than 25 employees, producing the greatest number of patents per employee"; and (2) "small firms are much more likely to develop emerging technologies than are large firms."[2]

But the incentive to pay a small inventor for a license is all but eliminated when an infringer is allowed—as in this case—to reject a patentee's licensing offer, provide no reason for its rejection, refuse to negotiate, obtain no legal opinion of invalidity or non-infringement, use the invention for years, and then— after being sued for infringement—concoct a litigation defense that is unsuccessful (but at least not rock-bottom "frivolous" or a "sham") and ultimately pay the

---

[2] ANTHONY BREITZMAN & DIANA HICKS, AN ANALYSIS OF SMALL BUSINESS PATENTS BY INDUSTRY AND FIRM SIZE i, v (Nov. 2008), *available at* http://archive.sba.gov/advo/research/rs335tot.pdf.

patentee only a "reasonable royalty" in damages—the same amount it would have paid if it had taken a license in the first place. Giving district courts the discretion to enhance damages under these facts, as Congress intended, would "discourage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty." S. REP. NO. 79-1503, at 2 (1946).

## II.  *OCTANE FITNESS* CASTS DOUBT ON *SEAGATE*'S TWO-PART, OBJECTIVE/SUBJECTIVE TEST

The plain text of 35 U.S.C. § 284 gives district courts wide discretion to enhance damages: "[T]he court may increase the damages up to three times the amount found or assessed." The legislative history from the 1946 revision to the Patent Act underscores this discretion, explaining that "the present discretion to award triple damages, will discourage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty." S. REP. NO. 79-1503, at 2 (1946).

That discretion was first introduced in the Patent Act of 1836, ch. 357, § 14, 5 Stat. 117 (1836): "[I]t shall be in the power of the court to render judgment for any sum above the amount found by such verdict . . . not exceeding three times the amount thereof, according to the circumstances of the case . . . ." The Supreme Court in the ensuing decades repeatedly emphasized the inherent flexibility of this standard, and did not limit enhancement of damages to a finding of "willful" infringement or a "sham" or "baseless" defense:

- *Topliff v. Topliff*, 145 U.S. 156, 174 (1892) ("Under these circumstances"— i.e., where "*defendant, knowing all their customers and plaintiffs' facilities for the manufacture of equalizers, made serious inroads upon their business, and sold almost exclusively to those who had formerly been customers of the plaintiffs*"—"we should not have disturbed the decree of the court below if it had seen fit to increase the damages . . . .") (emphasis added).

- *Tilghman v. Proctor*, 125 U.S. 136, 143-44 (1888) ("[T]he court may, *whenever the circumstances of the case appear to require it*, inflict vindictive or punitive damages, by rendering judgment for not more than thrice the amount of the verdict.") (emphasis added).

- *Clark v. Wooster*, 119 U.S. 322, 326 (1886) ("There may be damages beyond [a reasonably royalty], such as the *expense and trouble the plaintiff has been put to by the defendant*, and *any special inconvenience he has suffered from the wrongful acts of the defendant*; but these are more properly the subjects of allowance by the court under the authority given to it to increase the damages.") (emphasis added).

- *Birdsall v. Coolidge*, 93 U.S. 64 (1876) ("Courts could not, under [the act of 1836], augment the allowance made by the final decree [in actions in equity], as in the case of the verdict of a jury [in actions at law]; but the present patent act [of 1870] provides that the court shall have the same *powers to increase the decree, in its discretion*, that are given by the act to increase the damages found by verdicts in actions at law.") (emphasis added).

- *Teese v. Huntingdon*, 64 U.S. 2, 9 (1860) ("[I]f, in the opinion of the court, the defendant has *not acted in good faith, or has caused unnecessary expense and injury to the plaintiff*, the court may render judgment for a larger sum, not exceeding three times the amount of the verdict.") (emphasis added).

- *Dean v. Mason*, 61 U.S. 198, 203 (1858) ("Generally, [an award of lost profits] is sufficient to protect the rights of the owner; but *where the wrong has been done, under aggravated circumstances*, the court has the power, under the statute, to punish it adequately, by an increase of the damages.") (emphasis added).

- *Seymour v. McCormick*, 57 U.S. 480, 488-89 (1853) ("The power to inflict vindictive or punitive damages is committed to the *discretion and judgment of the court* within the limit of trebling the actual damages found by the jury.") (emphasis added).

5

- *Day v. Woodworth*, 54 U.S. 363, 372 (1851) ("[I]f, in the opinion of the court, the defendant has *not acted in good faith*, or has been *stubbornly litigious*, or has *caused unnecessary expense and trouble to the plaintiff*, the court may increase the amount of the verdict, to the extent of trebling it.") (emphases added).

Despite that history, and contrary to the "plain meaning of the statute," as Judge Gajarsa's concurrence in *Seagate* points out, the Federal Circuit "has nevertheless read a willfulness standard into the statute." *In re Seagate Tech.*, *LLC*, 497 F.3d 1360, 1377 (Fed. Cir. 2007) (Gajarsa, J., concurring) (arguing that "there is no principled reason for continuing to engraft a willfulness requirement onto section 284"). Moreover, to prove willfulness, the *en banc* court in *Seagate* established a two-part test requiring a showing of (1) an "objectively high likelihood [of] infringement" which was (2) subjectively "known or . . . should have been known" to the infringer. *Id.* at 1371. The two-part *Seagate* test "is analogous to the test this court prescribed for the award of attorneys' fees under § 285 in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378, 1381-82 (Fed. Cir. 2005), *overruled by Octane Fitness*." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1384 (Fed. Cir. 2014) (O'Malley, J., concurring).[3] The Supreme Court struck down the *Brooks Furniture*

---

[3] While correct in all other respects, the concurrence in this case incorrectly states: "the Supreme Court has explained that increased damages are *only* available 'in a case of willful or bad-faith infringement.'" *Id.* (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964)) (emphasis added). In *Aro*, the Supreme Court merely said that the patentee "could" recover treble

objective/subjective test for "superimpos[ing] an inflexible framework onto statutory text that is inherently flexible." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Section 284 is *even more flexible* than § 285, because enhancement of damages under the former is not limited to "exceptional cases."

Apart from the rigid standard itself, the way *Seagate* has been applied since 2007 is problematic. Under the "objective" prong of *Seagate*, an infringer's *pre-suit* infringement can be deemed not willful if its attorneys, in the litigation, devise a "not unreasonable" defense, developed for the first time *post-suit*. *E.g., Stryker Corp. v. Zimmer, Inc.*, No. 2013-1668, slip op. 5, 10, 18, 19 (Fed. Cir. Dec. 19, 2014). By this logic, as Professor Crouch points out, "an infringer who made the intentional decision to infringe, believing fully that the act was infringement, and that was later judged to be infringing can still avoid being stuck with enhanced damages with a later-concocted (but ultimately incorrect) argument that the patent is invalid or not infringed—so long as that argument is 'susceptible to a reasonable conclusion.'" Dennis Crouch, *No Willful Infringement Since Infringer's Litigation Arguments Were "Not Without Reason"*, PATENTLY-O (Dec. 19, 2014), http://

damages under such circumstances, 377 U.S. at 508; or in Judge Gajarsa's words, "that a finding of willfulness is *sufficient*" to enhance damages, and that *Aro* "cannot be interpreted to mean that enhanced damages are *limited* to a finding of willfulness." *Seagate*, 497 F.3d at 1381 (Gajarsa, J., concurring) (emphases added).

patentlyo.com/patent/2014/12/infringement-infringers-litigation.html (quoting

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011)).

The above application of *Seagate* now bears almost no resemblance to the

traditional tort doctrine of "recklessness" that *Seagate* set out to capture.  *See*

*Seagate*, 497 F.3d at 1371 (citing definitions of "recklessness" in *Farmer v.*

*Brennan*, 511 U.S. 825, 836 (1994), *Prosser and Keeton on Law of Torts* § 34,

p. 213-14 (5th ed. 1984), and *Restatement (Second) of Torts* § 500 (1965)).  Under

the traditional doctrine, a person's conduct is not judged on the reasonableness of

his *attorney's* legal arguments minted years later, nor judged from the vantage of

an omniscient *person of ordinary skill* aware of all prior art in the world.  Rather,

"[a] person acts recklessly in engaging in conduct if: (a) the person knows of the

risk of harm created by the conduct or knows facts that make the risk obvious to

*another in the person's situation*, and (b) the precaution that would eliminate or

reduce the risk involves burdens that are so slight relative to the magnitude of the

risk as to render the person's failure to adopt the precaution a demonstration of the

person's indifference to the risk."  *Restatement (Third) of Torts: Phys. & Emot.*

*Harm*, § 2 (2010) (emphasis added).

Finally, in applying *Seagate*, this Court has failed to take into account—and

indeed has supplanted with a much lower "not unreasonable" standard—the

statutory presumption of validity under 35 U.S.C. § 282(a) ("A patent shall be

presumed valid."). That presumption is not confined to any particular setting; it exists at all times after a patent has issued—including when a licensing offer is sent to a potential infringer—and remains "*until* the presumption has been *overcome* by convincing evidence of error." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2248 (2011) (quoting *Radio Corp. of Am. v. Radio Eng'g Labs.*, 293 U.S. 1, 7 (1934)) (emphases added). Therefore, in granting rehearing, this Court should reconcile § 282(a) and § 284.

## III.  *OCTANE FITNESS* CASTS DOUBT ON *SEAGATE*'s "CLEAR AND CONVINCING EVIDENCE" BURDEN OF PROOF

*Seagate* requires a patentee to prove willfulness by "clear and convincing evidence." 497 F.3d at 1371. But as Judge O'Malley's concurrence in this case points out, "§ 284 has no language that would justify a higher standard of proof; it just demands a simple discretionary inquiry and imposes no specific evidentiary burden." *Halo*, 769 F.3d at 1385. For this same reason, the Supreme Court in *Octane Fitness* struck down this Court's clear and convincing evidence standard for attorneys fees under § 285, explaining that "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." 134 S. Ct. at 1758.

## IV.  *HIGHMARK* CASTS DOUBT ON *BARD*'S "DE NOVO" STANDARD OF REVIEW

Under current Federal Circuit precedent, "The objective prong [of *Seagate*] is subject to *de novo* review."  *Halo*, 769 F.3d at 1382 (citing *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012)).  But, as Judge O'Malley's concurrence points out, "The Supreme Court also rejected de novo review of a fee award under § 285."  *Halo*, 769 F.3d at 1385 (citing *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748 (2014)).  In particular, *Highmark* held that "[b]ecause § 285 commits the determination whether a case is 'exceptional' to the discretion of the district court, that decision is to be reviewed on appeal for abuse of discretion."  134 S. Ct. at 1748.  Likewise, § 284 provides that "the court may increase the damages," and the legislative history expressly refers to "the present *discretion* to award triple damages."  S. REP. NO. 79-1503, at 2 (emphasis added).  Thus, a court's discretion to enhance damages under § 284 should likewise be reviewed for abuse of discretion.

## CONCLUSION

This Court should grant Halo's petition for rehearing *en banc* on willfulness.

Respectfully submitted,

December 31, 2014

/s/ Andrew S. Baluch
Andrew S. Baluch
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600

Washington, D.C. 20007
Telephone: 202-672-5300
Facsimile: 202-672-5399
Email: abaluch@foley.com

*Counsel for Amicus Curiae
Louis J. Foreman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of December 2014, the foregoing Brief of Amicus Curiae Mr. Louis Foreman was filed with the Clerk of the United States Court of Appeals for the Federal Circuit and served on counsel of record for all parties via the CM/ECF system.

<div style="margin-left: 40%;">

/s/ Andrew S. Baluch

Andrew S. Baluch
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
Telephone: 202-672-5300
Facsimile: 202-672-5399
Email: abaluch@foley.com

</div>

## **CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify:

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 2,555 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in a 14 point Times New Roman font.

December 31, 2014                          /s/ Andrew S. Baluch_____
                                          Andrew S. Baluch
                                          FOLEY & LARDNER LLP
                                          3000 K Street, N.W., Suite 600
                                          Washington, D.C. 20007
                                          Telephone: 202-672-5300
                                          Facsimile: 202-672-5399
                                          Email: abaluch@foley.com