2013-1011, -1029, -1376 (cons.)

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

PROMEGA CORPORATION,

*Plaintiff – Cross-Appellant,*

and

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN E.V.,

*Plaintiff,*

v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC.,
and APPLIED BIOSYSTEMS, LLC,

*Defendants – Appellants.*

_____

On Appeal from the United States District Court for the Western
District of Wisconsin, Case No. 3:10-cv-281, Hon. Barbara B. Crabb

_____

## BRIEF OF *AMICUS CURIAE* THE INTERNET ASSOCIATION IN SUPPORT OF REHEARING *EN BANC*

_____

Adam M. Conrad
KING & SPALDING LLP
100 N Tryon St., Suite 3900
Charlotte, NC  28202
(704) 503-2600
aconrad@kslaw.com

Daryl L. Joseffer
 *Counsel of Record*
Paul Alessio Mezzina
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC  20006
(202) 737-0500
djoseffer@kslaw.com
pmezzina@kslaw.com

*Attorneys for* Amicus Curiae

January 28, 2015

## <u>CERTIFICATE OF INTEREST</u>

Counsel for *amicus curiae* certifies the following:

1. The full name of every *amicus* represented by me is The Internet Association.

2. The name of the real party in interest represented by me is The Internet Association.

3. The Internet Association has no parent corporation. No publicly held company owns 10% or more of The Internet Association's stock.

4. The names of all firms and the partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this Court are:

King & Spalding LLP: Daryl L. Joseffer; Adam M. Conrad; Paul Alessio Mezzina

This 28th day of January, 2015.          */s/ Daryl L. Joseffer*
                                                            Daryl L. Joseffer

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF INTEREST ..................................................................1

ARGUMENT ..............................................................................................2

The Panel Majority's Expansive Interpretation of § 271(f)(1) Exposes Internet Companies and Other Global Businesses to Vast Potential Liability For Foreign Conduct. .....................................................................2

A.    Section 271(f)(1) Does Not Impose Liability for "Actively Inducing" One's Own Foreign Activity. ...............................................4

B.    Section 271(f)(1) Does Not Impose Liability for Supplying a Single, General-Purpose Component from the United States. ..............7

CONCLUSION .........................................................................................10

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   576 F.3d 1348 (Fed. Cir. 2009) (en banc) ...................................... 3, 4

*Comm'r v. Lundy*,
   516 U.S. 235 (1996) ............................................................................ 6

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984) ............................................................................ 6

*Deepsouth Packing Co. v. Laitram Corp.*,
   406 U.S. 518 (1972) ....................................................................... 2, 3

*FAA v. Cooper*,
   132 S. Ct. 1441 (2012) ....................................................................... 5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   131 S. Ct. 2060 (2011) ....................................................................... 6

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   134 S. Ct. 2111 (2014) ....................................................................... 6

*Microsoft v. AT&T Corp.*,
   550 U.S. 437 (2007) ................................................................... passim

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008) ............................................................................ 9

*Sorenson v. Sec'y of the Treasury*,
   475 U.S. 851 (1986) ............................................................................ 6

**Statutes**

35 U.S.C. § 271 .................................................................................... 3

**Other Authorities**

BLACK'S LAW DICTIONARY (10th ed. 2014) ............................................ 5

SHUKLA, ARVIND N.,
   INDUSTRIAL ENZYMOLOGY (2009) ...................................................... 8

## STATEMENT OF INTEREST

The Internet Association represents the interests of leading Internet companies and their customers, including Airbnb, Amazon, AOL, Auction.com, eBay, Etsy, Expedia, Facebook, Gilt, Google, Groupon, IAC, LinkedIn, Lyft, Monster Worldwide, Netflix, Practice Fusion, Rackspace, reddit, Salesforce.com, Sidecar, SurveyMonkey, TripAdvisor, Twitter, Uber Technologies, Inc., Yelp, Yahoo!, and Zynga. The Association seeks to protect Internet freedom, promote innovation and economic growth, and empower customers and users.

The "general rule that our patent law does not apply extraterritorially," *Microsoft v. AT&T Corp.*, 550 U.S. 437, 442 (2007), is especially important to businesses that participate in the modern Internet economy. Internet companies operate on a global scale and routinely move resources—tangible hardware as well as electronic software and data—across national borders. It is essential to the free flow of commerce that no one country attempt to use that cross-border activity as a hook for imposing its domestic laws on foreign conduct.[1]

---

[1] All parties have consented to the filing of this brief. No counsel for any party authored this brief in whole or in part, and no person or entity, other than *amicus*, its members, or counsel, made a monetary contribution intended to fund the preparation or submission of this brief.

# ARGUMENT

**The Panel Majority's Expansive Interpretation of § 271(f)(1) Exposes Internet Companies and Other Global Businesses to Vast Potential Liability For Foreign Conduct.**

The majority's decision contravenes well-settled limits on the extraterritorial application of United States law.  The manufacture or sale of a product in a foreign country is governed by that country's laws, not ours.  *See Microsoft*, 550 U.S. at 444; *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972).  Under the majority's decision, however, United States companies are potentially liable for worldwide damages under United States law if they export a single, generic hardware or software component abroad and, among other things, the component is later combined with others to make a product that is patented in the United States—regardless of whether the combination is lawful under the laws of the country in which it is made, sold, and used.

That holding is wrong and correcting it is important, as this Court's and the Supreme Court's precedents make clear.  If a patentee wants to restrict foreign activity, "its remedy . . . lies in obtaining and enforcing foreign patents." *Microsoft*, 550 U.S. at 456.  In this way, the United States respects "the legitimate sovereign interests of other nations," whose laws "may embody different policy judgments about the relative rights of inventors, competitors, and the public in patented inventions."  *Id.* at 455 (internal quotation marks omitted).  That

territoriality principle also provides an even playing field when United States companies compete abroad. *Deepsouth*, 406 U.S. at 531.

The majority erred by construing 35 U.S.C. § 271(f)(1), which provides a narrow "exception" to general territoriality principles, *Microsoft*, 550 U.S. at 442, in such a way as to undo the general rule in a wide swath of cases. The statute prohibits supplying "all or a substantial portion of the components of a patented invention" from the United States "in such manner as to actively induce the combination of such components outside of the United States." 35 U.S.C. § 271(f)(1). Under the presumption against extraterritoriality, the Supreme Court has commanded courts not to give § 271(f) an "expansive interpretation." *Microsoft*, 550 U.S. at 442, 455–56. Congress enacted § 271(f) as a targeted response to a specific "loophole" exposed by the Court's decision in *Deepsouth*: circumvention of 35 U.S.C. § 271(a)'s prohibition on making a patented invention within the United States by producing "kits containing all the physical, readily assemblable parts" of the invention and shipping them abroad for final assembly by "foreign buyers." *Id.* at 457–58.

In light of the presumption against extraterritoriality, "[a]ny ambiguity as to Congress's intent in enacting" § 271(f) must be resolved against liability. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009) (en banc). As this *en banc* Court has explained, "it is Congress's right, not the courts',

to extend [§ 271(f)] beyond the *Deepsouth* problem it was designed to fix." *Id.* at 1364.

The majority erred by construing § 271(f) to do far more than close the *Deepsouth* loophole. Because the statute does not *clearly* require that result, the presumption against extraterritoriality precludes it. Indeed, § 271(f) is most naturally read to respect traditional territorial boundaries.

### A.    Section 271(f)(1) Does Not Impose Liability for "Actively Inducing" One's Own Foreign Activity.

The panel majority's first error was holding that a global business that supplies a component from the United States *to itself* can face worldwide patent damages under § 271(f)(1). When Congress enacted § 271(f), it was "undeniably" focused on closing "the gap made evident in *Deepsouth*"—that is, on preventing U.S. companies from exporting the components of patented inventions to be "combined abroad *by foreign buyers*." *Microsoft*, 550 U.S. at 457–58 (emphasis added). In that two-party scenario, the buyer's conduct is governed by foreign law, but only U.S. law can govern the exporter's conduct, giving rise to the "gap" that Congress filled with § 271(f).

By contrast, where a multinational business manufactures and sells a patented product abroad using its own U.S.-made components, there is no gap to be filled. Only a single party is involved, and that party's primary conduct occurs abroad and is therefore subject to foreign law. Applying § 271(f) in that one-party

scenario could undermine foreign sovereigns' judgments about how to regulate conduct occurring within their borders (by imposing liability for "inducing" one's own conduct that may be lawful under foreign law). It could also result in duplicative liability if the business were sued in both foreign and United States courts (under foreign law for making a product and under United States law for "inducing" its own making of that same product).

Nothing in the statute requires, or even permits, those results. It prohibits "actively induc[ing]" the combination of a component supplied from the United States with other components. § 271(f)(1). The well-established legal meaning of "inducement" is "enticing or persuading *another person*," and the legal meaning of "active inducement" in the patent context is "intentionally causing *a third party* to infringe a valid patent." BLACK'S LAW DICTIONARY 894 (10th ed. 2014) (emphases added). The majority stated that induce "can" have this meaning, but can also have a broader, colloquial one: "to bring about, to cause." Slip Op. 23 (citing, *e.g.*, http://www.merriam–webster.com/dictionary/induce). But when Congress employs a legal term of art like "actively induce," the term must be given its *legal* meaning rather than a meaning derived from "general-purpose dictionaries." *FAA v. Cooper*, 132 S. Ct. 1441, 1449 (2012). At a minimum, nothing in the statute *unambiguously* requires that "induce" take a colloquial rather than legal meaning.

5

To the contrary, "identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Sec'y of the Treasury*, 475 U.S. 851, 860 (1986) (internal quotation marks omitted); *accord Comm'r v. Lundy*, 516 U.S. 235, 249–50 (1996).   Ever since Congress enacted § 271(b) in 1952 to prohibit inducement of domestic infringement, inducement has been understood to be a species of secondary liability, *i.e.*, liability premised on assisting another entity's direct infringement.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014).   Indeed, the Supreme Court relied on inducement's historical roots in "aiding and abetting" law when it construed "actively induce" in § 271(b) to mean "lead *another*" or "persuade *another*." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065, 2067 (2011) (emphasis added); *cf. Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752 (1984) (no liability for conspiring with oneself).   There is no justification, much less a clear and unambiguous one, for treating "induce" to mean something different in § 271(f), and thereby blurring the distinction between primary and secondary liability.

The panel majority speculated that Congress would not want "to hold companies liable for shipping components overseas to third parties, but not for shipping those same components overseas to themselves."   Slip Op. 26.   That policy-driven reasoning is similar to the arguments the Supreme Court rejected in *Deepsouth* and *Microsoft.*   Any "alteration should be made after focused legislative

consideration, and not by the Judiciary forecasting Congress's likely disposition." *Microsoft*, 550 U.S. at 459. Moreover, as explained above, it was logical for Congress to limit § 271(f) to parties whose *only* involvement in foreign activity was supplying a component from the United States, because those entities were beyond the reach of foreign law. In contrast, a defendant that undertook the alleged direct infringement abroad is subject to foreign law, leaving no loophole for § 271(f) to protect against.

## B. Section 271(f)(1) Does Not Impose Liability for Supplying a Single, General-Purpose Component from the United States.

The panel majority's second error is even more important. The court held that providing one of the five components of a product amounts to supplying a "substantial portion of the components" for purposes of § 271(f)(1). By premising liability on the supply of a single, general-purpose component from the United States, that holding significantly increases the scope of potential inducement liability for nearly all companies that operate on a global scale.

This case proves the point. The patented invention is a genetic-testing kit consisting of "five components: a primary mix, a polymerizing enzyme (such as *Taq* polymerase), nucleotides, a buffer solution, and control DNA." Slip Op. 32. LifeTech supplied only one of those five components from the United States: *Taq* polymerase, a basic chemical tool that molecular biologists employ for numerous different applications. *See, e.g.*, ARVIND N. SHUKLA, INDUSTRIAL ENZYMOLOGY

7

236–37 (2009). Yet the panel majority held that the *Taq* polymerase *by itself* constituted a "substantial portion of the components" simply because it was a necessary component; without it, the kits "would be inoperable." Slip Op. 32.

If a single component can constitute a "substantial portion of the components of a patented invention" whenever the invention "would be inoperable" without it, then virtually every individual component is a potential source of worldwide liability. For example, when a patent claims a computer system with certain operating capabilities, any number of common and non-inventive components—from a general-purpose computer to a monitor to a circuit board to a battery to countless electronic data files—may be individually necessary to render the system "operable." Under the majority's lax standard, companies that ship or transmit such general-purpose components from the United States may be sued in U.S. courts for damages based on worldwide sales of a system if a customer added other components overseas.

The statute does not reach nearly that far. As the petition explains, "substantial portion" is most naturally read to refer to more than a single, generic component. Pet. 9–10. And the relationship between § 271(f)(1) and (f)(2) confirms the majority's error. Under the latter provision, as the Supreme Court has explained, the export of "a single component" of a patented invention can constitute infringement only if the component is "'especially made or especially

adapted for use in the invention'" and not "'a staple article or commodity of commerce suitable for substantial noninfringing use.'" *Microsoft*, 550 U.S. at 458 n.18 (quoting § 271(f)(2)).    Those conditions represent vital, congressionally mandated protections for American companies that ship or transmit multi-purpose items abroad.  But the majority's approach allows plaintiffs to circumvent them by relying instead on § 271(f)(1).

Case law in the patent-exhaustion context confirms that "substantial" looks to what makes a product patentable.  Exhaustion sometimes turns on whether certain components "substantially embody the patent[]," which the Supreme Court has construed to mean that the components embody its "essential, or inventive, feature[s]"—as opposed to "standard parts." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 621, 632–33 (2008).  Similarly, a "substantial portion of the components" most naturally refers to components that substantially embody the invention, as opposed to a single, flexible, multi-purpose component that embodies none of the patent's essential, inventive features.  The statute certainly does not *unambiguously* require the majority's reading.

*    *    *    *    *

The majority's errors are especially damaging in combination.  If LifeTech had merely filled a domestic customer's order for Taq polymerase, there would be no plausible argument that it "actively induced" the assembly of the patented kits

under § 271(b).  Similarly, one cannot "induce" one's own domestic conduct under § 271(b).  But the majority concluded that LifeTech had induced its own foreign conduct by exporting a single multi-purpose component—and it thereby prohibited conduct (supplying a component) that would be lawful but for additional foreign conduct (assembling the kits).  That turns the presumption against extraterritoriality on its head.  There is no meaningful sense in which such liability targets LifeTech's domestic conduct, which would be innocuous standing alone.  Whether LifeTech did anything culpable depends on its actions in the countries where it makes, sells, or uses the kits.  Those actions are governed by foreign law.

The majority's decision provides a blueprint for suing Internet companies and other global businesses in U.S. courts for worldwide activities, merely because those activities rely on generic data files or software or hardware components shipped or transmitted from the United States.  Such expansive potential liability is antithetical to everything the Supreme Court held in *Microsoft* and *Deepsouth* about extraterritoriality in general and § 271(f) in particular.[2]

## CONCLUSION

The Court should grant the petition for rehearing *en banc*.

---

[2] In *amicus*'s view, § 271(f) does not apply to cross-border transmission of data over the Internet.  *See Microsoft*, 550 U.S. at 462 (Alito, J., concurring).  But that question has not been definitively resolved, and the application of the majority's holding to hardware components alone would be deeply unsettling for the reasons discussed above.

DATED: January 28, 2015

Respectfully submitted,

/s/ Daryl L. Joseffer

Adam M. Conrad
KING & SPALDING LLP
100 N. Tryon St., Suite 3900
Charlotte, NC  28202
Telephone: (704) 503-2600
Facsimile: (704)-503-2622
aconrad@kslaw.com

Daryl L. Joseffer
 *Counsel of Record*
Paul Alessio Mezzina
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
djoseffer@kslaw.com
pmezzina@kslaw.com

*Attorneys for* Amicus Curiae

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Fed. R. App. P. 25 and Fed. Cir. R. 25, this is to certify that I have this day served the foregoing Brief via the Court's CM/ECF on all counsel of record.

DATED: January 28, 2015

*/s/ Daryl L. Joseffer*

Daryl L. Joseffer
