2010-1544

# United States Court of Appeals for the Federal Circuit

―――――――――――――

ULTRAMERCIAL, LLC and ULTRAMERCIAL, INC.,

*Plaintiffs-Appellants*,

v.

HULU, INC.,

*Defendant*,

and

WILDTANGENT, INC.,

*Defendant-Appellee*.

―――――――――――――

Appeal from the United States District Court for the Central District of California in case no. No. 2:09-CV-6918, Judge R. Gary Klausner.

―――――――――――――

## SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLEE

―――――――――――――

Richard G. Frenkel
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025

Gregory G. Garre
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh St. NW, Suite 1000
Washington, DC 20004
(202) 637-2207
gregory.garre@lw.com

Dated: August 27, 2014

*Counsel for Defendant-Appellee*

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee certifies the following:

1. The full name of every party or amicus curiae represented by me is:

    WildTangent, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None

4. The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

    Latham & Watkins LLP:  Gregory G. Garre, Richard G. Frenkel, Lisa K. Nguyen, Gabriel K. Bell, Michelle P. Woodhouse, Katherine I. Twomey (former), and Melissa A. Kopacz (former).

    Wilson Sonsini Goodrich & Rosati PC:  Richard G. Frenkel (former) and Lisa K. Nguyen (former).

Dated: August 27, 2014                    Respectfully submitted,

                                          /s/ Gregory G. Garre
                                          Gregory G. Garre
                                          LATHAM & WATKINS LLP
                                          555 Eleventh St., NW, Suite 1000
                                          Washington, DC 20004

                                          *Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................1

    A.    As In *Alice*, The Claims Here Are Directed To An Abstract Idea........3

    B.    As In *Alice*, The Claims Here Add No Meaningful Limitations To Convert The Abstract Idea Into A Patent-Eligible Application ...........................................................................4

        1.    The Claims Do No More Than Break The Abstract Idea Into Basic Steps And Add Token Extra-Solution Activity.........4

        2.    Appending Well-Known, General Computer Or Internet Functionality Does Not Make The Claims Patent-Eligible ........7

        3.    No Formal Claim Construction Or Fact-Finding Is Necessary To Hold The Claims Patent-Ineligible ....................13

CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Accenture Global Services v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013), *cert. denied*,
   134 S. Ct. 2871 (2014).................................................................1, 3, 12, 13

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
   134 S. Ct. 2347 (2014)...........................................................................*passim*

*Bancorp Services, LLC v. Sun Life Assurance*,
   687 F.3d 1266 (Fed. Cir. 2012), *cert. denied*,
   134 S. Ct. 2870 (2014)................................................................1, 3, 12, 13

*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010)...........................................................................2, 3

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) ...............................................12

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) .................................................4, 12

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ..........................................4, 12, 13

*Fort Properties, Inc. v. American Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ..............................................4, 12

*Gottschalk v. Benson*,
   409 U.S. 63 (1972).......................................................................11

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   132 S. Ct. 1289 (2012)................................................................1, 5

*Planet Bingo, LLC v. VKGS LLC*,
   --- F. App'x ----, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) ...................12

**Page(s)**

*SmartGene, Inc. v. Advanced Biological Laboratories, SA*,
    555 F. App'x 950 (Fed. Cir. 2014) ................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013) ....................................................................10

*WildTangent, Inc. v. Ultramercial, LLC*,
    134 S. Ct. 2870 (2014)....................................................................................1

## STATUTE

35 U.S.C. § 101 ...........................................................................................................1

## INTRODUCTION

Since this Court first considered this case over three years ago, the Supreme Court has twice clarified the law on patent-eligibility. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 132 S. Ct. 1289 (2012).   In June, the Supreme Court vacated this Court's decision finding the claims patent eligible and sent this case back a second time—this time for reconsideration in light of *Alice*.   *WildTangent, Inc. v. Ultramercial*, *LLC*, 134 S. Ct. 2870 (2014).   Underscoring the thrust of *Alice,* on the same day that the Supreme Court sent this case back, the Court let stand two decisions of this Court holding computer-implemented claims *in*eligible.[1]   The Supreme Court's decision in *Alice* repudiates the computer-centered approach that the panel took in its two prior decisions in the case.   And following *Alice*'s guidance, the Court should hold that the claims at issue are patent ineligible.

## ARGUMENT

*Alice* clarifies the two-step framework set forth in *Mayo* for determining patent eligibility under 35 U.S.C. § 101, and elaborates on its application to computer-related claims.   Step one asks whether the claims are directed to an abstract idea.   Although the patentee in *Alice* (Alice Corp.) had vigorously

---

[1] *Bancorp Servs., LLC v. Sun Life Assurance*, 687 F.3d 1266 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 2870 (2014); *Accenture Global Servs. v. Guidewire Software, Inc*., 728 F.3d 1336 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 2871 (2014).

contested the issue, the Supreme Court had little difficulty concluding that its claims "are drawn to the abstract idea of intermediated settlement." *Alice*, 134 S. Ct. at 2352. As the Court explained, the concept of "intermediated settlement" was an abstract idea just like the concept of hedging risks underlying the patent in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). *Alice*, 134 S. Ct. at 2356.

Step two asks whether the claim contains "'additional features'"—an "'inventive concept'"—"sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (quoting *Mayo*). The Court admonished that taking an abstract idea and simply breaking it up into a series of steps or adding "'well-understood,'" "'routine,'" or "'conventional'" activities or features "previously known to the industry" contributes nothing inventive. *Id.* at 2359 (quoting *Mayo*). In particular, the Court emphasized, "[t]he introduction of a computer into the claims does not alter the analysis at *Mayo* step two." *Id.* at 2357.

Applying step two, the Court found that, although Alice Corp.'s claims purported to describe "a computerized scheme for mitigating 'settlement risk'" broken into several discrete steps, the method claims ultimately "simply recite[d] the concept of intermediated settlement as performed by a generic computer." *Id.* at 2352, 2359. They did not, "for example, purport to improve the functioning of the computer itself," or "effect an improvement in any other technology or technical field." *Id.* at 2359. In short, they (like the system and readable medium

claims) "add[ed] nothing of substance to the underlying abstract idea." *Id.* at 2360.

The Ultramercial claims cannot survive under the *Alice* framework.

## A.    As In *Alice*, The Claims Here Are Directed To An Abstract Idea

As has been undisputed for most of this case, the Ultramercial patent is drawn to the abstract idea of offering free media in exchange for watching advertisements. *See* A473-82 ("the '545 patent"). That basic concept of using advertising as a form of currency, which has grounded the broadcast television industry for decades, is unquestionably a "'fundamental economic practice'" like the patent ineligible ideas of using a third-party intermediary to ensure sufficient funds before permitting a transaction to proceed in *Alice*, 134 S. Ct. at 2356, and engaging in a transaction to hedge against risk in the energy market in *Bilski*, 130 S. Ct. at 3231. Indeed, the concept of using a "facilitator" or "intermediary" in this case to allow access to media only if a precondition is met (*i.e.*, the consumer has viewed an advertisement), *see* A478 (2:41-42), is strikingly similar to the concept of using an "intermediary" in *Alice* to allow completion of a financial transaction only if a precondition is met (*i.e.*, the parties have sufficient assets).

Likewise, this Court has held abstract numerous computer-implemented ideas, including generating tasks in an insurance organization "triggered" by certain events (*Accenture*, 728 F.3d at 1346); managing a stable value protected life insurance policy (*Bancorp*, 687 F.3d at 1278); processing car loan applications

through a clearinghouse (*Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012)); managing real estate investments for tax deferred exchanges (*Fort Props., Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1323-24 (Fed. Cir. 2012)); and detecting whether an Internet credit card transaction is fraudulent (*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011)).  The underlying "advertisement-media-exchange" concept here is likewise abstract.  *See* A4-A6; Appellees' Br. 35-37, 42; *cf.* Appellants' Br. 39 & n.3.

### B.    As In *Alice*, The Claims Here Add No Meaningful Limitations To Convert The Abstract Idea Into A Patent-Eligible Application

Of course, the fact that the claims are directed to an abstract idea does not in itself doom them under *Alice*.  But it means the claims fail unless they describe an "'inventive concept'"—additional features "sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  134 S. Ct. at 2357 (quoting *Mayo*). As in *Alice*, the requisite "inventive concept" is lacking here.

### 1.    The Claims Do No More Than Break The Abstract Idea Into Basic Steps And Add Token Extra-Solution Activity

While Ultramercial has written a great deal about what it has invented (often implying—incorrectly—that it has invented the software necessary to use advertisements as currency on an Internet website), all that matters is what is set forth in the claims.  And the claims—even viewed in the light most favorable to Ultramercial—do not hold up.  Indeed, eight of the eleven steps of representative

claim 1 "simply instruct the practitioner to implement" the abstract advertisement-media-exchange idea or various necessary prerequisites. *Alice*, 134 S. Ct. at 2359.

The claim breaks the abstract idea into its component steps:  the facilitator offers free media content in exchange for viewing an advertisement (step 5), receives the consumer's request to view the advertisement (step 6), displays the advertisement to the consumer (step 7), and grants access to the media content after the consumer views or interacts with the advertisement (steps 8 and 9).  But, under *Alice*, these are not "additional limitations" narrowing the abstract idea—they *are* the abstract idea.  Expressing an abstract concept as a "'series of steps'" does not make it patent eligible.  *Id.* at 2356 (quoting *Bilski*).

The claim also includes several necessary prerequisites:  the facilitator must receive the media content in the first place (step 1), must select which advertisement to show (step 2), and must initially restrict access to the content lest it be freely available to all (step 4).  But adding necessary steps that anyone would perform also does not make the claim more patent-eligible.  *See Mayo*, 132 S. Ct. at 1298 ("Anyone who wants to make use of these laws must first administer a thiopurine drug and measure the resulting metabolite concentrations ....").

The claim's remaining three steps are insignificant pre- or post-solution activity:  putting the media product up for sale (step 3), keeping a log of how many times an advertisement is shown (step 10), and receiving payment from the

advertiser (step 11). A481. There is nothing remotely inventive or unconventional about any of those steps, as Ultramercial's own characterization of the claim reveals. *See* Resp. Supp. Br. 4, 2014 WL 2875531 (June 24, 2014). The only other independent claim is materially the same, A482 (cl. 8), and the dependent claims likewise recite routine activity, such as entering licensing agreements, making payments, and using passwords, A481-82 (cl. 2-7, 9-16).

Finally, the fact that the claims only apply to a media product (as opposed to, for example, listening to a sales pitch to get a sample at a grocery store or agreeing to visit a time-share property to get an expense-paid trip) is a classic field-of-use limitation. It does not make the abstract concept underlying the claims here anymore patent eligible than limiting the hedging concept in *Bilski* to energy market transactions or limiting the information clearinghouse concept in *Dealertrack* to car loan applications. Moreover, the attempt to focus on application to "media products" is just an indirect way of trying to limit the concept to "a particular technological environment," which *Alice* confirms is not sufficient. 134 S. Ct. at 2358. Therefore, the steps "individually and 'as an ordered combination'" do not disclose significantly more than the abstract advertisement-media-exchange idea. *Id*. at 2355 (quoting *Mayo*).

In short, none of the claims' recited steps adds anything new, non-routine, or inventive to the abstract concept underlying the patent.

### 2. Appending Well-Known, General Computer Or Internet Functionality Does Not Make The Claims Patent-Eligible

That leaves only the prospect of computer implementation to save the claims—what the panel has focused on in upholding the Ultramercial claims before *Alice*. However, the only limitation referencing computer implementation in claim 1 is the "third step of providing the media product for sale at an Internet website" (couched as "on an Internet website" in the other independent claim). A481-82 (cl. 1, 8). Similarly, the only dependent claim mentioning a computer is claim 16, providing that "the media product accessed by the consumer is downloaded to a memory of a personal computer." A482. That is it.

Just as *Alice* teaches that referencing a "generic computer" or requiring "generic computer implementation" is not enough to satisfy § 101, it follows that a reference to accessing the Internet—a quintessential generic computer function or technological field-of-use limitation—is not enough either. 134 S. Ct. at 2358. Any computer from Best Buy or the Apple Store can access the Internet. And the patent itself acknowledges that there is nothing new or inventive about selling media content over the Internet or downloading media to a user's computer. *See* A478 (2:20-22) (describing well-understood practice of "Internet downloading" of media files "paid for by credit cards or bank instrument").

Ultramercial has grounded its argument that its patent contributes "something meaningful" on the fact that the claims call for "gating" access to

7

content based on advertisement viewing (steps 3-5). *See* Resp. Supp. Br. 3-7; A481. However, gating access to media content is not only ubiquitous on the Internet (and in itself unpatentable), but restricting access to content in some fashion is inherent in selling it on the Internet (lest anyone access it for free). *See* A478 (2:20-22). At root, such "gating" just means requiring a precondition to be met (advertisement viewing) before the payoff—precisely what the conventional computer components did in *Alice* (ensuring sufficient funds before permitting the transaction). And the general concept of "gating" media content is scarcely new. Having to sit through a television commercial (at least before DVRs) or movie preview before gaining access to the desired content are just two examples.

Moreover, as discussed, the claims do not specify any particular mechanism or programming for delivering media content to the consumer or restricting the consumer's access. The WildTangents of the Internet actually supply the programming necessary to operate their websites, and the better and more innovative their programming, the more likely they are to succeed on the Internet. They are the real innovators in this area. Ultramercial—which, in reality, has contributed nothing to the software necessary to *perform* the delivery and "gating" functions it touts—is claiming a monopoly on *all* forms of programming invented or supplied by others to perform the abstract concept underlying its patent. *See* Pet'r Supp. Br. 4, 2014 WL 2811111 (June 20, 2014).

8

All of the other steps can, on their face, be performed without a computer at all. For example, a focus group study could offer a gift card for a free song or movie download in exchange for a participant's feedback on a magazine advertisement. As in *Alice*, therefore, the claims involve only "'well-understood, routine, conventional activit[y]' previously known to the industry" and do not "purport to improve the functioning of the computer itself," or "effect an improvement in any other technology or technical field." 134 S. Ct. at 2359.

Even giving Ultramercial the most favorable construction and assuming that all of the steps are computer-implemented, they are at most conventional computer functions that, as in *Alice*, can be implemented on any general-purpose computer. Indeed, the claims in *Alice* provided much more detail about the function the computers perform: they required using a computer to "create and maintain 'shadow' accounts," "obtain data," "track multiple transactions," "adjust account balances," and "issue automated instructions" "simultaneously." *Id.*; *see also* Cert. Pet. 29, 2013 WL 4495981 (Aug. 23, 2013); Cert. Reply 2-3, 2014 WL 94289 (Jan. 9, 2014). But the Supreme Court held that the claims are nonetheless not patent eligible because "all of these computer functions are 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Alice*, 134 S. Ct. at 2359. The Court rejected Alice Corp.'s principal argument that "the claims are patent eligible because [the claims'] steps 'require a substantial and meaningful

9

role for the computer.'" *Id.* Applicants cannot meet § 101, the Court explained, merely "by reciting a computer system configured to implement the relevant [abstract] concept." *Id*. The same goes for reciting "an Internet website" and relying on unspecified generic computer implementation.

The Ultramercial claims do no more—and indeed less—than that. At most, the claims simply recite the same "basic functions of a computer" as in *Alice*, 134 S. Ct. at 2359—receiving, storing, and transmitting data (*e.g.*, the media products and messages to the users), maintaining and adjusting account records (*e.g.*, the activity log), and enabling transactions (*e.g.*, payment from the sponsor). As Judge Lourie observed, "[w]hile a computer or complex computer program ... may be necessary to perform the method, it is not what the claim specifically requires and thus should not be the focus of the analysis." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1355 (Fed. Cir. 2013) (concurring op.).

Ultramercial's argument that "[c]omputers and web servers do not come preloaded with copyrighted content or advertising, much less programming routines," to implement the abstract idea (Resp. Supp. Br. 5 n.1) is unavailing. Computers also do not come "preloaded" with a program ready to perform the third-party intermediary concept described in *Alice*. There, as here, a programmer had to devise how to implement the abstract concept. But there, as here, *the programmer* (WildTangent)—not the patent—provides the inventive content.

Ultramercial cannot claim a monopoly of the innumerable ways that web operators might seek to gate access to content any more than it can claim a patent on banner advertisements—or simply using a credit card to purchase content on the Internet.

Ultramercial concedes that "persons skilled in the art" could devise a program to perform the abstract idea using general purpose computing components and programming techniques, *id.*, but the patent claims themselves provide no guidance beyond restating the abstract idea and directing practitioners to "apply it." That is precisely the type of claim that *Alice* held is not patent-eligible. *See also Gottschalk v. Benson*, 409 U.S. 63, 73-74 (1972); Facebook Br. 3-4 & n.2, 2013 WL 5348615 (Sept. 23, 2013). Ultramercial's attempts to salvage its claims are indistinguishable from Alice Corp.'s attempt to do the same, *see* Pet'r Br. 48-53, *Alice*, 2014 WL 262088 (Jan. 21, 2014)—which the Supreme Court had no difficulty rejecting. As in *Alice*, "the claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea of intermediated [media-advertisement exchange] using some unspecified, generic computer." 134 S. Ct. at 2360 (quoting *Mayo*).

This Court's recent precedent compels the same result. Time and again this Court has held patent-*in*eligible claims with implementation details and hardware components more specific than those in the Ultramercial claims. For example, the claims in *Accenture* were to using "software" "triggered" upon the occurrence of

certain events to generate and assign tasks in an insurance organization. 728 F.3d at 1338. The claims recited multiple components—including a server, several specific databases (to "stor[e]" the information), an "event processor," a "task engine," a "task assistant," and a "client component" that "transmits and receives data"—but this Court held them patent-ineligible because they were just "generic computer components" and "generalized software components arranged to implement an abstract concept." *Id.* at 1343-45, 1338. Similarly, the claims in *Bancorp* for managing a life insurance policy were ineligible—even though by their terms they "require[d] particular computing devices, such as a 'generator,' a 'calculator,' and 'digital storage'"—because appending such general components could not "salvage an otherwise patent-ineligible process." 687 F.3d at 1274-78.[2]

Here, as in those cases, the general purpose computing devices and functions did not meaningfully limit the claims and the claims did not "specify how the computer hardware and database are specially programmed to perform the steps claimed." *Dealertrack*, 674 F.3d at 1333. To the contrary, each of the steps and features of the claims, even construed reasonably in Ultramercial's favor, are the

---

[2] *See also*, *e.g.*, *Dealertrack*, 674 F.3d at 1333; *Fort Props.*, 671 F.3d at 1322-24; *CyberSource*, 654 F.3d at 1373-74; *Planet Bingo, LLC v. VKGS LLC*, --- F. App'x ----, 2014 WL 4195188, at *3 (Fed. Cir. Aug. 26, 2014); *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 954-56 (Fed. Cir. 2014); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 990-91 (Fed. Cir. 2014).

same type of routine computer functions (*e.g.*, sending and receiving data and "triggering" functionality based on occurrence of certain events) that this Court has repeatedly found do not confer patent-eligibility in recent years. And it is not enough that a computer, programmed in some unspecified way, might be able to do the tasks "'more quickly'" or efficiently. *Bancorp*, 687 F.3d at 1278.

Prior cases have sought to distinguish the panel decisions in this case based on the notion that *computer-implementing* the abstract idea here creates a patent-eligible "computer interface." *Dealertrack*, 674 F.3d at 1334. But no such interface is actually described in the claims (other than a generic reference to "an Internet website," which even Ultramercial no longer contends is sufficient) and *Alice* eviscerates the notion that a general or unstated computer interface is sufficient. Likewise, for the reasons discussed above, *Alice* confirms that none of the three "limitations" identified in *Accenture*, 728 F.3d at 1345—(1) "offering free access conditioned on viewing a sponsor message" (*i.e.*, the idea itself), (2) "media product[s]" (*i.e.*, a mere field of use), and (3) "an Internet website" (*i.e.*, generic computer implementation)—is sufficient. Cert. Reply 8-9.

### 3.  No Formal Claim Construction Or Fact-Finding Is Necessary To Hold The Claims Patent-Ineligible

As in *Alice,* patent-eligibility is a question of law and no formal claim construction or fact finding is necessary to dispose of this case under § 101. *See* 134 S. Ct. at 2353, 2359; Cert. Reply 1-6; *see also Bancorp*, 687 F.3d at 1273. In

*Alice*, the Court determined that, as a matter of law, the claims implicated only "conventional" activity and "the most basic functions of a computer" that cannot render the claims patent-eligible. 134 S. Ct. at 2359. So too here. Indeed, if this case presented only a fact-bound dispute unsuitable for resolution on the pleadings (as Ultramercial argued), there would have been no need for the Supreme Court to send this case back—twice—in light of *Mayo* and *Alice*. Nor, as the district court found, did Ultramercial identify any terms that must be construed to decide whether the claims are patent-eligible or show why plain meaning should not control. A6; *see* A257; A105-08. But even viewing any legitimate factual and construction disputes in Ultramercial's favor, *Alice* and this Court's recent case law make clear that the claims at issue are patent ineligible.

* * * * *

The Court's two prior decisions in this case have been outliers, typically distinguished by other decisions of this Court or district courts only by the unsustainable notion that the Ultramercial claims actually specify an "extensive computer interface or programming" that, in fact, is nowhere found in the claims. *Supra* at 4-10. But unspecified limits are not enough to satisfy § 101. And *Alice* makes clear that the basic intersection between the Ultramercial claims and general purpose computers or the Internet is not sufficient to save the claims either.

What is left—after general purpose computers and the Internet are removed

14

from the equation—is no more sufficient than the claims in *Bilski*, *Mayo,* or *Alice.* That is why Ultramercial's focus all along—at least until *Alice*—has been on the unspecified role of a general purpose computer or the Internet in performing the claims.  Whatever currency that line of argument once had, *Alice* eliminates it. And in the end, this case is tailor-made for dismissal under § 101:  Ultramercial not only has made no meaningful inventive contribution to the public, but it seeks to use its patent as a sword to thwart the genuine innovation of *others*, like WildTangent, that program, design, and operate popular websites.

## CONCLUSION

The judgment of the district court should be affirmed.  In addition, given the importance of the issue, the intervening decisions since this Court last heard oral argument, and the fact that one member of the panel will be new to this case, the newly reconstituted panel should hear oral argument in this matter.

Dated: August 27, 2014

Respectfully submitted,

/s/ Gregory G. Garre

| | |
|---|---|
| Richard G. Frenkel | Gregory G. Garre |
| Lisa K. Nguyen | Gabriel K. Bell |
| LATHAM & WATKINS LLP | LATHAM & WATKINS LLP |
| 140 Scott Drive | 555 Eleventh St. NW, Suite 1000 |
| Menlo Park, CA 94025 | Washington, DC 20004 |
| | (202) 637-2207 |
| | gregory.garre@lw.com |

*Counsel for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2014, I caused copies of the foregoing Supplemental Brief of Defendant-Appellee to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ Gregory G. Garre
Gregory G. Garre