**Nos. 2013-1307, -1313**

# United States Court of Appeals for the Federal Circuit

I/P ENGINE, INC.

*Plaintiff-Cross Appellant,*

v.

AOL, INC., GOOGLE INC., IAC SEARCH & MEDIA, INC., GANNETT COMPANY, INC., and TARGET CORPORATION,

*Defendant-Appellants.*

Appeal from the United States District Court for the Eastern District of Virginia in Case No. 11-CV-512, The Honorable **Judge Raymond A. Jackson**, Judge Presiding.

## BRIEF OF *AMICI CURIAE* NEWEGG INC., CISCO SYSTEMS, INC., AND DELL INC. IN SUPPORT OF DEFENDANT-APPELLANTS

EDWARD R. REINES
JILL J. SCHMIDT
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

*Attorneys for Amici Curiae Newegg Inc., Cisco Systems, Inc., and Dell Inc.*

Dated: December 3, 2013

# CERTIFICATE OF INTEREST

Counsel for *Amici Curiae* certifies the following:

(1) The full name of every party or amicus represented by me is: Newegg Inc., Cisco Systems, Inc., and Dell Inc.

(2) The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: Not applicable.

(3) All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: Dell Inc. is a privately held corporation and its direct parent company is Denali Intermediate Inc. There is no publicly held corporation owning 10% or more of Denali Intermediate Inc.'s stock.

(4) The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Edward R. Reines – *Principal Attorney*
Jill J. Schmidt
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Dated: December 3, 2013

*/s/ Edward R. Reines*
Edward R. Reines

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iii

STATEMENT OF INTEREST OF *AMICI CURIAE* .......... 1

STATEMENT OF AUTHORSHIP AND FUNDING .......... 2

QUESTION PRESENTED .......... 2

ARGUMENT .......... 3

I. A PRESUMPTION OF LACHES SHOULD APPLY IF THE ALLEGEDLY INFRINGING ACTIVITIES ARE REASONABLY DISCOVERABLE ON THE INTERNET MORE THAN SIX YEARS BEFORE SUIT .......... 3

A. The Laches Doctrine Is Intended To Encourage Patent Holders to Exercise Reasonable Diligence .......... 3

B. Information Published On The Internet Is "Pervasive, Open, and Notorious" .......... 5

II. FAILURE TO NOTIFY AN ACCUSED INFRINGER IS INEXCUSABLE DELAY AND UNFAIRLY CAUSES PREJUDICE .......... 8

III. THE RISE OF OPPORTUNISTIC LAWSUITS BASED ON OLD PATENTS JUSTIFIES A VIBRANT LACHES DOCTRINE .......... 10

CONCLUSION .......... 12

CERTIFICATE OF COMPLIANCE .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
960 F.2d 1020 (Fed. Cir. 1992) (*en banc*)..........................................4, 8, 10, 11

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) ...........................................................................7

*Hair v. United States*,
350 F.3d 1253 (Fed. Cir. 2003) ...........................................................................3

*Hall v. Aqua Queen Mfg., Inc.*,
93 F.3d 1548 (Fed. Cir. 1996) .............................................................................5

*Johnson v. Standard Mining Co.*,
148 U.S. 360 (1893)...............................................................................................4

*Lane v. Bodley*,
150 U.S. 193 (1893)...............................................................................................3

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007) ...........................................................................7

*Odetics, Inc. v. Storage Tech. Corp.*,
919 F.Supp. 911 (E.D. Va. 1996) .................................................................5, 8, 9

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004) ...........................................................................7

*Wanlass v. General Electric Co.*,
148 F.3d 1334 (Fed. Cir. 1998) ...................................................................4, 5, 6

## Other Authorities

http://help.yahoo.com/l/us/yahoo/alerts/.................................................................6

http://www.google.com/alerts..................................................................................6

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici Curiae* Cisco Systems, Inc., Dell Inc., and Newegg Inc. are leading innovators in the networking, communications, computer hardware and software industries that have an interest in a strong, but balanced intellectual property system. Both parties have consented to the filing of this brief.

*Amici Curiae* are frequently targeted in patent infringement lawsuits based on old patents asserted many years after the supposedly infringing activity started. And often the alleged infringement is based solely on publicly available information, such as *Amici's* websites. If a patentee's duty to conduct an adequate pre-filing investigation can be satisfied by pointing to information on an accused infringer's website, the ready availability of that information on the Internet should similarly trigger a presumption of laches if the information has been available for a sufficient period of time.

In other words, a presumption of laches should apply if information about the allegedly infringing activities was published on the Internet more than six years prior to the filing of suit. Because the burden of searching for information on the Internet is so low, especially when compared with the potential prejudice suffered by the alleged infringer if a patentee unreasonably delays in filing suit, publication of information on a well-established website should be deemed sufficiently "pervasive, open, and notorious" to serve as notice to the patent holder.

Once the presumption of laches is triggered, on-going litigation activities alone should not be sufficient to overcome the presumption. In order to overcome the presumption, actual notice of the infringement—at a level of detail that enables the accused infringer to assess the claims of infringement—should be necessary along with other information that would prevent unfair prejudice to an accused infringer. With more patent litigation lawsuits being filed now than ever, the time is ripe for the Court to clarify when knowledge of allegedly infringing activities may be imputed to a patentee from publication of information on the Internet, and when and how the presumption of laches can be rebutted.

## STATEMENT OF AUTHORSHIP AND FUNDING

No party's counsel authored the brief in whole or in part, and no party or person other than the *amici curiae* contributed money that was intended to fund preparing or submitting the brief.

## QUESTION PRESENTED

Whether information regarding allegedly infringing activities reasonably discoverable on the Internet is sufficiently "pervasive, open, and notorious" such that knowledge of the alleged infringing activities should be imputed to the patentee in determining whether a presumption of laches should apply and what information is sufficient to rebut the presumption.

## ARGUMENT

### I. A PRESUMPTION OF LACHES SHOULD APPLY IF THE ALLEGEDLY INFRINGING ACTIVITIES ARE REASONABLY DISCOVERABLE ON THE INTERNET MORE THAN SIX YEARS BEFORE SUIT

Plaintiff-Cross Appellant argues that, if the district court's decision is upheld, it would impose upon patent owners "a new and onerous burden to continuously monitor the Internet for any and all public activities, posts, and discussions relating to potential infringers, and then to investigate any information that might suggest possible infringement." Plaintiff-Cross Appellant Br. at 69. *Amici* respectfully submit that the law of laches already imposes a duty on patent owners to be diligent in protecting their rights and concerns regarding a "new and onerous burden" are unfounded. Further, *amici* note that laches is an equitable doctrine that prevents patent owners and assignees who have failed in their duty to police their rights from unfairly collecting damages from accused infringers who have not received actual notice of infringement.

#### A. The Laches Doctrine Is Intended To Encourage Patent Holders to Exercise Reasonable Diligence

The equitable doctrine of laches has long been recognized as a defense to patent infringement. As the Supreme Court observed, "Courts of equity, it has often been said, will not assist one who has slept upon his rights, and shows no excuse for his laches in asserting them." *Lane v. Bodley*, 150 U.S. 193, 201 (1893). To assert laches, an alleged infringer must prove both that the plaintiff

unreasonably delayed in filing suit and that the delay was prejudicial. *Hair v. United States*, 350 F.3d 1253, 1257 (Fed. Cir. 2003) (noting that laches will apply "in cases in which the plaintiff has failed to act in a reasonably prudent manner to protect and enforce rights, and when a perceived injustice to the defendant exists"). "The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringement activities to the date of suit." *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (*en banc*). While there is no fixed length of time that is deemed unreasonable, "[a] presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity." *Id*. at 1028.

This Court has held that the standard for laches "imposes on patentees the duty to police their rights." *Wanlass v. General Electric Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998); *see also Johnson v. Standard Mining Co.*, 148 U.S. 360, 370 (1893) (holding that "where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put a man of ordinary intelligence the duty of inquiry"). In other words, a patent holder who wishes to avoid laches has a duty to investigate instances of potential infringement "because the law imputes knowledge when opportunity and interest, combined with reasonable care,

would necessarily impart it." *Wanlass*, 143 F.3d at 1338. The policy reasons underlying this duty to investigate potentially infringing activities were explained as follows:

> Allocating the burden to patentees to seek out infringers is proper, furthermore, because compared to potential infringers, they are in the best position to know the scope of their patent protection and, therefore, also to know likely places to find infringement. This superior knowledge generally allows them to incur comparatively lower costs in investigating potentially infringing activities than competitors would incur conducting patent searches on every aspect of their products and notifying the patentee of their results.

*Id.* at 1339. This requires a patentee who "knows of the existence of a product or device that (i) embodies technology similar to that for which he holds a patent and (ii) uses that similar technology to accomplish a similar objective … to examine the product or device more closely to ascertain whether it infringes his patent." *Odetics, Inc. v. Storage Tech. Corp.*, 919 F.Supp. 911, 918 (E.D. Va. 1996). "If he shirks this duty, he does so on peril of triggering the laches period and perhaps ultimately losing his right to recover damages for the infringement." *Id.*

### B. Information Published On The Internet Is "Pervasive, Open, and Notorious"

It is well-established that "pervasive, open, and notorious activities" by an alleged infringer can trigger the patentee's duty to investigate whether there is infringement. *See Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 (Fed. Cir. 1996).

There should be no dispute that reasonably discoverable information published on the Internet is "pervasive, open, and notorious." Indeed, the types of information typically gathered from an alleged infringer's website and cited in a complaint for patent infringement are publicly available for viewing by anyone with a computer or mobile device. While advertisements in trade magazines or demonstrations at trade shows may be restricted to a limited audience (but held by courts to be "pervasive, open, and notorious"), the Internet is by its very nature even more open to all—and convenient to search.

In determining whether a patent holder has exercised reasonable diligence in investigating potential acts of infringement, courts will consider both the cost and difficulty of the investigation. *Wanlass*, 143 F.3d at 1340. Here, the burden of periodically performing Internet searches is insubstantial, especially with the availability of numerous and automatic search tools, including Google's own search engine, that return hits in a matter of milliseconds. By using free tools like Google Alerts or Yahoo! Alerts, a patent holder can repeat Internet searches automatically as often as desired and receive email notifications whenever new results are found. *See, e.g.*, http://www.google.com/alerts or http://help.yahoo.com/l/us/yahoo/alerts/. Indeed, one of the intended uses advertised for Google Alerts is "keeping current on a competitor or industry." *See* http://www.google.com/alerts.

Plaintiff-Cross Appellant's concern that it would be a "new and onerous burden to continuously monitor the Internet" is unpersuasive. In practice, patent holders routinely review the websites of companies they intend to target for infringement suits. Moreover, patent infringement complaints typically cite publicly available information obtained from the accused infringer's websites.[1]

Before filing a complaint a patentee is required to perform a good faith comparison of the claims of the asserted patent with the publicly available information regarding the accused subject matter. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) (holding that Rule 11 "requires counsel to perform an objective evaluation of the claim terms when reading those terms on the accused device"); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004) (holding that Rule 11 requires, "at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement"). To the extent a patentee's pre-filing investigation can be satisfied, at least in part, by simply citing publicly available information from an accused infringer's website, the publication

---

[1] This Court has recognized that pointing to such public information is sufficient to survive a motion to dismiss. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1358 (Fed. Cir. 2007) (observing that "[a]t this stage in the litigation, all McZeal has access to is Sprint Nextel's public statements and advertisements" and "the specifics of how Sprint Nextel's purportedly infringing device works is something to be determined through discovery").

of that information should be sufficient to trigger a duty to investigate possible infringement for laches purposes.[2] And, if the information about the allegedly infringing activity is published on the Internet more than six years prior to the filing of suit, a presumption of laches should apply.

## II. FAILURE TO NOTIFY AN ACCUSED INFRINGER IS INEXCUSABLE DELAY AND UNFAIRLY CAUSES PREJUDICE

If the presumption of laches applies, the patentee bears the burden of rebutting the presumption by a preponderance of the evidence, by showing that its delay was reasonable and/or by showing a lack of prejudice as a result of any unreasonable delay. *Aukerman*, 960 F.2d at 1037. Here, one ground relied on by Plaintiff Cross-Appellant for the reasonableness of its delay was the existence of on-going lawsuits for related patents—though not the actual patents in suit. Even had the ongoing law suits asserted the same patents as those asserted against Defendant Appellant, courts have held that to overcome the laches presumption, "the patentee must give notice to the accused infringer, warning him that he might be subject to the same in the future, after resolution of the other litigation." *Odetics, Inc.* 919 F. Supp. at 918-919. The *Odetics* court reasoned that "[n]otice to an alleged infringer is the key to a finding of excusable delay, for notice allows

[2] The arguments made herein regarding when knowledge is imputed are limited to the context of the doctrine of laches, where it already recognized that a patentee has an affirmative duty to investigate potentially infringing activities. *Amici Curiae* take no positions regarding when knowledge is imputed in other circumstances.

the accused infringer to take steps to protect himself from liability—to change his product or his activities, for instance, or to institute a declaratory judgment suit himself against the patentee." *Id.* Under this reasoning, sufficient notice may require providing claim charts in order to enable an accused infringer to change a product; or, to provide a license offer or an indication of a reasonable royalty rate, especially where monetary damages are adequate, in order to provide sufficient notice in order to allow an accused infringer to evaluate the cost of a license compared to the cost associated with changing a product.

Without sufficient notice of what acts allegedly constitute infringement and of the compensation the patent holder is seeking for use of its patent, the accused infringer will necessarily suffer material prejudice because (1) it does not have the opportunity to change its product to design around the patented invention; (2) does not have the opportunity to challenge the patent in a timely manner; (3) becomes increasingly subject to the problem of "lock in," *e.g.*, the passage of time means that frequently a manufacturer or its customers will incur significantly greater cost than that which would have resulted if the patent holder made its allegations known at the time the alleged infringement was first known to the patentee; and (4) does not have the opportunity to evaluate a potential license to the technology early on. Prejudice may also occur if the market for the accused product unexpectedly expands, and the accused infringer was never placed on notice or had

the opportunity to change the product to avoid infringement. *Aukerman*, 960 F.2d at 1033. In addition, the passage of time often leads to evidentiary prejudice because it can prevent an accused infringer from being able "to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.*

The risk of this type of material prejudice is precisely why notice of ongoing litigation involving unrelated patents is insufficient to overcome a presumption of laches; an accused infringer cannot use that information to meaningfully assess whether its products should be changed to avoid infringement of, whether it should challenge the validity of, or whether it should seek a license to the patents that are actually asserted later.

Moreover, even notice regarding the patent(s)-in-suit, without more, can be insufficient if the accused infringer is not provided with information that enables it to meaningfully assess whether or how it should change its products or services, whether it should seek a license, and whether it should challenge the validity of the patent(s).

## III. THE RISE OF OPPORTUNISTIC LAWSUITS BASED ON OLD PATENTS JUSTIFIES A VIBRANT LACHES DOCTRINE

The laches doctrine "assures that old grievances will some day be laid to rest, that litigation will be decided on the basis of evidence that remains reasonably

accessible and that those against whom claims are presented will not be unduly prejudiced by delay in asserting them. *Aukerman*, 960 F.2d at 1029. It is becoming more and more common for old patents to be asserted in litigation, particularly by parties who have acquired those patents for the sole purpose of filing infringement lawsuits.

This appeal involves a similar situation, in which I/P Engine acquired the patents from a predecessor in interest of the patents-in-suit. A51. Like Google, the predecessor-in-interest, Lycos, started as a search engine provider, but struggled to compete. As I/P Engine argued to the district court, "strategic indecision at Lycos after a series of corporation ownership transfers made it impossible for the company to consider what to do with its patents."[3] A52. Whatever the reason, Lycos failed to police its rights for years, and then its successor-in-interest to the patent in suit sought to extract patent damages for the period of time prior to the lawsuit being filed. Like many abusive patent asserters, I/P Engine uniformly sought settlements from accused infringers representing a steep discount to the typical cost of defense.

This tactic has become commonplace where a new owner asserts old patents—even patents about to expire or which have already expired—and seeks

---

[3] As noted by the district court, these ownership transfers occurred prior to the laches delay period. A52.

past damages in order to maximize its return.[4] Also not uncommon, the patent's predecessor-in-interest knew of, or was under a duty to investigate, the "pervasive, open, and notorious" allegedly infringing activity, but did not itself pursue an infringement claim. Under these circumstances, the presumption of laches should be robustly applied.

## CONCLUSION

For the above reasons, this Court should find that the district court correctly determined that a presumption of laches should apply. This Court should also extend that holding to a broader ruling that publications reasonably discoverable on the Internet are sufficiently "pervasive, open, and notorious" to presumptively support a finding of knowledge in a laches analysis. This Court should also clarify that in evaluating the reasonableness of a patentee's delay, notice regarding ongoing litigation involving unrelated patents is not sufficient, and that additional information, including claim charts or a reasonable royalty estimate, may be required.

[4] For example, one of *amici* was sued on a patent that had expired three years prior to the lawsuit being filed and about which it had not been given prior notice.

Dated: December 3, 2013

Respectfully submitted,

*/s/ Edward R. Reines*
Edward R. Reines
Jill J. Schmidt
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Amici Curiae Newegg Inc., Cisco Systems, Inc., and Dell Inc.*

**CERTIFICATE OF SERVICE**

I certify that on December 3, 2013, this **BRIEF OF *AMICI CURIAE* NEWEGG INC., CISCO SYSTEMS, INC., AND DELL INC. IN SUPPORT OF DEFENDANT-APPELLANTS** was served by electronic filing with the Clerk of the Court, and that on that same date I served copies on counsel listed below in the manner indicated below:

***Via Federal Express***
JEFFREY K .SHERWOOD
FRANK C. CIMINO, JR.
KENNETH W. BROTHERS
DAWN RUDENKO ALBERT
CHARLES J. MONTERIO, JR.
JONATHAN L. FALKLER
**DICKSTEIN SHAPIRO LLP**
1825 Eye Street NW
Washington, DC 20006
*Attorneys for Plaintiff-Cross Appellant*
*I/P Engine, Inc.*

***Via Federal Express***
JOSEPH R. RE
STEPHEN W. LARSON
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
*Attorneys for Plaintiff-Cross Appellant*
*I/P Engine, Inc.*

***Via Federal Express***
DAVID A. PERLSON
DAVID L. BILSKER
MARGARET P. KAMMERUD
ANTONIO R. SISTOS
KEVIN A. SMITH
EMILY C. O'BRIEN
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111

DAVID A. NELSON
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
500 W. Madison Street, Suite 2450
Chicago, IL 60661

ROBERT B. WILSON
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
*Attorneys for Defendant-Appellants*
*AOL Inc., Google Inc., IAC Search & Media, Inc.*
*Gannett Company, Inc., and Target Corporation.*

Dated: December 3, 2013

*/s/ Irina Khait*
Irina Khait
WEIL, GOTSHAL & MANGES LLP

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of FED. R. APP. P. 29(d) and 32(a)(7)(B) because it contains 2,815 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010, Office XP in Times New Roman, 14 point.

Dated: December 3, 2013

*/s/ Edward R. Reines*
Edward R. Reines
WEIL, GOTSHAL & MANGES LLP