# United States Court of Appeals

*for the*

# Federal Circuit

SCA HYGIENE PRODUCTS AKTIEBOLAG
and SCA PERSONAL CARE, INC.,

*Plaintiffs-Appellants,*

– v. –

FIRST QUALITY BABY PRODUCTS, LLC, FIRST QUALITY HYGIENIC,
INC., FIRST QUALITY PRODUCTS, INC., and FIRST QUALITY RETAIL
SERVICES, LLC,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF KENTUCKY IN CASE NO. 10-CV-0122,
CHIEF JUDGE JOSEPH H. MCKINLEY, JR.

## BRIEF OF *AMICUS CURIAE* MEDINOL LTD. IN SUPPORT OF PETITION FOR REHEARING AND REHEARING *EN BANC* OF PLAINTIFFS-APPELLANTS

RICHARD L. DELUCIA
ELIZABETH A. GARDNER
MARK A. CHAPMAN
A. ANTONY PFEFFER
ERIC T. SCHREIBER
KENYON & KENYON LLP
One Broadway
New York, New York 10004
(212) 425-7200

*Attorneys for* Amicus Curiae
Medinol Ltd.

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.1 and Federal Rule of Appellate Procedure

26.1, counsel for *Amicus Curiae* Medinol Ltd. certifies the following:

1.      The full name of every party or amicus represented by us:

Medinol Ltd.

2.      The name of the real party in interest if the party named in the caption is not the real party in interest:

Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us:

Zuli Holdings Ltd.

4.      The names of all law firms and the partners and associates that have appeared for the party now represented by us in the trial court or agency, or are expected to appear in this Court:

<u>Kenyon & Kenyon LLP</u>: Richard L. DeLucia, Elizabeth A. Gardner, Mark A. Chapman, A. Antony Pfeffer, Eric T. Schreiber, and Caryn Harsche Cross

<u>Of counsel</u>: Arthur R. Miller and Richard H. Pildes

Dated: October 29, 2014

    /s/ Richard L. DeLucia
Richard L. DeLucia
KENYON & KENYON LLP
*Attorney for* Amicus Curiae *Medinol Ltd.*

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................................i

TABLE OF CONTENTS ..........................................................................................ii

TABLE OF AUTHORITIES ...................................................................................iii

STATEMENT PURSUANT TO FED. R. APP. P. 29(C)(4)-(5) ....................................1

ARGUMENT IN SUPPORT OF REHEARING *EN BANC* ......................................2

    A.    Introduction ............................................................................................2

    B.    Appellants' Petition Presents a Question of Exceptional Importance ..............................................................................................3

    C.    *Petrella* Did Not Leave *Aukerman* Intact ..........................................4

        1.    Section 282 and Commentary Thereon .............................................6

        2.    Legislative History and Historical Practice .......................................9

CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ............................................................*passim*

*Bruesewitz v. Wyeth LLC*,
    131 S. Ct. 1068 (2011) ...................................................................8

*In re Donaldson Co.*,
    16 F.3d 1189 (Fed. Cir. 1994) ....................................................8

*J.P. Stevens & Co. v. Lex Tex, Ltd.*,
    747 F.2d 1553 (Fed. Cir. 1984) ..................................................8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) ................................................................*passim*

*Troy v. Samson Mfg. Corp.*,
    758 F.3d 1322 (Fed. Cir. 2014) .............................................3, 5

**Statutes & Other Authorities:**

28 U.S.C. § 398.............................................................................10

35 U.S.C. § 271(c) ..........................................................................7

35 U.S.C. § 282..........................................................................4, 6, 9

35 U.S.C. § 282(b) ......................................................................4, 6

35 U.S.C. § 286..............................................................................4

Fed. Cir. R. 35(g) ...........................................................................1

Fed. R. App. P. 29(c)(4)-(5) .........................................................1

Fed. R. Civ. P. 8(c) ........................................................................2

Fed. R. Civ. P. 60(b)(6) ................................................................1

H.R. Rep. No. 82-1923...................................................................9

*Patent Law Codification and Revision, Hearing on H.R. 3760 Before Subcomm. No. 3
    of the H. Comm. On the Judiciary*, 82d Cong. 108 (1951) ............................9

P.J. Federico, *Commentary on the New Patent Act*, Title 35, United States Code Annotated (West 1954), *reprinted in* 75 J. Pat. & Trademark Office Soc'y 161 (1993) ................................................................................................ 7, 8, 9

## STATEMENT PURSUANT TO FED. R. APP. P. 29(C)(4)-(5)

Like Appellants in this appeal, *amicus curiae* Medinol Ltd. ("Medinol") is a patent plaintiff whose claims for past damages were barred in district court by the doctrine of laches. Applying the framework in *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc), the district court ruled after a four-day trial that laches applied, and entered judgment dismissing Medinol's complaint.

After the Supreme Court decided *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), Medinol sought relief from the judgment under Federal Rule of Civil Procedure 60(b)(6), arguing that *Aukerman* was no longer good law in view of *Petrella*. While Medinol's request was pending, the panel in this appeal rendered its decision, summarily holding that, despite *Petrella*, *Aukerman* was still binding precedent, which only the Supreme Court or this Court *en banc* could reconsider. Panel Op. at 8-9. Relying entirely on the panel's decision, the district court denied Medinol's request.

Medinol's appeal of the district court's order is pending in this Court as No. 15-1027. Because the outcome of Medinol's appeal depends on reconsideration of *Aukerman* in view of *Petrella*, Medinol supports Appellants' petition for rehearing *en banc* and submits this brief as *amicus curiae* pursuant to Federal Circuit Rule 35(g), along with a motion for leave.[1]

---

[1] No party's counsel authored any part of this brief. No party, party's counsel, or other person beside Medinol contributed money to fund preparing or submitting this brief.

1

## ARGUMENT IN SUPPORT OF REHEARING *EN BANC*

**A.    Introduction**

In their petition, Appellants detail the various ways in which the Supreme Court's reasoning in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), is contrary to this Court's reasoning in *A.C. Aukerman Co v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc). Medinol agrees with Appellants' analysis. By ruling that the Copyright Act's statute of limitations "itself takes account of the delay" and that "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief," *Petrella*, 134 S. Ct. at 1973, 1974, the Supreme Court implicitly rejected *Aukerman*'s holding that the statute of limitations in the Patent Act does not preclude a finding of laches within the limitations period, *see* 960 F.2d at 1030. *Petrella* also firmly maintained the historical distinction between law and equity as regards the availability of laches, and rejected any notion that the merger of law and equity, or Federal Rule of Civil Procedure 8(c), permits the equitable defense of laches to be raised in actions at law even where Congress has provided a statute of limitations. 134 S. Ct. at 1974-75. Moreover, the Supreme Court rejected the use of a court's discretionary power to override time limitations prescribed by Congress. *Id.* The Court also rejected the treatment of a series of infringing acts as a unitary claim for the purpose of applying laches. *See id.* at 1975. In sum, Medinol agrees with Appellants' analysis, and it would not assist this Court to repeat those arguments here. Instead, Medinol submits this brief as *amicus curiae* to provide additional reasons why

2

the Court should rehear this case, including *Petrella*'s explicit treatment of *Aukerman*.

## B.  Appellants' Petition Presents a Question of Exceptional Importance

The primary question raised by Appellants' petition, *i.e.*, whether *Aukerman* is good law in view of *Petrella*, is one of exceptional importance for several reasons. First, as explained in Appellants' petition, the long-standing precedent of this Court, being applied by district courts across the country, is in stark conflict with the reasoning of a recent decision of the Supreme Court. Second, the issue affects a plethora of cases—literally every patent case in which laches has been raised as a defense. And, third, the impact of the laches defense in each of these cases is substantial: to bar as much as six years of damages flowing from the unauthorized practice of another's invention.

It is a fundamental premise of the federal court system that decisions of the Supreme Court must be followed. As described below, that Court's remark that it had "not had occasion to review the Federal Circuit's position [in *Aukerman*]," *Petrella*, 134 S. Ct. at 1974 n.15, cannot fairly be interpreted as approval of or acquiescence in *Aukerman*. Indeed, "[c]ircuit precedent, authoritative at the time that it has issued, can be effectively overruled by subsequent Supreme Court decisions that are closely on point, even though those decisions do not expressly overrule the prior circuit precedent." *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) (citation omitted). There can be little doubt that *Petrella* is "closely on point"; thus, this Court should determine the impact of *Petrella* on the laches defense in patent cases.

3

Resolution of this issue would affect a substantial number cases—every patent case in which a laches defense is raised. At least three cases are already pending in this Court: this appeal (No. 13-1564); Medinol's own appeal (No. 15-1027); and *Reese v. Sprint Nextel Corp.* (No. 15-1030). Numerous patent cases in district courts doubtlessly involve a laches defense. In each, the parties and courts will expend substantial resources litigating a legally flawed defense—for example, the parties in Medinol's case spent months in discovery and held a four-day trial, all dedicated to laches.

Finally, the application of laches is a draconian measure that, under *Aukerman*, bars up to six years of damages for the unauthorized use of a patented invention. In Medinol's case, it barred all the relief that Medinol was seeking. Medinol is not alone. The question of whether so harsh a defense is viable at all—a question raised by a fair reading of *Petrella*—is therefore crucial to every patent plaintiff who chose not to rush into litigation but nonetheless filed suit within the limitations period set by Congress.

## C.   *Petrella* Did Not Leave *Aukerman* Intact

In this appeal, the panel did not consider whether the rationale of *Petrella* had effectively overruled *Aukerman*; rather, it summarily concluded that *Petrella* "left *Aukerman* intact," Panel Op. at 8, based on this portion of a footnote in *Petrella*:

> The Patent Act states: "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint." 35 U.S.C. § 286. The Act also provides that "[n]oninfringement, absence of liability for infringement or unenforceability" may be raised "in any action involving the validity or infringement of a patent." § 282(b) (2012 ed.). Based in part on § 282 and commentary thereon, legislative history, and historical practice, the Federal Circuit has held that laches can bar

4

> damages incurred prior to the commencement of suit, but not injunctive relief. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029–1031, 1039–1041 (1992) (en banc). We have not had occasion to review the Federal Circuit's position.

134 S. Ct. at 1974 n.15. The panel interpreted the last sentence to mean that the Supreme Court had left *Aukerman* undisturbed. *See* Panel Op. at 8. Medinol respectfully disagrees, for several reasons.

First, the footnote must be placed in context. It follows a series of citations to decisions in which the Supreme Court "cautioned against invoking laches to bar legal relief." *Petrella*, 134 S. Ct. at 1973-74. Against that backdrop, the Court's discussion of *Aukerman* is better viewed as criticism than as approval: *Aukerman* is an example of a decision that failed to heed that caution. Indeed, the Court pointedly referred to *Aukerman* as "the Federal Circuit's **position**" rather than a rule of law.

Second, lower courts are "bound not only by the holdings of higher-courts' decisions but also by their mode of analysis." *Troy*, 758 F.3d at 1326 (citation omitted). The Supreme Court's brief commentary on *Aukerman* at best leads to the conclusion that the Court did not actually consider and decide whether *Aukerman* was properly decided—an unsurprising result, since the rule of *Aukerman* was not before the Court. However, the proper question is whether the **reasoning** of *Petrella* is inconsistent with *Aukerman*. *See id.* ("[T]he issues decided by the higher court need not be identical to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly

irreconcilable.") (quotations omitted). Medinol submits that *Petrella* and *Aukerman* are irreconcilable, for substantially the reasons given in Appellants' petition. And this Court should answer that question *en banc*, because the panel declined to do so.

Third, *Petrella* was, in essence, a case about congressional intent and the separation of powers. It held that a statute of limitations enacted by Congress could not be jettisoned by a court exercising its equitable discretion to bar legal relief. Because Congress had provided a rule for determining the timeliness of a lawsuit, *Petrella* held, courts are bound to follow that rule. Applying laches to an otherwise timely suit would fly in the face of Congress's judgment. *Petrella*, 134 S. Ct. at 1967. It stands to reason, then, that Congress **could** impose a different rule if it wished. In its discussion of *Aukerman*, the Supreme Court pointed to several factors on which that decision relied: "[35 U.S.C.] § 282 and commentary thereon, legislative history, and historical practice." *Id.* at 1974 n.15. These are all factors that arguably could, **in principle**, justify treating the patent statute differently from the copyright statute, to the extent the factors reflect a legislative intent contrary to the general rule of *Petrella*. But the Supreme Court did not consider these factors in relation to the Patent Act. Therefore, this Court should explore these factors, and *Aukerman*'s treatment of them, to determine whether *Aukerman* can properly be distinguished from *Petrella*.

### 1.    Section 282 and Commentary Thereon

Section 282(b) of the Patent Act lists defenses available in any action involving the validity or infringement of a patent. 35 U.S.C. § 282(b) (1994). In *Aukerman*, this

Court concluded that the defenses listed in that section's first subparagraph—"Noninfringement, absence of liability for infringement or unenforceability"—included laches. 960 F.2d at 1029. Plainly, however, that subparagraph makes no mention of laches or delay. "Noninfringement" certainly does not include laches, and since a finding of laches does not render a patent unenforceable, neither does "unenforceability." "[A]bsence of liability for infringement" is perhaps an ambiguous term when read alone, but it can be read harmoniously with section 271(b), which provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Thus, a defendant accused of inducing infringement can argue either that no infringement has occurred (noninfringement) or that the defendant had not induced the infringement and so was not liable for it. *See also* 35 U.S.C. § 271(c) (establishing liability for contributory infringement). Even if "absence of liability for infringement" were not so limited, *Aukerman* noted that laches focuses on the acts of the plaintiff, not the defendant, and further held that if proven, laches bars **damages** accrued before the filing of the complaint, not **liability**. *Id.* 960 F.2d at 1031-32, 1041. Only by a strained reading could "absence of liability" include laches.

For its conclusion that section 282 includes laches as a defense, *Aukerman* relied on the commentary of P.J. Federico, published in 1954, two years after enactment of the statute. 960 F.2d at 1029. The entirety of his commentary on the subject was:

> The defenses which may be raised in an action involving the validity or infringement of a patent are specified in general terms, by the second paragraph of section 282, in five numbered items. Item 1 specifies

"Noninfringement, absence of liability for infringement, or unenforceability" (the last word was added by amendment in the Senate for greater clarity); this would include the defenses such as that the patented invention has not been made, used or sold by the defendant; license; and equitable defenses such as laches, estoppel and unclean hands.

P.J. Federico, *Commentary on the New Patent Act*, Title 35, United States Code Annotated (West 1954), *reprinted in* 75 J. Pat. & Trademark Office Soc'y 161, 215 (1993).[2]

Mr. Federico's post-enactment commentary is not a reliable source of legislative intent. Indeed, this Court recognized as much some two years after *Aukerman*, stating that Mr. Federico's commentary "is not legislative history per se that may be relied upon to indicate Congressional intent." *In re Donaldson Co.*, 16 F.3d 1189, 1193 n.3 (Fed. Cir. 1994).[3] Further, an introductory note to Mr. Federico's commentary confirms that it includes his own *post hoc* views of the statute:

> **After the new patent act [this title] was approved** the writer was called upon to address various patent groups for the purpose of acquainting them with the details of the new law and with the revisions in the procedure of the Patent Office made in consequence thereof. . . . This paper should be considered **only as a survey** of the patent statute, with the **main objective of pointing out the changes** which have been made by the new act. In such an extended discussion it is **obviously impossible to avoid expressions, either consciously or unconsciously, of personal opinion and it should be understood that the paper**

---

[2]  *Aukerman* also cited *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1560-61 (Fed. Cir. 1984), which quotes Mr. Federico's commentary in stating, in dicta, that subparagraph 1 of section 282(b) includes laches. *Aukerman*, 960 F.2d at 1029.

[3]  *See also Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1081 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

**contains some opinions and views of the writer even though not always labeled as such**.

Federico, *supra*, at 162-63 (emphasis added). In contrast, when Mr. Federico testified before the House subcommittee responsible for the bill, he merely stated (regarding section 282 (then numbered as section 242)) that "[t]he defenses to an action for infringement are stated in general terms, changing the language in the present statute, but not changing the substance materially." *Patent Law Codification and Revision, Hearing on H.R. 3760 Before Subcomm. No. 3 of the H. Comm. On the Judiciary*, 82d Cong. 108 (1951). This commentary that no substantive change was being made appeared almost *verbatim* in a House report when the bill was reintroduced the following year. *See* H.R. Rep. No. 82-1923, at 10 (1952). The predecessor statute made no mention of laches. *See id.* at 51-52 (R.S. 4920). Thus, even if Mr. Federico meant for laches to be included in section 282, there is no indication that he made Congress aware of that intention before it passed the bill, or that Congress shared that intent. Section 282 and the commentary thereon do not distinguish *Aukerman* from *Petrella*.

## 2.    Legislative History and Historical Practice

As discussed above, Mr. Federico's commentary is not legislative history, and this Court did not consider any other legislative history of section 282 in deciding *Aukerman*. There are two other factors in *Aukerman* that might be considered "legislative history," the first of which is intertwined with "historical practice."

First, the Court noted that the predecessor to section 286 had been enacted in

1897, and since "all circuits recognized laches as a defense to a charge of patent infringement despite the reenactment of the damages limitation in the 1952 statute," that enactment must not have changed the rule. *See Aukerman*, 960 F.2d at 1030. But, as Appellants noted, two of the five decisions cited by *Aukerman* for the proposition that laches was "well established" by 1952 were suits in equity, and two more relied on a now-repealed statute, discussed below. *See* Petition at 9 n.3. Thus, it can hardly be said that the defense of laches to legal remedies was well enough established to find that Congress acquiesced in it by its passage of the 1952 Act.

Second, the Court relied upon former 28 U.S.C. § 398, which permitted equitable defenses to be pled in actions at law. *See Aukerman*, 960 F.2d at 1031. After the merger of law and equity, this was repealed as obsolete in view of the Federal Rules of Civil Procedure. *See id.* However, *Petrella* soundly rejected the argument that the Rules permit laches to be applied to legal relief for infringements within the statute of limitations. *See* 134 S. Ct. at 1973-75 & n.14.

For the above reasons, section 282, the commentary thereon, and the legislative history and historical practice relied upon by *Aukerman* fail to distinguish that case from *Petrella*. Thus, the panel's holding that *Petrella* left *Aukerman* intact was error.

## CONCLUSION

For the foregoing reasons, the Court should grant Appellants' petition for rehearing *en banc* to consider and decide whether *Aukerman* remains good law in view of *Petrella*.

10

Respectfully submitted,

Dated: October 29, 2014

/s/ Richard L. DeLucia
Richard L. DeLucia
Elizabeth A. Gardner
Mark A. Chapman
A. Antony Pfeffer
Eric T. Schreiber
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
(212) 425-7200

*Attorneys for* Amicus Curiae *Medinol Ltd.*

<u>CERTIFICATE OF FILING AND SERVICE</u>

I, Robyn Cocho, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

October 29, 2014 the foregoing Brief of *Amicus Curiae* Medinol Ltd. in Support of

Petition for Rehearing and Rehearing *En Banc* of Plaintiffs-Appellants was filed

through the CM/ECF system and served electronically on the individual listed below:

Martin J. Black (martin.black@dechert.com)
Kevin M. Flannery (kevin.flannery@dechert.com)
Teri-Lynn A. Evans (teri-lynn.evans@dechert.com)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000
Attorneys for Plaintiffs-Appellants

Kenneth P. George (kgeorge@arelaw.com)
Charles R. Macedo (cmacedo@arelaw.com)
Mark Berkowitz (mberkowitz@arelaw.com)
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000
Attorneys for Defendants-Appellees

In addition, the required 16 copies have been sent to the court this same day via
federal express.

<u>/s/ Robyn Cocho</u>
Robyn Cocho